UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



SECURITIES AND EXCHANGE

COMMISSION,

                Plaintiff,

    -against-                      MEMORANDUM DECISION

                                      AND ORDER

                                      12 Civ. 7728 (GBD)

YORKVILLE ADVISORS, LLC, MARK

ANGELO and EDWARD SCHINIK,

                Defendants.

GEORGE B. DANIELS, United States District Judge:

    The Securities and Exchange Commission ("SEC") brings this action against Yorkville Advisors, LLC ("Yorkville" or "the Funds"), its founder and president, Mark Angelo, and its chief financial officer, Edward Schinik, alleging violations of Section 17 (a)(1), (2) and (3) of the Securities Act of 1933 ("Securities Act"); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a), (b) and (c) thereunder; and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.

1

Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) and for failure to comply with the pleading requirements of Rule 9(b) (the "Motion").[1] Defendants' Motion is DENIED.

## BACKGROUND

Yorkville Advisors LLC is an investment manager of YA Global Investments, LP, based in New Jersey. Motion at 3. The Firm was founded in 2001 by Mark Angelo, who serves as its managing member and president. *Id.* Edward Schinick, who joined the Funds in 2005, serves as chief financial officer and chief operating officer. *Id.* Yorkville manages assets for financially impaired, publicly-traded companies and negotiates security interests in the companies and favorable repayment via convertible debt instruments. *Id.* at 4.

The complaint alleges that "[f]rom at least 2008, Defendants engaged in a fraudulent scheme pursuant to which they reported false and inflated values for certain convertible debentures, convertible preferred stock (collectively, "convertibles"), and promissory note investments held by the hedge funds managed by Yorkville (the "Funds") instead of writing down the values of those securities. The purpose of this fraudulent scheme was to increase the Funds' assets under management and to maintain the Funds' positive year-end performance, allowing Defendants to claim entitlement to greater fees than allowable." Compl. ¶ 1. The complaint further alleges that from at least April 2008 to January 2010, Yorkville made false or misleading statements to investors about the value of investments, valuation policies, collateral underlying investments, the Funds' liquidity, and the use of third-party valuation consultants. These misrepresentations purportedly allowed Yorkville to "mask the risky and illiquid nature of

---

[1] Defendants also argue that the complaint must be dismissed under Rule 12(b)(1) for failure to plead compliance with Section 929U of the Dodd Frank Act. That argument is unavailing. Prior to the Dodd Frank deadline, the SEC requested, and was granted, an extension to file an enforcement action. The complaint was filed well in advance of the extended deadline.

2

its investment strategy." Compl. ¶ 2.

## SUFFICIENT ALLEGATIONS OF FRAUD AND MISREPRESENTATION

### I. Fed. R. Civ. P. 12(b)(6) and 9(b) Pleading Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152 (2d Cir. 2002). "The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000).

In addition to the pleading requirements of Rule 12(b)(6), a complaint alleging securities fraud must satisfy the heightened pleading requirements of Rule 9(b), which requires that a party alleging fraud "state with particularity the circumstances constituting fraud." To satisfy this pleading threshold, the complaint must: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent.'" *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

## II. The SEC's Claims Pursuant to Section 10(b), Rule 10b-5 and Section 17(a)

Section 10(b), and Rule 10b–5 prohibit fraudulent conduct in connection with the purchase or sale of a security. *See* 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b–5(a), (b) and (c). To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must allege that Defendants "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce. Section 17(a)(1) forbids the direct or indirect use of any device, scheme, or artifice to defraud; Section 17(a)(2) makes it unlawful to obtain money or property through misstatements or omissions about material facts; and Section 17(a)(3) proscribes any transaction or course of business that operates as a fraud or deceit upon a securities buyer. 15 U.S.C. §§ 77q(a)(1), (2) and (3). Claims under Section 17(a) of the Securities Acts have essentially the same elements as 10(b), but subsections (a)(2) and (a)(3) do not require a finding of scienter. *Monarch*, 194 F.3d at 308. To state a claim under these subsections, Plaintiff must establish at least negligence with respect to the material misrepresentation or omission. *Id.*

Scienter is a mental state "embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 n.12 (1976). A complaint may adequately plead scienter either (1) "by alleging facts to show that defendants had motive and opportunity to commit fraud,

4

or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehaviour or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006). Motive entails "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Opportunity consists of "the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* Conscious misbehavior "is easily identified since it encompasses deliberate illegal behavior." *Id.* at 308.

>   With respect to Section 17(a) of the Securities Act of 1933, the SEC alleges that

> > Defendants Yorkville, Angelo and Schinik directly or indirectly, knowingly, recklessly, or negligently, in the offer or sale or securities: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities.

Compl. ¶ 95. With respect to Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC alleges that

> > Defendants Yorkville, Angelo, and Schinik, directly or indirectly, knowing or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact, necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon persons, in connection with the purchase or sale of securities.

Compl. ¶ 98.

The SEC further alleges that Yorkville violated Section 10(b) of the Exchange Act and Rule 10b-5 and that Angelo, as a control person of Yorkville, "did not act in good faith and,

directly or indirectly, induced the acts constituting Yorkville's violations" and had actual knowledge of Yorkville's violations. Compl. ¶¶ 101-105. Finally, the SEC charges Angelo and Schinik with aiding and abetting liability for violations of Section 10(b) of the Exchange Act and Rule 10b-5, alleging that Angelo and Schinik, as associate persons of Yorkville, knowingly provided substantial assistance to Yorkville and aided and abetted Yorkville's violations of the above statutes. Compl. ¶¶ 115-121.

