UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                    :
SECURITIES AND EXCHANGE COMMISSION,  :
                                                    :
                              Plaintiff,            :
                                                    :
              -against-                             :
                                                    :       12 CIV 7728 (GBD)(HBP)
                                                    :
YORKVILLE ADVISORS, LLC,                    :
MARK ANGELO, and EDWARD SCHINIK,    :       ECF CASE
                                                    :
                              Defendants.           :
                                                    :
_____:


**MEMORANDUM OF LAW IN SUPPORT OF THE SECURITIES AND EXCHANGE
COMMISSION'S OPPOSITION TO DEFENDANTS YORKVILLE ADVISORS, LLC'S,
MARK ANGELO'S AND EDWARD SCHINIK'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS REFERENCED IN THE SECURITIES AND
EXCHANGE COMMISSION'S JANUARY 25, 2013 AND FEBRUARY 15, 2013
PRIVILEG LOGS**


U.S, Securities and Exchange Commission
200 Vesey Street (Brookfield Place)
Room 400
New York, NY 10281

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

I. SUMMARY OF FACTS AND PROCEDURAL POSTURE .................................................... 2

II. LEGAL ARGUMENT ............................................................................................................. 4

  A.  Defendants' Motion is Procedurally Improper ..................................................................... 4

  B.  The Revised Privilege Log is Adequately Detailed ............................................................ 6

    1.  The SEC Has Provided Additional Details ...................................................................... 6

    2.  The SEC is Prohibited from Disclosing Certain Information
       Pursuant to 31 U.S.C. § 5311 et seq. ............................................................................ 7

    3.  The SEC is Prohibited from Disclosing Certain Information
       Pursuant to International Agreements with Foreign Governments ............................. 8

  C.  Defendants' Improper Motion Notwithstanding, the SEC Has Properly Asserted the
    Privileges in Its Revised Privilege Log ............................................................................ 10

    1.  The SEC Appropriately Asserts Deliberative Process Protection ............................... 11

    2.  The SEC Appropriately Asserts Work Product Protection ........................................... 13

    3.  The SEC Appropriately Asserts Protection Over Intergovernmental
       Communications, or "Common Interest" Protection ...................................................14

  D.  The SEC Has Not Waived Any of its Privileges ............................................................. 15

III.  CONCLUSION ................................................................................................................... 16

## Table of Authorities

**Cases**

*Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995)............................................................. 8

*A.I.A. Holdings, S.A., et al., v. Lehman Brothers, Inc., et al.* 2002 U.S. Dist. LEXIS 20107,

    (S.D.N.Y. Oct. 21, 2002) ................................................................................................ 10, 15

*Air Canada v. Department of Transportation*, 843 F.2d 1483 (D.C. Cir. 1988). ...................... 8, 9

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980)................... 11

*Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964)............................................ 14

*De Los Santos Mora v. New York*, 524 F.3d 183 (2d Cir. 2008) ................................................... 9

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). .................... 11

*Hickman v. Taylor*, 329 U.S. 495 (1947)...................................................................................... 13

*Iceland Steamship Co. v. Department of the Army*, 201 F.3d 451  (D.C. Cir. 2000) .................... 8

*In re Grand Jury Subpoenas dated Dec. 18, 1981 & Jan. 4, 1982*, 561 F.Supp.1247 (E.D.N.Y.

    1982) ........................................................................................................................... 13

*In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D. Tex. 1981) ................................................ 14

*Lambert v. Chase Manhattan Bank*, 1996 WL 252374 (S.D.N.Y. 1996)....................................... 6

*Nishnic v. Department of Justice*, 671 F. Supp. 771 (D.D.C. 1987)............................................. 15

*S.E.C. v. Strauss*, 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) ........................................... 12, 13

*Safecard Services, Inc. v. SEC*, 926 F .2d 1197 (D. C. Cir. 1991) ............................................... 12

*Schachar v. American Academy of Ophthalmology*, 106 F.R.D. 187 (N.D. Ill. 1985)................ 14

*SEC v. Rosenfeld*, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) ................................................. 15

