UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SECURITIES AND EXCHANGE COMMISSION,:

               Plaintiff,       :

                            12 Civ. 7728 (GBD)(HBP)

    -against-          :

YORKVILLE ADVISORS, LLC, MARK   :    OPINION
ANGELO & EDWARD SCHINIK,         AND ORDER

                       :

            Defendants.

                       :
----------------------------------X

        PITMAN, United States Magistrate Judge:

## I.   Introduction

        By notice of motion dated January 27, 2014 (Docket Item 61), defendants Yorkville Advisors, LLC, Mark Angelo and Edward Schinik (collectively, "defendants") move for an Order compelling the Securities and Exchange Commission (the "SEC" or "plaintiff") to produce the documents scheduled in plaintiff's privilege logs, dated January 25, 2013 and February 15, 2013.

        For the reasons set forth below, defendants' motion is granted in part and denied in part.

## II.   Facts

        The SEC commenced this lawsuit on October 17, 2012 alleging, among other things, that defendants had (1) "engaged in

a fraudulent scheme pursuant to which they reported false and inflated values for certain convertible debentures, convertible preferred stock . . ., and promissory note investments held by the hedge funds managed by Yorkville" Advisors, LLC ("Yorkville") and (2) made other "materially false and misleading statements to investors and potential investors about" Yorkville (Complaint, dated October 17, 2012 (Docket Item 1) ¶¶ 1-2).  On October 31, 2012, this case was designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the "Pilot Project") (Docket Item 2).

Defendants served their First Request for the Production of Documents ("RFP") on December 18, 2012 (Defendants' First Request for the Production of Documents to the Securities and Exchange Commission, annexed as Exhibit A to the Declaration of Nicolas Morgan in Support of Defendants' Motion to Compel Production of Documents Referenced in Plaintiff's January 25, 2013 and February 15, 2013 Privilege Logs, dated January 27, 2014 ("Morgan Decl.") (Docket Item 65)).  On January 17, 2013, the SEC objected to certain requests in the RFP on the basis of privilege (Plaintiff Securities and Exchange Commission's Response to Defendants' First Request for the Production of Documents, annexed as Exhibit B to Morgan Decl.).  The SEC subsequently produced a privilege

log on January 25, 2013 ("January 25 Privilege Log") and supple-
mented that log with a second privilege log on February 15, 2013
("February 15 Privilege Log;" collectively, the "Privilege Logs")
(Plaintiff Securities and Exchange Commission's Privilege Log in
Response to Defendants' First Request for the Production of
Documents, dated January 25, 2013, annexed as Exhibit C to Morgan
Decl.; Plaintiff Securities and Exchange Commission's Privilege
Log in Response to Defendants' First Request for the Production
of Documents, dated February 15, 2013, annexed as Exhibit D to
Morgan Decl.).  The SEC asserted the following privilege claims
in its Privilege Logs:  (1) legal work-product doctrine; (2) law
enforcement-investigative privilege; (3) intergovernmental
investigative privilege; (4) deliberative process privilege;
(5) attorney-client privilege and (6) informant privilege (Morgan
Decl., Exs. C, D).

     By letter to the SEC, dated October 21, 2013, defen-
dants asserted that the descriptions of the documents in the
Privilege Logs were inadequate and requested that the SEC amend
and supplement the descriptions; specifically, defendants com-
plained that the Privilege Logs were so lacking in information
that defendants were unable to determine whether the privileges
asserted had been validly invoked (Letter from Nicolas Morgan,
Esq., counsel for defendants, dated October 21, 2013, to Todd

Brody, Esq. and Stephen B. Holden, Esq., counsel for plaintiff, at 6, annexed as Exhibit E to Morgan Decl.).  In response, the SEC wrote:  "We believe that our privilege logs are sufficient under the Federal Rules, the Local Rules for the S.D.N.Y. and the Standing Order in this case, and we will not be amending them" (Letter from Todd Brody, Esq. and Stephen B. Holden, Esq., counsel for plaintiff, dated October 28, 2013, to Nicolas Morgan, Esq., counsel for defendants, annexed as Exhibit F to Morgan Decl.).

Defendants subsequently submitted a letter to the court on November 19, 2013, requesting leave to file a motion to compel the SEC to produce more detailed privilege logs (Letter from Nicolas Morgan, Esq., dated November 19, 2013, to the Honorable George B. Daniels, United States District Judge, annexed as Exhibit G to Morgan Decl.).  The SEC opposed defendants' request on the ground that the SEC had fully complied with the relevant rules (Letter from Stephen B. Holden, Esq. and Todd Brody, Esq., dated November 22, 2013, to the Honorable George B. Daniels, United States District Judge, annexed as Exhibit H to Morgan Decl.).

I held a discovery conference with the parties on December 19, 2013 at which defendants reiterated their argument that the SEC Privilege Logs were inadequate (Tr. of Discovery

Conference, dated December 19, 2013, at 74-80, the relevant
portions of which are annexed as Exhibit I to the Morgan Decl.).
After reviewing the Privilege Logs, I noted:

> The Court:    I don't think these descriptions are
> sufficient.  I mean [they don't] allow
> for an intelligent assessment as to
> whether or not the privilege is validly
> asserted. . . .  I'm looking at the
> first one on the January 25th index.
> For all I know, that's an email from one
> paralegal to another paralegal saying,
> "Attached is a copy of the complaint we
> filed in SEC v. Yorkville," which clear-
> ly would not be a privileged communica-
> tion.

(Morgan Decl., Ex. I at 75-76).  In response to the SEC's argu-
ment that it was unable to reveal additional information due to
"various statutes and treaties" (Morgan Decl., Ex. I at 76), I
stated:

> The Court:    No, but you know, you can have something
> like . . . analysis of legal issues
> under the 34 Act, analysis of legal
> issues under the 33 Act, or analysis of
> Yorkville's compliance with the 33 Act.
>
>               *     *     *
>
> The Court:    That doesn't disclose to [defendants]
> anything more than what's already in the
> complaint and it allows for an intelli-
> gent assessment of whether or not the
> document is privileged.  And . . . the
> individuals who are authors and recipi-
> ents needs to be provided.

(Morgan Decl., Ex. I at 77).  In response, the SEC stated that it would be happy to add the names of the authors and recipients, but requested further briefing "with respect to the [deficient] subject matter" descriptions of the documents (Morgan Decl., Ex. I at 79).  I granted defendants permission to file a motion concerning the adequacy of the SEC's Privilege Logs (Morgan Decl., Ex. I at 79).

Defendants subsequently filed the present motion, arguing that:  (1) the Privilege Logs do not comply with the requirements of Fed.R.Civ.P. 26(b)(5), Local Rule 26.2(a)(2) and the rules governing the Pilot Project because they fail to set forth adequately the subject matter and author/recipient of the withheld documents; (2) the SEC has failed to establish its entitlement to the privileges it asserts, several of their privileges that are simultaneously asserted are in conflict with each other and at least one has not been recognized by any court; and (3) the foregoing deficiencies constitute a waiver of the SEC's privileges concerning the withheld documents (Memorandum of Law in Support of Defendants Yorkville Advisors, LLC, Mark Angelo, and Edward Schinik's Motion to Compel Production of Documents Referenced in Plaintiff's January 25, 2013 and February 15, 2013 Privilege Logs, dated January 27, 2014 (Docket Item 62) at 9-18).