### III.   The SEC's Claims Pursuant to Sections Sections 206(1) and 206(2) of the Advisers Act

Section 206(1) of the Advisers Act prohibits "any investment adviser" from "employ[ing] any device, scheme, or artifice to defraud any client or prospective client,"[2] and Sections 206(2) and (4) and Rule 206(4)-8 thereunder, prohibit fraudulent and deceptive practices by investment advisers.[3] Scienter is a required element of proof for a violation under Section 206(1), and the SEC must establish at least negligence to prove violations of Sections 206(2) and 206(4). *SEC v. Moran*, 922 F. Supp.867, 897 (S.D.N.Y. 1996). In order to state a claim for aiding and abetting violations under section 206(1), 206(2), 206(4) of the '40 Act and Rule 206(4)–8 promulgated thereunder, 17 C.F.R. § 206(4)–8, the SEC must plead "(1) the existence of a securities law violation by the primary... party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation."[7] *IIT v. Cornfield,* 619 F.2d 909, 922 (2d Cir.1980).

The SEC charges Yorkville and Angelo with violations of Sections 206(1) and 206(2) of the Advisers Act. The SEC alleges that as investment advisers, who owed the Funds "duties of utmost good faith, fidelity and care to make full and fair disclosure to them of all

---

[2] 15 U.S.C. § 80b-6(1)
[3] 15 U.S.C. § 80b-6(2)-(4); 17 C.F.R. § 275.206(4)-8.

6

material facts," Yorkville and Angelo "(a) employed devices, schemes, or artifices to defraud clients and prospective clients; or (b) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients." Compl. ¶¶ 107-109. The SEC also charges Yorkville and Angelo with violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act, alleging that Yorkville and Angelo

> (1) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the Funds; and (2) otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive or manipulative

Compl. ¶112. Finally, the SEC charges Angelo and Schinik with aiding and abetting liability for violations of Sections 206(1) and (2) of the Advisers Act and Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. The SEC alleges that Angelo and Schinik, as associate persons of Yorkville, knowingly provided substantial assistance to Yorkville and aided and abetted Yorkville's violations of the above statutes. Compl. ¶¶ 115-121.

## IV.   The SEC's Allegations are Minimally Sufficient

Several of the SEC's individual allegations fail to adequately state a securities fraud violation with the particularity required by Rule 9(b). First, many of the SEC's allegations concerning Yorkville's valuations, collateral, the valuation committee's review, liquidity and the use of a third party valuation agent fail to allege that the misrepresentations were material. In addition, allegations of Defendants' solicitation of investors by representing Yorkville as an "institutional grade firm" with high quality controls and investments attractive to pension funds and institutional investors are not supported by facts indicating that certain statements were false when made, material, or made with scienter or negligence. Compl. ¶ 44. The facts alleged also fail to demonstrate that certain of Yorkville and Angelo's written and oral misrepresentations

regarding Yorkville's protection of the Funds from downside risk were material or made with scienter or negligence. Compl. ¶¶ 45-50. Neither the alleged misrepresentations concerning the age of convertibles, nor the representation that Yorkville's collateral supported the value of its portfolio, were alleged to be made with scienter or negligence. Compl. ¶ 57. Finally, the complaint fails to allege that Yorkville's misrepresentations concerning collateral and the overvaluation of seven of their investments were material and made with scienter or negligence. Compl. ¶¶ 42-43. Notwithstanding these deficiencies, the complaint does contain factual allegations sufficient to survive a motion to dismiss.

The SEC's allegations that Defendants misrepresented Pluris's role in Yorkville's valuations to the funds auditor (Compl. ¶¶ 87-93) are stated with the particularity required by Rule 9(b). Specifically, the complaint alleges that in a management representation letter to McGladrey dated July 1, 2009, Angelo and Schinik fraudulently stated that Yorkville provided McGladrey with "all information relating to contracts with and results of work with specialists." Compl. ¶ 92. This was an alleged misrepresentation because "during the course of the 2008 year-end audit Schinik did not provide McGladrey with any of Pluris's convertible valuation reports." *Id.* Furthermore, "[e]ach of Pluris's 2008 reports showed total convertible valuations that were millions of dollars less than the total face value of the convertibles (and thus lower than the value that Yorkville calculated)." *Id.* The complaint alleges materiality, stating that if the actual valuation reports were provided they would not have supported the alleged reasonableness of the Funds' fair values. Compl. ¶ 93. The complaint also alleges the representations were made with scienter, stating that Angelo, who was involved in the decision to terminate Pluris, knew or was reckless in not knowing that the management representation letter he signed did not disclose the full extent of Pluris's convertible valuation work. *Id.*

In addition, the SEC's allegations that Yorkville and Angelo misrepresented the age of Yorkville's convertibles (Compl. ¶¶ 69-75) are also stated with the particularity required by Rule 9(b). The complaint alleges that between July 2008 and 2009, Defendants made false statements to investors about the age of the investments. Compl. ¶ 69. The complaint further alleges that during a July 22, 2008 conference call, Angelo told a prospective investor that 75% of Yorkville's portfolio was less than 18 months old and 90% was less than two years old. Compl. ¶ 70. These statements were allegedly misrepresentations because on July 22, 2008 43% of the investments were over two years old and on August 25, 2008, 45% were over two years old. Compl. ¶ 72. This misrepresentation was material because as the age of these investments increases, the likelihood of positive returns decreases. Compl. ¶ 69. Finally, the complaint alleges scienter, stating that Angelo reviewed Yorkville's monthly positions and knew or was reckless in not knowing the true ages of a large percentage of the investments. Complaint ¶¶ 73-75.

Because allegations in the complaint are sufficient to sustain Plaintiff's securities fraud claim, the complaint survives a motion to dismiss.

## CONCLUSION

Defendant's Motion to Dismiss is DENIED.

Dated: August 1, 2013
      New York, New York

SO ORDERED

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

9