*SEC v. Sentinel Management Group, Inc.*, Case No. 07-C-4684, 2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) .................................................................................................................. 12

*Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176 (1982).................................................. 9

*Tigue v. DOJ*, 312 F.3d 70 (2d Cir. 2002) ................................................................................... 11

*Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960) .......... 14

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) ............................................................ 9

*U.S. v. Faibish*, 2012 WL 6538604 (E.D.N.Y. Dec. 13, 2012) ..................................................... 7

*U.S. v. Holihan*, 248 F. Supp. 2d 179 (W.D.N.Y. 2003) .............................................................. 7

*Western Fuels Association, Inc. v. Burlington Northern Railroad Co.*, 102 F.R.D. 201 (D. Wyo. 1984) ......................................................................................................................... 14

*Window Headquarters v. Mat Basic Four*, 1996 WL 63046 (S.D.N.Y. 1996) ............................. 6

**Statutes**

15 U.S.C. § 78x ............................................................................................................................ 15

15 U.S.C. § 78x(d). ....................................................................................................................... 9

15 U.S.C. § 78x(f). ........................................................................................................................ 9

31 U.S.C. §5311, *et seq*............................................................................................................... 7

31 U.S.C. §5318(g) ....................................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 26(b)(3) .................................................................................. 13

Federal Rule of Civil Procedure 26(b)(3)(B)............................................................................. 13

Federal Rule of Civil Procedure 26(b)(5)(A)(ii)....................................................................... 3,6

Federal Rule of Civil Procedure 34(b)(2)(C). ............................................................................. 5

Federal Rule of Civil Procedure 37(a)(1) .................................................................................... 7

Plaintiff Securities and Exchange Commission ("SEC"), through its attorneys, submits this Opposition to Defendants Yorkville Advisors, LLC's, Mark Angelo's and Edward Schinik's Motion to Compel filed January 27, 2014 ("Defendants' Motion").

## PRELIMINARY STATEMENT

In the more than five weeks that have elapsed since the December 19, 2013 Hearing (the "December Hearing"), Defendants' request to file a motion to compel more detailed privilege logs has now morphed into a motion to compel the production of the privileged documents themselves. Specifically, in derogation of the Court's December 23, 2013 Order to file a motion only as to the adequacy of the SEC's privilege logs, Defendants' motion now raises a challenge to the propriety of the SEC's privilege assertions and asks the Court to hold that the SEC has waived its privileges. Defendants move for this extraordinary and unprecedented relief without first meeting and conferring with the SEC, without submitting a letter brief to the Court, and without requesting leave to file such a motion during the December Hearing. Defendants must not be permitted to gain unfair advantage while flouting proper discovery and motion practice.

Furthermore, in an effort to portray the SEC in false light, Defendants' motion ignores that the SEC informed the court that it would provide Defendants with the names of the authors and recipients of its privileged communications. The SEC submits a revised privileged log ("Revised Privilege Log") with this response. In addition, and in continuing its good faith responses, the SEC has further revised its privilege logs in light of new information. For the reasons detailed herein, the SEC requests that Defendants' Motion be denied in its entirety.

## I.    SUMMARY OF FACTS AND PROCEDURAL POSTURE

On December 18, 2012, Defendants served the SEC with their First Request for the Production of Documents ("Defendants' First Request").[1]   On January 17, 2013, the SEC produced its response to Defendants' First Request, along with responsive, non-privileged documents ("SEC's First Response").[2]   And on January 25, 2013 and February 15, 2013, the SEC produced privilege logs relating to the SEC's First Response ("SEC's Privilege Logs").[3]   In response, on October 21, 2013, Defendants served the SEC with a letter ("Defendants' October 2013 Letter")[4] requesting that the SEC "amend and supplement the description of the documents [in the privilege log] so that we may evaluate the SEC's privilege assertions."  (*Id.* at 6). Defendants' October 2013 Letter did not state that the log was insufficient because the SEC had failed to list all of the names of the individual authors and recipients of the documents listed in the SEC's Privilege Logs.  On October 28, 2013, the SEC submitted a letter to Defendants (the "SEC's October Letter")[5] that stated, "[w]e believe that our privilege logs are sufficient under the Federal Rules, the Local Rules for the S.D.N.Y. and the Standing Order in this case, and we will not be amending them."  (*Id.* at 3).