On February 10, 2014, in conjunction with its opposition to defendants' motion, the SEC produced yet a third privilege log, revising the January 25 and February 15 Privilege Logs (Plaintiff Securities and Exchange Commission's Revised Privilege Log in Response to Defendants' First Request for the Production of Documents, dated February 10, 2014 ("Revised Privilege Log"), at 1-2, annexed as Exhibit K to the Declaration of Stephen B. Holden in Opposition to Defendants Yorkville Advisor LLC's, Mark Angelo's and Edward Schinik's Motion to Compel Production of Documents Reference[d] in the Securities and Exchange Commission's January 25, 2013 and February 15, 2013 Privileg[e] Logs, dated February 10, 2014 ("Holden Decl.") (Docket Item 64)).  The SEC also submitted a declaration from Lynn Powalski, Deputy Secretary of the SEC, who asserts deliberative process privilege over three emails in the Revised Privilege Log (Declaration of Lynn Powalski, dated February 10, 2014 ("Powalski Decl."), annexed as Exhibit M to the Holden Decl.).  Powalski declares that "[o]n February 10, 2014, the Commission, through its Associate General Counsel, to whom it has delegated the authority and who has given personal consideration to the matter, determined to assert a claim of deliberative process privilege over portions of [] documents in the Commission's files relating to the Investigation" (Powalski Decl. ¶ 4).

7

Relying on the Revised Privilege Log and the Powalski declaration, the SEC opposes defendants' motion on the following grounds:  (1) defendants failed to meet and confer with the SEC regarding the names of the individual authors and recipients of the withheld documents; (2) the Revised Privilege Log contains additional information and the SEC is prohibited from providing further details regarding (a) certain reports, pursuant to the Annunzio-Wylie Anti-Money Laundering Act (the "Act"), and (b) communications with foreign securities authorities, pursuant to the Multilateral Memoranda of Understanding (the "MOU") and sections 24(d) and 24(f) of the Securities Exchange Act of 1934 (the "Exchange Act"); (3) the SEC properly asserted the privileges set forth in the Revised Privilege Log and (4) "[b]ecause the SEC's revised privilege log complies with applicable rules and orders, it has not waived any privilege" (Memorandum of Law in Support of the Securities and Exchange Commission's Opposition to Defendants Yorkville Advisors, LLC's, Mark Angelo's and Edward Schinik's Motion to Compel Production of Documents Referenced in the Securities and Exchange Commission's January 25, 2013 and February 15, 2013 Privileg[e] Logs, filed on February 21, 2014 ("Opp'n") (Docket Item 63), at 4-16).

In reply, defendants contend that (1) the SEC's failure to timely revise the Privilege Logs constitutes a waiver of

privileges; (2) contrary to the SEC's assertion, defendants'
November 19, 2013 letter to the court explicitly requested "leave
to file a motion for an order that requires the SEC to produce
the documents listed on its . . . privilege logs" and (3) even
the Revised Privilege Log is deficient because the SEC has failed
to (a) demonstrate that the privileges claimed therein apply and
(b) provide caselaw in support of its argument that it need not
comply with the Federal Rules of Civil Procedure (Reply in
Support of Defendants Yorkville Advisors, LLC, Mark Angelo, and
Edward Schinik's Motion to Compel Production of Documents Refer-
enced in Plaintiff's January 25, 2013 and February 15, 2013
Privilege Logs, dated February 21, 2014 ("Reply") (Docket Item
66)).  Defendants also request that the court award them attor-
ney's fees and costs incurred in connection with this motion
(Reply at 1).

III.  Analysis

    A.  Legal Standards

        1.  Applicable Rules

        Rule 26 of the Federal Rules of Civil Procedure pro-
vides that when a party withholds documents on the grounds of
privilege, it must both "expressly make the claim" and "describe

the nature of the documents, communications, or tangible things
not produced or disclosed -- and do so in a manner that, without
revealing information itself privileged or protected, will enable
other parties to assess the claim."   Fed.R.Civ.P. 26(b)(5)(A).
In addition, Local Civil Rule 26.2 requires that a party assert-
ing a privilege in response to a document request provide:

> (i) the type of document, <u>e.g.</u>, letter or memorandum;
> (ii) the general subject matter of the document;
> (iii) the date of the document; and (iv) the author of
> the document, the addressees of the document, and any
> other recipients, and, where not apparent, the rela-
> tionship of the author, addressees, and recipients to
> each other . . . .

Local Civil Rule 26.2(a)(2)(A); <u>see also</u> <u>United States v. Constr.</u>
<u>Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996); <u>S.E.C. v.</u>
<u>Beacon Hill Asset Mgmt. LLC</u>, 231 F.R.D. 134, 144 (S.D.N.Y. 2004)
(Pitman, M.J.).   The discovery procedures of the Pilot Project
also require the disclosure of "the names of all the recipients
of the communication" in a privilege log (Pilot Project at 6).

In addition, the Local Civil Rules provide that a party
claiming a privilege must provide the foregoing information in
writing and within the time the response to the discovery request
is due, unless the court orders otherwise.   Local Civil Rule
26.2(b).   Thus, "[a] privilege log must be received either within
thirty days of a request for documents or by a date that is
agreed upon by the parties or set by the court."   <u>Strougo v. Bea</u>

Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (Sweet, D.J.),
citing Fed.R.Civ.P. 34(b).

   Importantly, a party's failure to comply with the
requirements of Fed.R.Civ.P. 26(b)(5) or Local Civil Rule 26.2
may result in a waiver of privilege.  See Fed.R.Civ.P. 26(b)(5),
Advisory Committee Notes ("To withhold materials without such
notice is contrary to the rule, subjects the party to sanctions
under Rule 37(b)(2), and may be viewed as a waiver of the privi-
lege or protection."); see also United States v. Constr. Prods.
Research, Inc., supra, 73 F.3d at 473-74; Chase Manhattan Bank,
N.A. v. Turner & Newall, PLC, 964 F.2d 159, 166 (2d Cir. 1992)
("[T]he failure to comply with Rule 46(e)(2) [(former Local Civil
Rule 26.2)] may result in a finding that the privilege has been
waived." (citation omitted)); McNamee v. Clemens, 09 CV 1647
(SJ)(CLP), 2014 WL 1338720 at *4-*5 (E.D.N.Y. Apr. 2, 2014)
(deficient privilege log justified the finding that privilege had
been waived); Strougo v. Bea Assocs., supra, 199 F.R.D. at 521;
Hurst v. F.W. Woolworth Co., 95 Civ. 6584 (CSH), 1997 WL 61051 at
*6 (S.D.N.Y. Feb. 11, 1997) (Haight, D.J.).  "[A]lthough the
result of waiver is harsh, the federal . . . rules' importance
should not be diminished by skirting their application when the
results prove harsh to a party."  McNamee v. Clemens, supra, 2014

WL 1338720 at *3, <u>citing</u> <u>In re Honeywell Int'l, Inc. Sec. Litig.</u>, 230 F.R.D. 293, 299 (S.D.N.Y. 2003).