---

[1]  Defendants' First Request,  is attached as Exhibit A to the Declaration of Stephen B. Holden, dated February 10, 2014 ("Holden Decl."), ¶ 3.

[2]  SEC's First Response, Ex. B, Holden Decl., ¶ 4.

[3]  SEC's January 25, 2013 and February 15, 2013 privilege logs, Exhs. C and D, Holden Decl., ¶¶ 5, 6.

[4]  Defendants' October 2013 Letter, Ex. E, Holden Decl., ¶ 7.

[5]  SEC's October 2013 Letter, Ex. F, Holden Decl., ¶ 8.

Without meeting and conferring with the SEC regarding the names of the individual authors and recipients of the documents listed in the SEC's Privilege Logs, the Defendants submitted a letter request to the Court on November 19, 2013 requesting leave file a motion compelling the SEC to produce privilege logs listing the names of the authors and recipients of the documents listed in the SEC's Privilege Logs, as well as a more detailed subject matter description of the documents (the "Defendants' Pre-Motion Letter").[6]  In its November 22, 2013 response letter (the "SEC's Response Letter"),[7] the SEC explained to the Court that it created the SEC's Privilege Logs in good faith to allow the Defendants to assess the SEC's assertions of privilege while also complying with confidentiality requirements of communications with law enforcement personnel, with certain statutes and the Multilateral Memorandum of Understanding ("MOU") entered into by members of the International Organization of Securities Commissions ("IOSCO").

At the December Hearing,[8] the SEC informed the Court that it had no problem with providing Defendants with the names of the authors and recipients of the privileged documents; however, with respect to the description of the subject matter, the SEC believed that it could not disclose any additional information without disclosing the confidential information itself.  Indeed, Federal Rule of Civil Procedure 26(b)(5)(A)(ii) recognizes that the documents should be described in a manner that does not reveal "information itself privileged or protected."  At the Court's invitation, the SEC requested the opportunity to brief the issue of

---

[6]  Defendants' Pre-Motion Letter, Ex. G, Holden Decl., ¶ 9.

[7]  SEC's Response Letter, Ex. H, Holden Decl., ¶ 10.

[8]  Transcript, December Hearing (relevant portions), Exhibit I, Holden Decl., ¶ 11.

whether the log was sufficiently detailed with respect to the subject matter of these communications.

Despite Defendants informing the Court in their Pre-Motion Letter that they "respectfully request leave to file a motion to compel the SEC to conform its privilege logs to the applicable Rules and this Court's Order," (Defendants' Pre-Motion Letter at 1, Holden Decl. Ex. G) and the Court's clear December 23, 2013 Order[9] instructing them to file a motion "concerning the adequacy of the plaintiff's privilege log," on January 27, 2014 Defendants served the SEC with a motion to compel the production of the privileged documents themselves.  Furthermore, without meeting and conferring with the SEC, without submitting a pre-motion letter request to the Court, and without requesting leave during the December Hearing, Defendants also moved the Court to compel the production of privileged documents because SEC allegedly has not established its entitlement to the privileges asserted in its Privilege Logs.  Defendants made this motion notwithstanding precedent in this Court stating that privilege logs need not establish each element of an asserted privilege.

## II.   LEGAL ARGUMENT

### A.   Defendants' Motion is Procedurally Improper

In filing their motion, Defendants have failed to comply with the Federal Rules of Civil Procedure ("Federal Rules"), the Local Civil Rules for the Southern District of New York ("Local Rules"), and the Pilot Project for Complex Cases order that the Court entered on October 17, 2012 ("Pilot Project").  Consistent with their past pattern of frivolous and abusive discovery

---

[9]  The Court's December 23, 2013 Order, Ex. J, Holden Decl., ¶ 12.

practices,[10] Defendants now raise an entirely new and improper challenge as to the propriety of

the SEC's privilege assertions themselves.[11]  For Defendants to first raise this challenge in

formal motion practice is entirely inappropriate.  Defendants attempt to obfuscate their

procedural failings by including false allegations concerning the SEC's conduct and by

mischaracterizing the December Hearing.  However, the SEC has acted in utmost good faith and

in full compliance with the Court's orders, and the record is clear that the Court invited motions

solely on the adequacy of the privilege log – an invitation the parties accepted at December 19,

2013 hearing.