      2. Elements of the
         <u>Privilege Claims</u>

     In order to satisfy the requirements of the foregoing rules, the index of documents withheld must, "as to each document, . . . set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." <u>Golden Trade, S.r.L. v. Lee Apparel Co.</u>, 90 Civ. 6291 (JMC), 1992 WL 367070 at *5 (S.D.N.Y. Nov. 20, 1992) (Dolinger, M.J.); <u>see</u> <u>Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.</u>, 707 F. Supp. 1429, 1439 (D. Del. 1989) ("[A] party asserting work product protection must 'identify the withheld documents with sufficient particularity that the opposing counsel can intelligently argue that the privilege ought not to apply.'"), <u>quoting</u> <u>Petz v. Ethan Allen, Inc.</u>, 113 F.R.D. 494, 497 (D. Conn. 1985). In other words, "[t]he party asserting the privilege must establish the essential elements of the privilege." <u>United States v. Constr. Prods. Research, Inc.</u>, <u>supra</u>, 73 F.3d at 473. "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." <u>von Bulow by Auersperg v. von Bulow</u>, 811 F.2d 136, 144 (2d Cir. 1987), <u>citing</u> <u>In re</u>

Grand Jury Subpoena Dtd. January 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984); accord McNamee v. Clemens, supra, 2014 WL 1338720 at *4; Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. June 18, 2013) (Francis, M.J.); see also In re The City of New York, 607 F.3d 923, 944-45 (2d Cir. 2010) ("the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question" (citation omitted)); In re Grand Jury Subpoena Dated December 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979) (The party asserting the protection of the work-product doctrine bears the burden of proof.).

### a.  Work Product Privilege

The work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998), quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947).  "'[A]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."'  In re Leslie Fay Cos. Sec. Litig.,

161 F.R.D. 274, 279 (S.D.N.Y. 1995) (Conner, D.J.), <u>quoting</u>
<u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975).

The scope of protection afforded by the work-product
doctrine is set forth in Fed.R.Civ.P. 26(b)(3):

> (A) Documents and Tangible Things. Ordinarily, a party
> may not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by
> or for another party or its representative (including
> the other party's attorney, consultant, surety,
> indemnitor, insurer, or agent). But, subject to Rule
> 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule
> > 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need
> > for the materials to prepare its case and cannot,
> > without undue hardship, obtain their substantial
> > equivalent by other means.

"[T]hree conditions must be met to earn work product
protection. The material must (1) be a document or a tangible
thing, (2) that was prepared in anticipation of litigation, and
(3) was prepared by or for a party, or by or for his representa-
tive." <u>In Re Grand Jury Subpoenas Dated December 18, 1981 &
January 4, 1982</u>, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982); <u>accord</u>
<u>In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.</u>,
293 F.R.D. 568, 574 (S.D.N.Y. 2013) (Scheindlin, D.J.); <u>Weinhold
v. Witte Heavy Lift, Inc.</u>, 90 Civ. 2096 (PKL), 1994 WL 132392 at
*2 (S.D.N.Y. April 11, 1994) (Leisure, D.J.).

                    b.   Law Enforcement-
                         Investigative
                         <u>Privilege</u>


     The Second Circuit recently clarified the scope of the

law enforcement privilege in <u>In re The City of New York</u>, <u>supra</u>,

607 F.3d at 948 (footnotes omitted):

          To show that the privilege applies, the party asserting
          the privilege must demonstrate that the documents
          contain information that the law enforcement privilege
          is intended to protect.  Specifically, the party as-
          serting the privilege must show that the documents in
          question contain (1) information pertaining to "law
          enforcement techniques and procedures," <u>[In re] Dep't
          of Investigation</u>, 856 F.2d [481,] 484 [(2d Cir. 1988)],
          (2) information that would undermine "the confidential-
          ity of sources," <u>id</u>., (3) information that would endan-
          ger "witness and law enforcement personnel," <u>id</u>.,
          (4) information that would undermine "the privacy of
          individuals involved in an investigation," <u>id</u>., or
          (5) information that would seriously impair "the abil-
          ity of a law enforcement agency to conduct future
          investigations," <u>Morrissey [v. City of N.Y.]</u>, 171
          F.R.D. [85,] 90 [(S.D.N.Y. 1997) (Motley, D.J.)].


          Once the party asserting the privilege success-
          fully shows that the privilege applies, the district
          court must balance the public interest in nondisclosure
          against "the need of a particular litigant for access
          to the privileged information." <u>In re Sealed Case</u>, 856
          F.2d [268,] 272 [(D.C. Cir. 1988)].

<u>Accord</u> <u>Adams v. City of New York</u>, 11-CV-2567 (MKB), 2014 WL

309640 at *1-*2 (E.D.N.Y. Jan. 29, 2014); <u>Dorsett v. Cnty. of</u>

<u>Nassau</u>, 762 F. Supp. 2d 500, 520-21 (E.D.N.Y. 2011); <u>Floyd v.</u>

<u>City of New York</u>, 739 F. Supp. 2d 376, 379-80 (S.D.N.Y. 2010)

(Scheindlin, D.J.).

                                   15

Moreover, "because the law enforcement privilege is a qualified privilege, not an absolute privilege, there are circumstances in which information subject to the privilege must nevertheless be disclosed."  In re The City of New York, supra, 607 F.3d at 940; accord Floyd v. City of New York, supra, 739 F. Supp. 2d at 381.

> While a "'strong presumption'" exists against lifting the privilege, the party seeking disclosure may rebut the presumption by establishing:
>
>> (1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information[.]
>
> If the presumption against disclosure is successfully rebutted, "the district court must then weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required."

Floyd v. City of New York, supra, 739 F. Supp. 2d at 381 (inner footnotes and citations omitted).

c.  Deliberative Process
    Privilege

> [T]he deliberative process privilege [is] a sub-species of work-product privilege that "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" [Dep't of the Interior v.] Klamath, 532 U.S. [1,] 8, 121 S.Ct. 1060 [(2001)] (quoting NLRB v. Sears, Roebuck

16

& Co., 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29
(1975))[.]  The rationale behind this privilege is "the
obvious realization that officials will not communicate
candidly among themselves if each remark is a potential
item of discovery and front page news, and its object
is to enhance 'the quality of agency decisions,' by
protecting open and frank discussion among those who
make them within the Government."  Id. at 8-9, 121
S.Ct. 1060 (quoting Sears, 421 U.S. at 151, 95 S.Ct.
1504); accord Coastal States [Gas Corp. v. Dep't of
Energy], 617 F.2d [854,] 866 [(D.C. Cir. 1980)] ("The
[deliberative process] privilege has a number of pur-
poses:  it serves to assure that subordinates within an
agency will feel free to provide the decisionmaker with
their uninhibited opinions and recommendations without
fear of later being subject to public ridicule or
criticism; to protect against premature disclosure of
proposed policies before they have been finally formu-
lated or adopted; and to protect against confusing the
issues and misleading the public by dissemination of
documents suggesting reasons and rationales for a
course of action which were not in fact the ultimate
reasons for the agency's action.").

In order for a document to be protected by delib-
erative process privilege, it must be:  (1) an inter-
agency or intra-agency document; (2) "predecisional";
and (3) deliberative.  See Klamath, 532 U.S. at 8, 121
S.Ct. 1060 (discussing the agency-origin requirement);
Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d
1177, 1180 (2d Cir. 1988) (enumerating the predeci-
sional and deliberative requirements); Lead Indus.
Ass'n, Inc. v. OSHA, 610 F.2d 70, 83 (2d Cir. 1979)
(same).

Tique v. U.S. Dep't of Justice, 312 F.3d 70, 76-77 (2d Cir.