First, Defendants never attempted to confer with the SEC regarding whether the SEC had

established its entitlement to the privileges it asserted, in violation of the Federal Rules and the

Pilot Project.  Second, Defendants never raised the issue in any letter brief submitted to the

Court, in violation of Local Rule 37.2 and Section II.C. of the Pilot Project.  Third, Defendants

never requested to file such a motion during the December 19, 2013 hearing.

By seeking the Court's intervention now, Defendants not only violate the Federal Rules,

Local Rules and the Pilot Project, they also defy the Court's clear direction at the December 19,

2013 hearing to "have formal motion practice of the adequacy of the privilege log," and the

---

[10]  For example, Defendants attempted to discourage investors from providing the SEC with
subpoenaed documents by sending certain investors letters that misrepresented Judge Daniels'
rejection of their motion to dismiss the Complaint.  In addition, on October 10, 2013, Defendants
filed a frivolous Motion for Summary Judgment, despite agreeing days earlier to a scheduling
order providing that such motions would be filed at the conclusion of discovery.  On October 30,
2013, Defendants submitted Requests to Admit that violated Rule F of the Pilot Project.  And, on
November 7, 2013, Defendants refused to produce *any* documents responsive to the SEC's
Second Document Request, in violation of Federal Rule of Civil Procedure 34(b)(2)(C).

[11]  Specifically, Defendants challenge the SEC's assertion of the deliberative process privilege,
the law enforcement privilege, the attorney client privilege, and the work product doctrine
(including intergovernmental "common interest" communications).  *Defendants' Memorandum
of Law* at 14.  The SEC no longer is asserting the attorney-client privilege as to the redacted
portion of the April 7, 2009 tip/complaint/referral.

Court's December 23, 2013 Order stating, "the parties dispute concerning the adequacy of the plaintiff's privilege log is best resolved by way of formal motion."   Defendants could have met and conferred with the SEC about the legitimacy of its privilege claims at any time in the more than four months since Defendants first contacted the SEC concerning the adequacy of detail contained in the privilege logs.  Had Defendants done so, the SEC would have provided its justifications.  Instead, Defendants chose to wait, and then to bootstrap this challenge to a different motion – one on the adequacy of the log that the Court permitted to be briefed.  In the Southern District, "[f]ailure to comply with [the meet and confer rule] may result in denial of the motion and sanctions."  *Civil Practice in the Southern District of New York* § 25.4 (citing *Window Headquarters v. Mat Basic Four*, 1996 WL 63046 (S.D.N.Y. 1996); *Lambert v. Chase Manhattan Bank*, 1996 WL 252374 (S.D.N.Y. 1996)).  Because Defendants blatantly violated the Fed.R.Civ.P, the Local Rules, the Pilot Project and the Court's December 23, 2013 Order, their motion to compel the production of documents should be denied.

**B.     The Revised Privilege Log is Adequately Detailed**

Federal Rule 26(b)(5)(A)(ii) states that a party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim" (emphasis added).  The SEC's Revised Privilege Log provides sufficient detail to Defendants to assess the privileges asserted.[12]

**1.     The SEC Has Provided Additional Details**

Defendants complain of the SEC's purported "refusal to make a single change" to its privilege log.  First, Defendants never attempted to meet and confer with the SEC concerning the

---

[12] SEC's Revised Privilege Log, Ex. K, Holden Decl. ¶ 13.

names of the individual authors and recipients of the documents listed in the January 25, 2013 privilege log, as required by both Federal Rule 37(a)(1) and Section II.B.2. of the Pilot Project. Second, Defendants' representations are belied by the incontrovertible fact that the SEC informed the Court during the December Hearing that it would disclose the names of individuals in its privilege log ("we are happy to put [in] the names of the individuals…"). (*See* Tr. at 79:4-5). Accordingly, the SEC has done so in its Revised Privilege Log.