2002).  Moreover, "the deliberative process privilege must be

asserted by the head of the governmental agency, or an appropri-

ately qualified designee, after personal review of the docu-

ments."  In re Grand Jury Subpoena Dated August 9, 2000, 218 F.

Supp. 2d 544, 552, 552-53 (S.D.N.Y. 2002) (Chin, then D.J., now

Cir. J.) (citations omitted).

   "By statutory definition, 'agency' means each authority

of the Government of the United States." Tigue v. U.S. Dep't of

Justice, supra, 312 F.3d at 77, quoting 5 U.S.C. § 551(1).  With

respect to the second element,

> "[a] document is predecisional when it is prepared in
> order to assist an agency decisionmaker in arriving at
> his decision." Grand Cent. P'ship [v. Cuomo], 166 F.3d
> [473,] 482 [(2d Cir. 1999)] (internal quotation marks
> and citations omitted).  Protected by this privilege
> are "recommendations, draft documents, proposals,
> suggestions, and other subjective documents which
> reflect the personal opinions of the writer rather than
> the policy of the agency." Id. (internal quotation
> marks and citations omitted).  However, "the privilege
> does not protect a document which is merely peripheral
> to actual policy formation; the record must bear on the
> formulation or exercise of policy-oriented judgment."
> Id. (quoting Ethyl Corp. v. EPA, 25 F.3d 1241, 1248
> (4th Cir. 1994) (internal quotation marks omitted)).

Tigue v. U.S. Dep't of Justice, supra, 312 F.3d at 80.  And, with

respect to the third element,

> [a] document is deliberative if it is "'actually . . .
> related to the process by which policies are formu-
> lated.'"  Factors used to determine whether a document
> is deliberative include "whether the document
> '(i) formed an essential link in a specified consulta-
> tive process, (ii) reflects the personal opinions of
> the writer rather than the policy of the agency, and
> (iii) if released, would inaccurately reflect or prema-
> turely disclose the views of the agency.'"

S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 416 (S.D.N.Y.

2009) (Scheindlin, D.J.) (footnotes omitted), quoting Nat'l

Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d
Cir. 2005); Tigue v. U.S. Dep't of Justice, supra, 312 F.3d at 80
and Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir.
1999).

Importantly, "[t]he Supreme Court has held that materi-
als are not to be withheld on the basis of the deliberative
process privilege simply because the agency deems them confiden-
tial and would prefer not to disclose them." Toney-Dick v. Doar,
12 Civ. 9162 (KBF), 2013 WL 5549921 at *2 (S.D.N.Y. Oct. 3, 2013)
(Forrest, D.J.), citing Tigue v. U.S. Dep't of Justice, supra,
312 F.3d at 77.  "The deliberative process privilege does not
provide a blanket basis upon which to withhold documents that an
agency has created during its decision-making process." Toney-
Dick v. Doar, supra, 2013 WL 5549921 at *1.  "Indeed, if that
were the case, the deliberative process privilege would provide
an exemption from the discovery rules for decision-making agen-
cies generally -- and that, of course, is not the law." Toney-
Dick v. Doar, supra, 2013 WL 5549921 at *1.

d.  Attorney-Client
        Privilege

The elements of the attorney-client privilege are well
settled:

19

> "The [attorney-client] privilege applies only if
> (1) the asserted holder of the privilege is or sought
> to become a client; (2) the person to whom communica-
> tion was made (a) is a member of the bar of a court, or
> his subordinate and (b) in connection with this commu-
> nication is acting as a lawyer; (3) the communication
> relates to a fact of which the attorney was informed
> (a) by his client (b) without the presence of strangers
> (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assis-
> tance in some legal proceeding, and not (d) for the
> purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by
> the client."

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160

F.R.D. 437, 441 (S.D.N.Y. 1995) (Francis, M.J.), quoting United

States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D.

Mass. 1950); see United States v. Davis, 131 F.R.D. 391, 398

(S.D.N.Y. 1990) (Conboy, D.J.).  The privilege "exists to protect

not only the giving of professional advice to those who can act

on it, but also the giving of information to the lawyer to enable

him to give sound and informed advice."  Upjohn Co. v. United

States, 449 U.S. 383, 390 (1981).  Therefore, "[i]t is now [also]

well established that the privilege attaches not only to communi-

cations by the client to the attorney, but also to advice ren-

dered by the attorney to the client, at least to the extent that

such advice may reflect confidential information conveyed by the

client."  Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,

supra, 160 F.R.D. at 441-42; see also O'Brien v. Board of Educ.,
86 F.R.D. 548, 549 (S.D.N.Y. 1980) (Leval, D.J.).

### e.  Informant Privilege

        The government informant privilege, which arises
most frequently in the criminal context, but is also
applicable to civil cases, allows the government to
protect the identity of persons who furnish information
to it regarding violations of law.  See Roviaro v.
United States, 353 U.S. 53, 59-61, 77 S.Ct. 623, 627-28
(1957); Brock v. On Shore Quality Control Specialists,
Inc., 811 F.2d 282, 283 (5th Cir. 1987) (noting that
the informant "privilege uniformly has been applied in
civil cases as well").  The "privilege protects only
the identity of the informer, not his statement."
Brock v. Frank v. Panzarino, Inc., 109 F.R.D. 157
(E.D.N.Y. 1986) (Scheindlin, Mag. J.) (citing Roviaro,
353 U.S. at 60, 77 S.Ct. at 627).  Accordingly, when
the contents of a statement will not disclose the
identity of the informant, the privilege does not
apply.  Id.; but see Brennan v. Engineered Prods.,
Inc., 506 F.2d 299, 302 (8th Cir. 1974) (recognizing
Secretary's right to "withhold the names of people who
have given statements as well as the statements them-
selves" in DOL enforcement proceedings under the Fair
Labor Standards Act).  Moreover, the informant privi-
lege is not absolute.  "Where the disclosure of an
informer's identity is relevant and helpful to the
defense of an accused, or is essential to a fair deter-
mination of a cause, the privilege must give way."
Roviaro, 353 U.S. at 61, 77 S.Ct. at 627.

Herman v. Crescent Publ'g Grp., 00 Civ. 1665 (SAS) (FM), 2000 WL

1371311 at *2 (S.D.N.Y. Sept. 21, 2000) (Maas, M.J.).

f.   Intergovernmental
    Investigative Privilege

Although the SEC asserts a privilege it denominates as
the intergovernmental investigative privilege, the SEC has not
cited any cases defining or discussing the putative privilege.
Neither my own research nor defendants' has disclosed any federal
case recognizing the privilege.

B.   Application of the
    Foregoing Principles

Defendants argue that the SEC waived its privileges
because the descriptions of the subject matter, authors and
recipients set forth in the Privilege Logs do not comply with the
Federal and Local rules, and fail to support the SEC's privilege
claims.   In its opposition, the SEC does not address the adequacy
of the Privilege Logs.   Instead, it relies exclusively on the
Revised Privilege Log to argue that it has complied with the
applicable rules, and offers additional information and the
Powalski Declaration solely in support of the privilege claims in
the Revised Privilege Log.[1]

---

[1] The SEC also argues that the motion is improper because
defendants did not comply with the meet and confer requirement.
Assuming, without deciding, that defendants failed to satisfy
this requirement, it is clear that any attempt to do so would
                                        (continued...)