Further, the SEC in good faith has re-examined certain of its privilege assertions. As the SEC stated in its November 22, 2013 letter to the Court, at the time the privilege logs were drafted, the SEC was concerned that the inclusion of more information than was given the general subject matter described in its privilege logs could have interfered with an investigation. The SEC has become aware of information that obviates the need to assert the law enforcement privilege and the investigatory privilege over certain documents. In addition, the SEC is no longer asserting the law enforcement privilege and the investigatory privilege as to the listed communications with foreign regulatory authorities. Accordingly, the SEC's Revised Privilege Log contains additional detail concerning these documents.

### 2. The SEC is Prohibited from Disclosing Certain Information Pursuant to 31 U.S.C. § 5311 *et seq.*

Defendants contend that the SEC provided insufficient detail in its privilege logs concerning certain reports. However, the SEC is prohibited from disclosing such information pursuant to the Annunzio–Wylie Anti-Money Laundering Act (the "Act"), 31 U.S.C. §5311, *et seq. See, e.g., U.S. v. Holihan*, 248 F. Supp. 2d 179, 186 (W.D.N.Y. 2003) (31 U.S.C. §5318(g) creates an "unqualified discovery and evidentiary privilege that cannot be waived."); *U.S. v. Faibish*, 2012 WL 6538604, *1 (E.D.N.Y. Dec. 13, 2012). Respectfully, the Court must not compel the SEC to provide more information concerning these reports, or the reports

themselves.  Should the Court have any additional concerns regarding the confidential nature of

the reports, the SEC requests that the Court order an *in camera* review of the reports before

issuing a decision on this matter.

>   **3.**     **The SEC is Prohibited From Disclosing Certain Information**
>             **Pursuant to International Agreements with Foreign Governments**

The information contained in the privileged communications between the SEC and

foreign regulators is confidential pursuant to the Multilateral Memoranda of Understanding

("MOU") that the SEC has entered into with foreign securities authorities. The MOU entered

into by the International Organization of Securities Commissions ("IOSCO"), including the SEC,

the Netherlands Authority for the Financial Markets ("NethAFM"), the U.K. Financial Services

Authority ("FSA")[13] and the Commissione Nazionale per le Societa e la Borsa ("CONSOB"),

provides that "[e ]ach Authority will keep confidential requests made under this Memorandum of

Understanding, the contents of such requests, and any matters arising under this Memorandum of

Understanding, including consultations between or among the Authorities and unsolicited

assistance."[14] (Holden Decl. Ex. K, § 11(a))  Courts give great weight to the expectations and

intent of the parties to international agreements like the MOUs between the SEC and foreign

securities authorities. "The MOU is an international executive agreement, which we interpret

according to the principles applicable to treaties." *Air Canada v. Department of Transportation*,

843 F.2d 1483, 1486 (D.C. Cir. 1988).  *Accord Bank Melli Iran v. Pahlavi*, 58 F .3d 1406, 1408

(9th Cir. 1995) ("[e]xecutive agreements... are interpreted in the same manner as treaties and

reviewed by the same standard"); *Iceland Steamship Co. v. Department of the Army*, 201 F.3d

451, 458 (D.C. Cir. 2000) ("[w]hen interpreting a treaty or memorandum of understanding," the

---

[13]  The FSA is now known as the U.K. Financial Conduct Authority ("FCA").

[14]  IOSCO MOU, Ex. K, Holden Decl., ¶ 14.

court is "guided by principles similar to those governing statutory interpretation").  When an

MOU provides that the SEC will maintain the confidentiality of its interactions with foreign

securities authorities, "[t]he clear import of [the] language controls." *Sumitomo Shoji America,*

*Inc. v. Avagliano*, 457 U.S. 176, 180 (1982). In the event of doubt, "the meaning attributed to

treaty provisions by the Government agencies charged with their negotiation and enforcement is

entitled to great weight." *Id. Accord United States v. Al-Hamdi*, 356 F.3d 564, 570 (4th Cir.