22

      1.  Sufficiency of the
          Descriptions in the
          <u>Privilege Logs</u>

In <u>United States v. Constr. Prods. Research, Inc.</u>, <u>supra</u>, 73 F.3d at 473, the Second Circuit held that a privilege log containing "cursory descriptions of each document, the date, author, recipient, and 'comments'" was deficient. The court in that case found the following descriptions to be cursory and inadequate: "(a) Fax Re: DOL Findings with comment cover sheet; (b) Fax: Whistleblower article with comment Self-explanatory; (c) Letter Re: Customer Orders with comment Re: Five Star Products; (d) Summary of Enclosures with comment Self-explanatory; etc." 73 F.3d at 473-74 (inner quotations omitted). The Second Circuit concluded that the foregoing "descriptions and comments

---

[1](...continued)
have been futile.  <u>See</u> <u>Gibbons v. Smith</u>, 01 Civ. 1224 (LAP), 2010 WL 582354 at *2 (S.D.N.Y. Feb. 11, 2010) (Preska, Chief D.J.) ("relief from the meet-and-confer requirement" is warranted where "any attempt to resolve the dispute informally would have been futile").  Here, the inadequacy of the Privilege Logs was the subject of at least four letters; I also addressed the issue during a discovery conference and opined that the privilege logs appeared deficient (<u>see</u> Morgan Decl., Exs. E to I).  Yet, the SEC inexplicably failed to make any effort to amend its privilege logs until after defendants filed the present motion despite my comments on December 19, 2013 that the logs filed prior to that date were deficient.  Ordering the parties to meet and confer at this juncture would only result in "further delay in resolving these issues on the merits."  <u>Time Inc. v. Simpson</u>, 02 Civ. 4917 (MBM)(JCF), 2002 WL 31844914 at *2 (S.D.N.Y. Dec. 18, 2002) (Francis, M.J.) (excusing failure to meet and confer).

simply [did] not provide enough information to support the [attorney-client] privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation." United States v. Constr. Prods. Research, Inc., supra, 73 F.3d at 474, citing Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (Dolinger, M.J.) and Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992).

Here, the descriptions in the SEC's Privilege Logs, which are unaccompanied by "supporting affidavits or other documentation," provide even less information than those the Second Circuit rejected in Constr. Prods. Research. 73 F.3d at 474. Moreover, the SEC's failure to address the adequacy of the Privilege Logs and its exclusive reliance on an "amended privi-lege log is essentially a concession that the initial privilege log[s] [were] inadequate." Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C., 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (Robinson, D.J.); see Allstate Life Ins. Co. v. First Trust Nat'l Ass'n, 92 Civ. 4865 (SWK), 1993 WL 138844 at *3 (S.D.N.Y. Apr. 27, 1993) (Kram, D.J.) (defendants' failure to provide sufficient descriptions resulted in a waiver of privilege that could not be cured through a subsequent production of a privilege log).

24

a.   January 25
     Privilege Log

     The January 25 Privilege Log fails to provide adequate
descriptions of the subject matter, authors and recipients of the
withheld documents.  The privilege log purports to describe
ninety-eight privileged documents, which are grouped into only
four log entries.  The SEC asserts the following privileges with
respect to all the documents listed in the log:  work-product,
law-enforcement, intergovernmental investigative and deliberative
process privilege (Morgan Decl., Ex. C).  It describes the
subject matter of every document as "Yorkville Advisors" and does
not specify the authors and recipients of the documents, as
required by Local Civil Rule 26.2.  For example, the first two
entries of the privilege log provide:

| Category of Documents (and number) | Responsive to Request | Subject Matter | Date(s) of Document | Author and Recipient | Privilege Asserted |
|---|---|---|---|---|---|
| Email (82) | Req. No. 2 | Yorkville Advisors | 1/24/2011 to 10/17/2012 | Emails between SEC Enforce-ment Divi-sion staff and US Attorney's Office - EDNY, FBI and SIG-TARP | Legal work-product doc-trine; law enforcement-investigative privilege, intergovern-mental inves-tigative privilege, deliberative process priv-ilege |
| Letter (6) | Req. No. 2 | Yorkville Advisors | 10/12/2010 to 8/21/2010 | Letters between SEC | Legal work-product doc-trine; law |

25

| | | | | Enforce-ment Division staff and US Attorney's Office - E.D.N.Y. and SIG-TARP | enforcement-investigative privilege, intergovern-mental investigative privilege, deliberative process privilege |
|---|---|---|---|---|---|

(Morgan Decl., Ex. C).

The information set forth above is too sparse to comply with Federal Rule of Civil Procedure 26(b)(5)'s requirement that a party asserting privilege disclose information sufficient "to enable other parties to assess the claim." For example, the SEC fails to disclose whether the documents (1) were prepared in anticipation of this litigation and are, thus, deserving of work product protection, (2) contain information that the law enforcement privilege is intended to protect or (3) constitute pre-decisional and deliberative documents. With regard to the SEC's claim of deliberative process privilege, the Powalski Declaration emphasizes, rather than cures, the deficiencies in the privilege log. Powalski reviewed the purportedly privileged documents and asserts the deliberative process privilege over a mere three emails listed in the Revised Privilege Log (Holden Decl., Ex. M). By comparison, in the January 25 Privilege Log, the SEC asserted deliberative process privilege on a blanket basis over every single document. This is clearly not the manner in which the

26

privilege ought to have been asserted and raises serious concerns in my mind as to the <u>bona fides</u> of the SEC's assertion of privilege claims in this case.  <u>See</u> <u>Toney-Dick v. Doar</u>, <u>supra</u>, 2013 WL 5549921 at *1-*2.

        b.  February 15
           <u>Privilege Log</u>

      Likewise, the descriptions in the February 15 Privilege Log are inadequately detailed.  The February 15 Privilege Log provides descriptions for fifty allegedly privileged documents, which are grouped into ten entries.  The subject matter descriptions are similarly uninformative:  "YA Global," "Mark Angelo," "Yorkville Advisors" or "Greenshift" (Morgan Decl., Ex. D).  Although the privilege log identifies the authors and recipients for certain categories of documents, <u>i.e.</u>, emails and letters, it fails to specify the authors and recipients for a majority of the documents, namely, documents categorized as "Reports" and "Tip/Complaint/Referral" (Morgan Decl., Ex. D).

      For example, the first three entries in the privilege log provide:

| Category of Documents (and number) | Responsive to Request | Subject Matter | Date(s) of Document | Author (and recipient, if applicable) | Privilege Asserted |
|---|---|---|---|---|---|
| Reports (19) | Req. No. 2 | YA Global | 2/20/2008 to 1/17/2013 | U.S. Department of the Treasury – Financial Crimes Enforcement Network | Legal work-product doctrine; law enforcement-investigative privilege intergovernmental investigative privilege. |
| Reports (3) | Req. No. 2 | Mark Angelo | 6/24/2008 to 11/19/2012 | U.S. Department of the Treasury – Financial Crimes Enforcement Network | Legal work-product doctrine; law enforcement-investigative privilege; intergovernmental investigative privilege. |
| Email (1) | Req. No. 2; Req. No. 16 | Yorkville Advisors/ Greenshift | 9/2/2010 | Matthew Hasinger – Criminal Division, USDOJ to David Smyth – SEC Office of Market Intelligence | Legal work-product doctrine; law enforcement-investigative privilege; intergovernmental investigative privilege. |

(Morgan Decl., Ex. D at 1-2).  The foregoing entries offer no facts to support the SEC's assertion of privilege.[2]  The SEC fails to provide any basis to determine whether its claims of work product and the investigative privilege are proper.