2004)(same); *Iceland Steamship Co.*, 201 F.3d at 458 (same); *Air Canada*, 843 F.2d at 1487

(same). The Second Circuit follows this rule. *De Los Santos Mora v. New York*, 524 F.3d 183,

204 (2d Cir. 2008) ("the meaning attributed to treaty provisions by the Government agencies

charged with their negotiation and enforcement is entitled to great weight")( quoting Sumitomo).

Furthermore, Section 24(d) of the Securities Exchange Act of 1934 (the "Exchange Act")

imposes a statutory obligation on the SEC not to disclose information obtained from a foreign

securities authority:

> [t]he Commission shall not be compelled to disclose records obtained from a foreign
> securities authority if (1) the foreign securities authority has in good faith determined and
> represented to the Commission that public disclosure of such records would violate the
> laws applicable to that foreign securities authority, and (2) the Commission obtains such
> records pursuant to (A) such procedure as the Commission may authorize for use in
> connection with the administration or enforcement of the securities laws, or (B) a
> memorandum of understanding.

15 U.S.C. § 78x(d).  Similarly, Section 24(f) of the Exchange Act provides:

> The Commission shall not be compelled to disclose privileged information
> obtained from any foreign securities authority, or foreign law enforcement authority, if
> the authority has in good faith determined and represented to the Commission that the
> information is privileged.

15 U.S.C. §78x(f). Without waiving the protection of Section 24(d) or (f), the SEC informs the

Court that NethAFM, the FSA and CONSOB each have requested that the SEC keep confidential its communications with the SEC in this matter.

Here, Defendants' motion seeks information concerning the SEC's requests to foreign securities authorities, including the contents of such requests, and to consultations between the SEC and foreign authorities in the nonpublic investigation underlying this litigation. This information is confidential in that signatories to the governing MOUs have agreed to keep such information confidential. Furthermore, under Sections 24(d) and (f) of the Exchange Act, the SEC has a statutory obligation not to disclose the information. For these reasons, the subject matter descriptions in the SEC's privilege log concerning communications with foreign authorities is proper.

### C.      Defendants' Improper Motion Notwithstanding, The SEC Has Properly Asserted the Privileges in Its Revised Privilege Log

As stated above, the SEC was never asked by Defendants to explain the bases for the privileges it asserted prior to Defendants filing their formal motion to compel. For this reason alone, Defendants' motion should be denied by the Court. However, should the Court choose to consider on the merits Defendants' argument that the SEC did not establish the privileges it asserted in its logs, the SEC now responds with information establishing those privileges.

Moreover, the extraordinary relief Defendants seek -- waiver of privilege and the production of the documents listed in the privilege logs -- is wholly unwarranted and unjustified by existing law in this District. This Court aptly stated in the *A.I.A. Holdings* case that "the index of withheld documents need not establish all the elements of a privilege by itself." *A.I.A. Holdings, S.A., et al., v. Lehman Brothers, Inc., et al.*, 2002 U.S. Dist. LEXIS 20107 *10-*11 (S.D.N.Y. Oct. 21, 2002) (M.J. Pitman). Furthermore, when a claim is challenged, the proper remedy is not the extraordinary penalty of waiver of a claim, but for the withholding party to

10

"submit evidence, by way of affidavit, deposition testimony or therwise, establishing only the challenged elements of the applicable privilege." *Id.* at 16-17.   Thus, Defendants' motion is not only improper in procedure, but also unsupportable in substance.

Defendants' twelfth-hour challenge, with no notice to the SEC, was a clear attempt to prejudice the SEC.  Had it instead been so a good faith attempt to seek information, Defendants would have first met and conferred with the SEC concerning this issue at some point in the previous four months, when they first raised their issue with the adequacy of detail in the logs.