---

[2]Again, the intergovernmental investigative privilege appears to be a fictitious privilege claim.

The entries asserting the attorney-client and informant privilege are similarly flawed.  For example, two of the entries in the February 15 Privilege Log provide:

| Category of Documents (and number) | Responsive to Request | Subject Matter | Date(s) of Document | Author (and recipient, if applicable) | Privilege Asserted |
|---|---|---|---|---|---|
| Tip/Complaint /Referral [Redacted Portion] (1) | Req. No. 16 | Yorkville Advisors | 4/17/2009 | Gloria Smith-Hill -- SEC Office of Investor Education and Advocacy to Steven Johnston – SEC Office of Investor Education and Advocacy | Attorney-client privilege; legal work-product doctrine; law enforcement-investigative privilege |
| Tip/Complaint /Referral (1) | Req. No. 16 | Yorkville Advisors | 2/1/2013 | Anonymous | Law enforcement-investigative privilege; informant's privilege |

(Morgan Decl., Ex. D at 2 (emphasis added)).  The first entry above does not contain even basic information that would support a claim of attorney-client privilege.  The description does not provide the titles or roles of the author and recipient.  Also lacking is any basis to conclude that the document contains legal advice that reflects a client confidence.[3]  See Aurora Loan

---

[3]Indeed, the SEC states in its opposition brief that it is withdrawing its claim of attorney-client privilege "as to the
(continued...)

Servs., Inc. v. Posner, Posner & Assocs., P.C., supra, 499 F.
Supp. 2d at 479 ("Failure to furnish an adequate privilege log is
grounds for rejecting a claim of attorney client privilege.").
Similarly, it is unclear whether the informant privilege applies
to the second entry above.  The information merely provides that
the withheld document is a tip, complaint or referral about
"Yorkville Advisors"; without more, the SEC's reliance on that
privilege is unjustified.  In addition, because the informant
privilege exists to protect only the identity of the informant,
Roviaro v. United States, 353 U.S. 53, 60 (1957), it is difficult
to understand how it can be invoked with respect to a tip that
the SEC claims came from an anonymous source.

        Accordingly, the SEC's January 25 and February 15, 2013
Privilege Logs do not provide the information required by Federal
Rule of Civil Procedure 26(b)(5), Local Civil Rule 26.2(a)(2)(A)
and the discovery procedures of the Pilot Project.  In addition,
they do not provide sufficient information to support the privi-
lege claims asserted therein.

---

[3](...continued)
redacted portion of the April 7, 2009 tip/complaint/referral"
(Opp'n at 5 n.11).

2.   Whether Consideration
     Should be Given
     to the Revised
     Privilege Log

As noted above, the SEC does not contest the inadequacy of the Privilege Logs in its opposition to defendants' motion. Instead, the SEC argues that waiver would be inappropriate because it has "now respond[ed] with information establishing [the] privileges" in the Revised Privilege Log (Opp'n at 10-11).

The Revised Privilege Log identifies 156 privileged documents.[4]  The Revised Privilege Log abandons the law enforcement and intergovernmental investigative privileges in favor of claims of privilege that were never previously asserted, including the common interest privilege, the Act, the MOU and the Exchange Act.  It also provides additional details regarding the subject matter, authors and recipients of emails and letters, but still fails to provide details for documents categorized as reports.  The following example illustrates the nature of the entries in the Revised Privilege Log:

---

[4]Inexplicably, the number of privileged documents has increased in the Revised Privilege Log.  The Privilege Logs, combined, had identified 148 privileged documents.

31

| Category of Documents (and number) | Responsive to Request | Subject Matter | Date(s) of Document | Author (and recipient, if applicable) | Privilege Asserted |
|---|---|---|---|---|---|
| Letter (2) | Req. No. 16 | Discussing Potential securities law violations involving Greenshift | 5/6/2010 | Paul G. Lane - FINRA to Mark Lineberry - SEC Office of Market Surveillance | Legal work-product doctrine, common interest privilege |
| Reports (26) | | | 2/20/2008 to 1/17/2013 | | 31 U.S.C. § 5318(g)(2) and 31 C.F.R. § 1023.320(3)(2). |
| Tip/ Complaint/ Referral [Redacted Portion] (1) | Req. No. 16 | Classification of anonymous tip and assignment to SEC OIEA staff | 4/17/2009 | Gloria Smith-Hill - SEC Education and Advocacy to Steven Johnston - SEC Office of Investor Education and Advocacy | Legal work-product doctrine |
| Tip/ Complaint/ Referral (1) | Req. No. 16 | Possible securities law violations by Yorkville Advisors | 2/1/2013 | Anonymous | Informant's privilege |

(Holden Decl., Ex. K at 6).

        To the extent that the SEC now offers new details

pertaining to the subject matter, authors and recipients of

certain documents, I find that the submission is untimely.  Under

the Local Civil Rules, the SEC was required to serve a proper

privilege log in January 2013.  Local Civil Rule 26.2(b); see

<u>Strougo v. Bea Assocs.</u>, <u>supra</u>, 199 F.R.D. at 521.  The SEC's justification for its belated production is totally inadequate.

   For example, with respect to information relating to authors and recipients, the SEC explains that defendants' October 2013 Letter "did not state that . . . the SEC had failed to list all of the names of the individual authors and recipients" (Opp'n at 2; 6-7).  The fact that defendants may have failed to specify the exact nature of the Privilege Logs' deficiencies is immaterial because it was the SEC's affirmative obligation, as the party asserting the privilege, to furnish the information listed in Local Civil Rule 26.2(a)(2)(A) at the time its response to the RFP was due.  As attorneys admitted to practice in this Court, the SEC's attorneys are deemed to have knowledge of the Court's rules.

   The SEC's explanation for the belated submission of detailed subject matter descriptions is also inadequate:

> [T]he SEC in good faith has re-examined certain of its privilege assertions.  As the SEC stated in its November 22, 2013 letter to the Court, at the time the privilege logs were drafted, the SEC was concerned that the inclusion of more information than was given the general subject matter described in its privilege logs could have interfered with an investigation.  The SEC has become aware of information that obviates the need to assert the law enforcement privilege and the investigatory privilege over certain documents.  In addition, the SEC is no longer asserting the law enforcement privilege and the investigatory privilege as to the listed communications with foreign regulatory

authorities.  Accordingly, the SEC's Revised Privilege Log contains additional detail concerning these documents.

(Opp'n at 6-7 (footnotes omitted)).  The foregoing fails to meaningfully explain why the SEC could not provide additional details without revealing privileged information in a timely manner.  Indeed, the revisions in the SEC's descriptions, i.e., altering "Yorkville Advisors" to "Email conveying information concerning possible violative conduct by Yorkville Advisors," are so minimal that they suggest the SEC simply neglected its duty to comply with the Federal and Local rules when creating the Privilege Logs.  See Novak v. Nat'l Broad. Co. Inc., 131 F.R.D. 44, 45 (S.D.N.Y. 1990) (Sweet, D.J.) ("It is well-established that attorney inadvertence or negligence does not establish good cause for failure to serve within the prescribed time period." (citation omitted)).