### 1.     The SEC Appropriately Asserts Deliberative Process Protection

The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (citing *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The deliberative process privilege "serves to assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.* (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In order for a communication to be protected by deliberative process privilege, it must be: (1) inter-agency or intra-agency; (2) deliberative; and (3) pre-decisional. *Id.* (citations omitted). Here, the portions of the three documents listed in the SEC's Revised Privilege Log meet this

test.  The communications were inter-agency communications because they were between the SEC Office of International Affairs, Enforcement staff and foreign regulatory authorities.  The portions identified in the Secretary of the SEC's declaration are deliberative because they reflect the SEC staff's deliberations concerning Defendants' potential securities violations.  In addition, the communications occurred prior to the SEC's decision to charge Defendants with securities fraud; thus they were pre-decisional.  (*See* Powalski Declaration, Holden Decl. Exh L).[15]

       Furthermore, Defendants make the logically deficient and baseless contention that the SEC's privilege claims are inconsistent with one another, arguing that if the SEC is claiming a deliberative process privilege (which applies to pre-decisional communications) it cannot also claim a work product privilege (which they claim applies only to litigation documents).  Defendants are wrong.  The Southern District and other courts have long recognized that the work product doctrine applies to documents prepared *in anticipation* of litigation as well as during litigation.  *See S.E.C. v. Strauss*, 2009 WL 3459204, at *4 (S.D.N.Y. Oct. 28, 2009) (Pitman, M.J.); *see also Safecard Services, Inc. v. SEC*, 926 F .2d 1197, 1202 (D. C. Cir. 1991)("[ t ]he existence of an active investigation ... is strong circumstantial evidence that the agency lawyer prepared the document with future litigation in mind"); *SEC v. Sentinel Management Group, Inc.*, Case No. 07-C-4684, 2010 WL 4977220, at *7 (N.D. Ill. Dec. 2, 2010) ("[m]aterials prepared by SEC attorneys in anticipation of litigation that disclose what they learned during interviews undoubtedly constitute attorney work product").  An agency's pre-decisional deliberations would thus qualify as both privileged deliberative process and protected work product.

---

[15]  Declaration of Lynn Powalski, Deputy Secretary, Ex. L, Holden Decl., ¶ 15.

### 2.      The SEC Appropriately Assets Work Product Protection

Federal Rule 26(b)(3) provides that materials prepared in anticipation of trial are protected work product, and are not subject to discovery, except upon a showing that the party seeking discovery "has substantial need of the materials to prepare its case, and cannot, without undue hardship, obtain their substantial equivalent by other means."  Additionally, Federal Rule 26(b)(3)(B) provides that even if the court orders discovery of these materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation."

A party asserting work-product protection must prove three elements: the material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative.  *S.E.C. v. Strauss*, 2009 WL 3459204, at *4 (S.D.N.Y. Oct. 28, 2009) (Pitman, M.J. quoting *In re Grand Jury Subpoenas dated Dec. 18, 1981 & Jan. 4, 1982*, 561 F.Supp.1247, 1257 (E.D.N.Y. 1982) (McLaughlin, D.J.))  Once work-product protection has been established, the burden shifts to the other party to establish entitlement to the requested documents, despite their status as attorney work product.

Under the attorney work product doctrine articulated in Federal Rule 26(b)(3), work product is reflected through "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  Here, the communications identified in the SEC's revised privilege log meet the elements of the work-product doctrine:  (1) they are tangible communications; (2) they were created in anticipation of litigation because they occurred after a Formal Order of Investigation into Yorkville Advisors, LLC was issued and each communication was created in connection with that investigation; and (3) they were created by or for the SEC

13

staff.  Furthermore, as discussed below, the work-product protection extends to non-parties if the non-party shares a common interest with the party.[16]

### 3.   The SEC Appropriately Asserts Protection Over Intergovernmental Communications, or "Common Interest" Protection

Defendants claim that no privilege applies to intergovernmental communications, but multiple courts, including the Southern District of New York, have held such communications to be protected when the entities share a common interest.  Here, the SEC's communications with domestic law enforcement personnel, self-regulatory organizations, and foreign regulators are protected work product because they share a common interest privilege that the SEC shares with these authorities.