Additionally, the Revised Privilege Log's new privilege claims, i.e., the common-interest privilege, the MOU and the Exchange Act, are untimely.  A party asserting a privilege must "expressly" make its claim at the time the response is due.  Fed.R.Civ.P. 26(b)(5)(A)(i); Local Civil Rule 26.2 (the party asserting the privilege must "identify the nature of the privilege (including work product) which is being claimed . . . in writing at the time of the response to such discovery [re-

34

quest]"); see Carte Blanche (Singapore) PTE., Ltd. v. Diners Club
Intern., Inc., 130 F.R.D. 28, 32 (S.D.N.Y. 1990) (Leisure, D.J.)
(party's failure to "specify work product as the particular
privilege" constituted a waiver of that privilege).  Neither the
Federal Rules of Civil Procedure nor the Local Civil Rules permit
any party to make its assertions of privilege a moving target.
While the Exchange Act and the MOU may have prohibited the SEC
from disclosing additional information in a privilege log, the
SEC cannot claim that its obligations under either prevented it
from asserting those privileges in a timely manner.  The SEC,
"[l]ike any ordinary litigant, . . . must abide by the Federal
Rules of Civil Procedure [and] is not entitled to special consid-
eration concerning the scope of discovery," notwithstanding its
statutory and contractual obligations.  S.E.C. v. Collins &
Aikman Corp., supra, 256 F.R.D. at 414.

        Finally, although the SEC's reliance on the Annunzio-
Wylie Anti-Money Laundering Act in the Revised Privilege Log is
also untimely, I consider the propriety of this privilege because
this privilege cannot be waived.  See 31 U.S.C. §§ 5311, et seq.
The SEC argues that it cannot disclose details concerning twenty-
six reports, pursuant to Title 31 United States Code Section

5318(g)(2)[5] and Title 31 Code of Federal Regulations Section

1023.320(e)(2)[6] (Opp'n at 7-8; Holden Decl., Ex. K at 6).  In-

deed, under those provisions and others, Suspicious Activity

Reports ("SARs") "are accorded special protections under U.S.

law," Wultz v. Bank of China Ltd., 942 F. Supp. 2d 452, 465

(S.D.N.Y. 2013) (Scheindlin, D.J.) (citation omitted), which

prohibit their disclosure.  See Freedman & Gersten, LLP v. Bank

of Am., N.A., No. 09-5351, 2010 WL 5139874 at *3 (D.N.J. Dec. 8,

2010) (SARs are not discoverable); Fed. Deposit Ins. Corp. v.

Flagship Auto Ctr., No. 3:04 CV 7233, 2005 WL 1140678 at *6 (N.D.

Ohio May 13, 2005) ("The Magistrate cannot compel the production

of the SARs and Plaintiff is prohibited from providing any

information that a SAR has been prepared or filed.").

        The statutory privilege afforded to SARs cannot be

waived.  See, e.g., Wiand v. Wells Fargo Bank, N.A., Case No.

8:12-CV-557-T-27EAJ, 2013 WL 5925545 at *2 (M.D. Fla. Oct. 25,

---

[5]Title 31 United States Code Section 5318(g)(2)(ii) provides
that "no current . . . employee . . . for the Federal Government
. . . who has any knowledge that such report was made may dis-
close to any person involved in the [suspicious] transaction that
the [suspicious] transaction has been reported, other than as
necessary to fulfill the official duties of such . . . employee."

[6]Under Title 31, Code of Federal Regulations, Section
1023.320(e)(2), "[a] Federal . . . government authority . . .
shall not disclose a SAR, or any information that would reveal
the existence of a SAR, except as necessary to fulfill official
duties consistent with Title II of the Bank Secrecy Act."

2013) ("SARs are confidential and subject to an "unqualified discovery and evidentiary privilege that courts have held cannot be waived." (citation omitted)); United States v. Holihan, 248 F. Supp. 2d 179, 186 (W.D.N.Y. 2003) ("31 U.S.C. § 5318(g) . . . as implemented by 12 C.F.R. § 21.11(k) create an unqualified discovery and evidentiary privilege that cannot be waived."), citing Gregory v. Bank One Corp. Inc., 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002); Cotton v. PrivateBank & Trust Co., 235 F. Supp. 2d 809, 813-14 (N.D. Ill. 2002) (SARs are not discoverable and "courts have refused to order an exception to that privilege."); Weil v. Long Island Sav. Bank, 195 F. Supp. 2d 383, 389-90 (E.D.N.Y. 2001) (the "disclosure of SARs or their content, even in the context of discovery in a civil lawsuit," is prohibited and "not subject to waiver"); see also Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) ("Institutions are prohibited from acknowledging filing, or commenting on the contents of, an SAR unless ordered to do so by the appropriate authorities."). However, the privilege extends only to SARs and does not reach supporting documentation created in the ordinary course of business.  Freedman & Gersten, LLP v. Bank of Am., N.A., supra, 2010 WL 5139874 at *3; United States v. Holihan, supra, 248 F. Supp. 2d at 187 ("Despite the prohibition against a bank's

disclosure of the existence or contents of an SAR, any supporting documentation remains discoverable." (citation omitted).

Defendants' reply brief does not controvert or even address the special privilege afforded to SARs.  In the absence of an objection, I find no need to attempt to distinguish between SARs and supporting documents through an <u>in</u> <u>camera</u> review. Accordingly, the SEC may assert its privilege over the twenty-six reports listed in the Revised Privilege Log, pursuant to 31 U.S.C. § 5318(g)(2) and 31 C.F.R. § 1023.320(e)(2) (<u>see</u> Holden Decl., Ex. K at 6).

In all other respects, the Revised Privilege Log is untimely.

3.   Waiver of
<u>Privileges</u>

Apart from the statutory privilege afforded to SARs, the SEC waived its privilege protections by failing to produce in a timely manner a privilege log that complied with the applicable rules.  While an index need not establish all of the elements of a privilege by itself, the SEC was obligated to provide an index with the specific information required by Federal Rule 26(b)(5) and Local Civil Rule 26.2 in a timely fashion.  <u>A.I.A. Holdings,</u>

S.A. v. Lehman Bros., Inc., 97 Civ. 4978 (LMM)(HBP), 2002 WL
31385824 at *6 (S.D.N.Y. Oct. 21, 2002) (Pitman, M.J.).

Accordingly, the SEC's unjustified failure to serve
indices of privileged documents in a timely and proper manner
operates as a waiver of any applicable privilege, with the
exception of the SARs privilege.[7] See, e.g., Chase Manhattan
Bank, N.A. v. Turner & Newall, PLC, supra, 964 F.2d at 166 (2d
Cir. 1992); Fingerhut ex rel. Fingerhut v. Chautauqua Inst.
Corp., Inc., 07-CV-502-JTC, 2014 WL 1572387 at *4 (W.D.N.Y. Apr.
18, 2014); McNamee v. Clemens, supra, 2014 WL 1338720 at *3;
Anderson v. Sposato, CV 11-5663 (SJF)(WDW), 2014 WL 79482 at *3
(E.D.N.Y. Feb. 26, 2014); Taylor v. Otis Elevator Co., 12-CV-
196F, 2013 WL 1340387 at *1 (W.D.N.Y. Apr. 1, 2013); Gen. Motors
LLC v. Lewis Bros., L.L.C., 10-CV-00725S(F), 2012 WL 3128949 at
*7 (W.D.N.Y. July 31, 2012); In re Application of Chevron Corp.,

---

[7] Although there is authority reaching a contrary result and
limiting the remedy to the belated preparation of the index of
withheld documents, as the SEC has attempted to do here, I do not
find those cases persuasive.  "Limiting the remedy to the belated
preparation of a privilege log effectively tells practitioners
they can flout the Court's Rules and incur no sanction other than
an Order directing compliance with the rules." PKFinans Int'l
Corp. v. IBJ Schroder Leasing Corp., 93 Civ. 5375 (SAS)(HBP), 96
Civ. 1816 (SAS)(HBP), 1996 WL 525862 at *4 (S.D.N.Y. Sept. 17,
1996) (Pitman, M.J.).  See 2 Michael Silberberg, et al., Civil
Practice in the Southern District of New York § 22:12 at 244
(2013-2014 ed.) ("[T]he cases imposing waiver appear to express
the better view of the appropriate remedy in the event a party
fails to timely provide the privilege list.").