The common interest privilege is the result of the gradual expansion of the joint defense privilege to cover parties who are not co-defendants in a criminal case.  The courts have applied the privilege to civil co-defendants, *Western Fuels Association, Inc. v. Burlington Northern Railroad Co.*, 102 F.R.D. 201 (D. Wyo. 1984); companies that had been separately summoned before a grand jury and shared information before an indictment was returned, *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964); potential co-parties to prospective litigation, *In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D. Tex. 1981); plaintiffs who were pursuing separate actions in different states, *Schachar v. American Academy of Ophthalmology*, 106 F.R.D. 187 (N.D. Ill. 1985); and civil defendants who were sued in separate actions, *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960).  The privilege also

---

[16]  During the December Hearing, the Court expressed that "an email from one paralegal to another paralegal saying 'attached is a copy of the complaint we filed in SEC v. Yorkville,' which clearly would not be a privileged communication."  To the extent that any emails listed in the SEC's Privilege Logs are deemed to be purely ministerial and not subject to a privilege, such communications should not be produced because they are irrelevant; they could not lead to the discovery of admissible evidence.

applies to communications between and among government agencies with common law enforcement interests.  *See, e.g., SEC v. Rosenfeld*, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) at *4 ("the SEC and the Ontario Securities Commission have a common prosecutorial interest"); *cf.  Nishnic v. Department of Justice*, 671 F. Supp. 771, 775 (D.D.C. 1987) ("even if some of the information in the ROIs was shared with the Israeli government, the [Office of Special Investigations] has not waived its work product privilege with respect to these reports"), *aff'd,* 828 F.2d 844 (D.C. Cir. 1987); *see also* 15 U.S.C. § 78x (SEC does not waive any privilege by transferring information to other agencies or foreign securities or law enforcement authorities). Thus, the SEC's communications to and from the USAO, FINRA and foreign regulators concerning the investigation underlying this litigation are protected under the common interest privilege and work-product doctrine.

### D.       The SEC Has Not Waived Any of its Privileges

The SEC's Revised Privilege Log complies with the Federal Rules, the Local Civil Rules and the Pilot Project for the reasons stated above.  Contrary to Defendants' assertions and attempts to subject new obligations on the SEC, the Federal Rules are "not intended to establish rigid requirements concerning the information disclosed in an index of withheld documents." *A.I.A. Holdings,* 2002 U.S. Dist. LEXIS at *10.  Because the SEC's revised privilege log complies with applicable rules and orders, it has not waived any privilege.  Defendants' contention that the SEC's conduct necessitates a waiver of privileges is so farcical that is scarcely deserves any response.  Defendants failed to meet and confer with the SEC regarding these contentions, yet they now disingenuously and illogically assert that the SEC repeatedly failed to address their concerns.  Furthermore, Defendants' portrayal of the SEC as recalcitrant in

the face of the Court's order is pure fiction.   For example, Defendants state in their

Memorandum of Law that:

> Even after the Court expressed serious concerns regarding the sufficiency of the SEC's privilege logs, and pointed the SEC to an authoritative treatise that warned of the consequences of relying on a deficient privilege log, the SEC informed the Court that it would not make a single amendment to its privilege logs. (*See* Tr. 75:22-79:3.) Thereafter, the Court approved Defendants' request for leave to pursue formal motion practice. (*Id.* at 79:12-15.)

(Defendants' Memorandum at 8.)  Nothing could be further from the truth.  In reality, the SEC

informed the Court that it *would* provide the names of the individual authors and recipients (*See*

Tr. 79:4-5), the Court invited the SEC to brief the issue of the effect of certain statutes and

treaties on discovery obligations (*Id.* at 76:23-24), and the SEC subsequently requested that the

issue be briefed (*Id.* 79:5-11).  At the conclusion of the hearing, the Court suggested to parties

that they read the "Civil Practice in the Southern District of New York" treatise (*Id.* at 80:20-23).

The SEC is particularly troubled, though not surprised, by Defendants' willingness to reconstruct

the December Hearing in such a blatantly inaccurate manner as is quoted above.

## III.   CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court deny Defendants'

Motion to Compel in its entirety.

_____/s/ Stephen B. Holden_____
Todd D. Brody
Stephen B. Holden
Attorney for Plaintiff
U.S, Securities and Exchange Commission
200 Vesey Street (Brookfield Place)
Room 400
New York, NY 10281
Tel: (212) 336-0092
holdens@sec.gov