749 F. Supp. 2d 170, 181-82 (S.D.N.Y. Nov. 30, 2010) (Kaplan, D.J.); Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, 03 Civ. 5560 (RMB)(HBP), 2006 WL 1295409 at *1 (S.D.N.Y. May 10, 2006) (Pitman, M.J.); FG Hemisphere Assocs., L.L.C. v. Republique Du Congo, 01 Civ. 8700 (SAS)(HBP), 2005 WL 545218 at *6 (S.D.N.Y. Mar. 28, 2005) (Pitman, M.J.); Lugosh v. Congel, 219 F.R.D. 220, 239 (N.D.N.Y. 2003); Bruker v. City of New York, 93 Civ. 3848 (MGC)(HBP), 2002 WL 484843 at *5 (S.D.N.Y. Mar. 29, 2002) (Pitman, M.J.); Strougo v. BEA Assocs., supra, 199 F.R.D. at 521; A.I.A. Holdings, S.A. v. Lehman Bros., Inc., 97 Civ. 4978 (LMM)(HBP), 2000 WL 1538003 at *3 (S.D.N.Y. Oct. 17, 2000) (Pitman, M.J.); Large v. Our Lady of Mercy Med. Ctr., 94 Civ. 5986 (JGK)(THK), 1998 WL 65995 at *4 (S.D.N.Y. Feb. 17, 1998) (Katz, M.J.); Hurst v. F.W. Woolworth Co., supra, 1997 WL 61051 at *6; PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp., supra, 1996 WL 525862 at *3-*4; John Labatt Ltd. v. Molson Breweries, 93 Civ. 75004 (RPP), 94 Civ. 71540 (RPP), 1995 WL 23603 at *1 (S.D.N.Y. Jan. 20, 1995) (Patterson, D.J.), appeal transferred sub nom., Dorf & Stanton Commc'ns, Inc. v. Molson Breweries, 56 F.3d 13 (2d Cir. 1995), aff'd, 100 F.3d 919 (Fed. Cir. 1996); Smith v. Conway Org., Inc., 154 F.R.D. 73, 76 (S.D.N.Y. 1994) (Sweet, D.J.); Allstate Life Ins. Co. v. First Trust Nat'l Ass'n, supra, 1993 WL 138844 at *3; Bank v. Mfrs. Hanover Trust Co., 89

Civ. 2946 (MJL), 1990 WL 155591 at *2 (S.D.N.Y. Oct. 9, 1990)
(Bernikow, M.J.); Carte Blanche (Singapore) PTE., Ltd. v. Diners
Club Int'l, Inc., 130 F.R.D. 28, 32 (S.D.N.Y. 1990) (Leisure,
D.J.); see also Sheikhan v. Lenox Hill Hosp., 98 Civ. 6468 (WHP),
1999 WL 386714 at *3 (S.D.N.Y. June 11, 1999) (Pauley, D.J.).

> 4.  Attorney's Fees
>     and Costs

Finally, defendants raise a claim for attorney's fees
and costs for the first time in their reply brief.  "This Circuit
has made clear it disfavors new issues being raised in reply
papers." Rowley v. City of New York, 00 Civ. 1793 (DAB), 2005 WL
2429514 at *5 (S.D.N.Y. Sept. 30, 2005) (Batts, D.J.), citing
Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995); Knipe v.
Skinner, 999 F.2d 708, 711 (2d Cir. 1993); Nat'l Labor Relations
Bd. v. Star Color Plate Serv., 843 F.2d 1507, 1510 n. 3 (2d Cir.
1988); United States v. Letscher, 83 F. Supp. 2d 367, 377
(S.D.N.Y. 1999) (Koeltl, D.J.); Domino Media, Inc. v. Kranis, 9
F. Supp. 2d 374, 387 (S.D.N.Y. 1998) (Kaplan, D.J.) and Playboy
Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 (S.D.N.Y. 1997)
(Kaplan, D.J.).  Moreover, "the Federal Rules of Civil Procedure
require [that the court] give the nonmovant party an opportunity
to be heard in order to provide substantial justification for the

delay or to show that imposing the expense would be unjust" in connection with an application for an award of attorney's fees. Iron Workers Local 12 Pension Fund v. Catskill Mountain Mech., LLC, No. 07-CV-437 (LEK/RFT), 2008 WL 3413904 at *3 (N.D.N.Y. Aug. 8, 2008), citing Fed.R.Civ.P. 37(a)(5), b(C), (c)(1); see Noble Ams. Corp. v. Iroquois Bio-Energy Co., LLC, 12 Civ. 3236 (JMF), 2012 WL 5278505 at *4 (S.D.N.Y. Oct. 25, 2012) (Furman, D.J.) (providing non-moving party the opportunity to respond to a request for attorney's fees raised for the first time in a reply brief); Mercer Tool Corp. v. Friedr. Dick GmbH, 175 F.R.D. 173, 176 (E.D.N.Y. 1997) (An award of attorney's fees "without affording [the nonmoving party] an opportunity to be heard on this subject would be fundamentally unfair."). Here, the SEC has not had an opportunity to be heard on the issue of attorney's fees as a result of defendants' failure to raise it in their initial brief.

        Accordingly, defendants' request for an award of attorney's fees and costs incurred in bringing the motion to compel is denied without prejudice; defendants may renew their application through a formal motion accompanied by contemporaneous time records.

IV.   Conclusion

Accordingly, for all the foregoing reasons, defendants' motion to compel the SEC to produce the documents referenced in the January 25, 2013 and the February 15, 2013 Privilege Logs is denied with respect to the twenty-six reports listed on page six of the Revised Privilege Log, and granted with respect to the remaining documents listed in the January 25, 2013 and February 15, 2013 Privilege Logs.  Defendants' request for attorney's fees and costs is denied without prejudice.  The SEC is directed to comply with this Order within thirty (30) days.

Dated:  New York, New York
        May 27, 2014

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Todd D. Brody, Esq.
Bruce Karpati, Esq.
Stephen B. Holden, Esq.
Valerie A. Szczepanik, Esq.
Securities & Exchange Commission
Room 400
3 World Financial Center
New York, New York  10281

43

Caryn G. Schechtman, Esq.
David V. Sack, Esq.
Joshua S. Sohn, Esq.
Megan K. Vesely, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York  10020

Nicolas Morgan, Esq.
Patrick O. Hunnius, Esq.
DLA Piper LLP
Suite 400 North Tower
2000 Avenue of the Stars
Los Angeles, California  90067