UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| | : |
| YORKVILLE ADVISORS, LLC, | : |
| MARK ANGELO, and EDWARD SCHINIK, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

12 CIV 7728 (GBD)(HBP)

ECF CASE

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## THE SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION
## TO DEFENDANTS YORKVILLE ADVISORS, LLC, MARK ANGELO AND
## EDWARD SCHINIK'S MOTION FOR ATTORNEY'S FEES AND COSTS

U.S. Securities and Exchange Commission
200 Vesey Street (Brookfield Place)
Room 400
New York, NY 10281

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL AND DISCOVERY HISTORY .......................................................... 5

    I.    The SEC Voluntarily Produced Documents and Timely Served Privilege Logs .............. 5

    II.   Defendants Have Burdened the Court With Their Procedural Abuses, Which Have
        Resulted in Increased Litigation Costs for the SEC ......................................................... 7

ARGUMENT ......................................................................................................... 10

    I.    The Awarding of Fees or Expenses Is Not Warranted in This Case ........................... 10

        A. The SEC's Approach was Reasonable Even if Incorrect .......................................... 11

        B. Other Circumstances Make the Award of Expenses Unjust ..................................... 15

    II.   37(a)(5) Does Not Apply and Rule 37(a)(5)(C) Does Not Allow Attorneys' Fees ........ 16

    III.  Defendants Seek Excessive and Unreasonable Fees ...................................................... 17

        A. Counsel's Time Records Show that Only 60% of What Defendants Are Seeking
           Were Incurred in Bringing the Motion to Compel .................................................. 18

        B.  The Fees Incurred were Duplicative and Excessive ................................................. 18

CONCLUSION ...................................................................................................... 22

## TABLE OF AUTHORITIES

### Cases

*Alexander Interactive, Inc. v. Adorama, Inc.*, 12 Civ 6608, 2013 U.S. Dist. LEXIS 170931 (S.D.N.Y. Dec. 4, 2013)............................................................ 10

*Alliance Indus., Inc. v. Longyear Holding, Inc.*, No. 08CV490S, 2010 U.S. Dist. LEXIS 108544 (W.D.N.Y. Oct. 12, 2010)........................................... 17

*Bowne of New York City v. AmBase Corp.*, 161 F.R.D. 258 (S.D.N.Y. 1995)...................... 11, 13

*Comprehensive Habilitations Servs. v. Commerce Funding Corp.*, 248 F.R.D. 78 (S.D.N.Y. 2006) ................................................................... 12

*Demonchaux v. Unitedhealthcare Oxford*, 10 Civ. 4491, 2014 U.S. Dist. LEXIS 43954 (S.D.N.Y. March 27, 2014)............................................ 20

*Dorroh v. Deerbrook Ins. Co.*, 11-CV-2120, 2012 U.S. Dist. LEXIS 13590 (E.D. Cal. Sept. 21, 2012)................................................................. 15

*E.F. v. New York City Dept. of Ed.*, 11 Civ 5243, 2014 U.S. Dist. LEXIS 34606 (S.D.N.Y. March 17, 2014)........................................................ 19

*EEOC v. Bardon*, No. 08-1883, 2010 U.S. Dist. LEXIS 23899 (D. Md. March 12, 2010) ... 16, 17

*EEOC v. McCormick & Schmick's Seafood Restaurants* No. 11-2695, 2012 U.S. Dist. LEXIS 161511 (D. Md. Nov. 8, 2012)............................................... 16, 17

*Gucci America, Inc. v. Weixing Li*, No. 10 Civ. 4974, 2011 U.S. Dist. LEXIS 97814 (Aug. 23, 2011)................................................................ 12

*In re Initial Public Offering Sec. Litig.*, 671 F. Supp.2d 467 (S.D.N.Y. 2009)............................ 20

*Klein v. Torrey Point Group, LLC*, 979 F. Supp.2d 417 (S.D.N.Y. 2013).................................. 12

*La Piel, Inc. v. Richina Leather Indus. Co., Ltd.*, No. 10-CV-1050, 2013 U.S. Dist. LEXIS 46238 (E.D.N.Y. March 29, 2013). ............................................. 12

*Mantell v. Chassman*, 512 Fed. Appx. 21, 24 (2d Cir. 2013)..................................................... 10

*Marano v. Aaboe*, 05 Civ. 9375, 2007 U.S. Dist. LEXIS 80154 (S.D.N.Y. Oct. 29, 2007) ............................................................................................. 12, 21

*MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Secs. Inc.*, 12 Civ. 7322, 2013 U.S. Dist. LEXIS 142516 (S.D.N.Y. Sept. 27, 2013)............................... 10

*Merck Eprova AG v. Gnosis S.P.A.*, 07 Civ. 5898, 2011 U.S. Dist. LEXIS 30683 (S.D.N.Y. March 17, 2011)................................................................................. 19, 20

*MPD Accessories B.V. v. Urban Outfitters*, No. 12 CV 6501, 2013 U.S. Dist. LEXIS 151602 (S.D.N.Y. Oct. 9, 2013) ............................................................................ 11

*Pierce v. Underwood*, 487 U.S. 552 (1988)................................................................................. 11

*Rahman v. Smith & Wolensky Rest. Group, Inc.*, 06 Civ. 6198, 2009 U.S. Dist. LEXIS 62063 (S.D.N.Y. July 21, 2009)................................................................... 10

*Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002)..................... 21

*Skanga Energy & Marine Ltd. v. Arevenca*, 11 Civ. 4296, 2014 U.S. Dist. LEXIS 74921 (S.D.N.Y. May 19, 2014)................................................................................ 18

*Strougo v. BEA Assocs.*, 199 F.R.D. 515, 522-23 (S.D.N.Y. 1999) ............................................ 13

*Thai Lao Lignite (Thailand) Co., Ltd v. Government of the Lao People's Democratic Republic*, 10 Civ. 5256, 2011 U.S. Dist. LEXIS 103378 (Sept. 13, 2011) ........................................ 11, 14

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of the Lao People's Democratic Republic*, 10 Civ. 05256, 2012 U.S. Dist. LEXIS 164261 (S.D.N.Y. Nov. 14, 2012).............................. 21

*Underdog Trucking v Verizon Servs. Corp.*, 276 F.R.D. 105 (S.D.N.Y. 2011) ........................... 21

*Union Central Life Ins. Co. v. Berger*, 10 Civ. 8408, 2013 U.S. Dist. LEXIS 175759 (S.D.N.Y. Dec. 13, 2013)................................................................................ 19, 21

*United States v. Mendoza*, No. 11-5221, 2012 U.S. App. LEXIS 11403 (9th Cir. June 4, 2012), *cert. den.*, 133 S. Ct. 1492 (U.S. 2013). ........................................................... 2, 13

*Wong v. Hunda Glass Corp.*, 09 Civ. 4402, 2010 U.S. Dist. LEXIS 90736 (S.D.N.Y. Sept. 1, 2010)................................................................................. 19

## **Other Authorities**

Civil Rule of Civil Procedure 37(a)(5)(A) ............................................................................ passim

Civil Rule of Civil Procedure 37(a)(5)(C) ............................................................................ passim

Civil Rule of Civil Procedure 26(b) ..................................................................................... passim

Local Rule 26.2 .................................................................................................................... passim

Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(2) .................................. 2, 7

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 929K .......................... 6

Securities Exchange Act of 1934 ............................................................................................... 14

Civil Practice in the Southern District of New York (2d Ed.) ............................................... 13, 14

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") submits this memorandum of law in opposition to the Motion of Yorkville Advisors, LLC ("Yorkville Advisors"), Mark Angelo ("Angelo") and Edward Schinik ("Schinik") (collectively "Defendants") for Attorneys' Fees Pursuant to Rule 37(a)(5).

## PRELIMINARY STATEMENT

In its May 27, 2014 Opinion and Order ("May 27 Order"), this Court ruled that the SEC waived the privileges it had asserted with respect to certain withheld documents because its privilege logs did not sufficiently describe the subject matter of the privileged communications or provide the names of the authors and recipients.[1]  Defendants now seek to collect nearly $100,000 in legal expenses purportedly incurred in connection with their motion to compel.  The Court should deny their motion.  The Court's finding that the SEC waived privilege with respect to certain documents is a serious and significant sanction, and the SEC respectfully submits that further sanctions are not warranted.  The SEC at all times acted in good faith in advancing its position. We have also now accepted the court's ruling, even though we respectfully disagree with it, in order to avoid further delays in discovery and to prevent the diversion of the Court's and the parties' resources to discovery disputes.  Moreover, Defendants' motion was only partially successful:  The Court denied Defendants' motion with respect to the most sensitive documents listed in the logs, and the documents Defendants succeeded in obtaining, though responsive, are of only marginal relevance in this case.  In these circumstances, an award of fees would be inappropriate and unjust, especially when Defendants were not prejudiced by what the Court has found to be the SEC's inadequate privilege logs,[2] and Defendants' own discovery

---

[1] The SEC timely turned over the documents, except for a single document for which it sought *in camera* review.
[2] In opposition to the SEC's June 11, 2014 letter requesting that the Court find that Defendants waived privileges by failing to serve privilege logs on a timely basis, Defendants argued that because the SEC did not demonstrate

1

tactics have forced the SEC to bring and litigate several (largely successful) discovery motions to compel document production from the Defendants and to quash abusive deposition subpoenas.

### The SEC's Good Faith Discovery Practices

Throughout this litigation, the SEC has acted scrupulously and in good faith in connection with its discovery obligations.  The SEC voluntarily produced documents to Defendants before even receiving a document request.  The SEC responded to Defendants' First Request for Documents ("Defendants' First Request") and produced its first privilege log on a timely basis.  The SEC supplemented its log shortly thereafter to reflect documents received after the return date as well as documents that inadvertently were not included in the first production. The SEC was not over-inclusive in withholding documents on privilege grounds, and Defendants do not now contend that the withheld documents were not privileged.  Moreover, although the Court has found the logs insufficient, the descriptions of the documents contained in the logs reflected a good faith effort to reconcile the SEC's obligations under applicable discovery rules with (i) statutory restrictions that prohibit the SEC from disclosing even the existence of certain documents; and (ii) serious concerns the SEC had about describing documents in a way that might disclose the existence of a parallel covert criminal investigation that did not directly concern the SEC's case.

By law, the SEC is forbidden to disclose the existence of suspicious activity reports to an involved party without risking criminal sanctions.  31 U.S.C. § 5318(g)(2); *United States v. Mendoza*, No. 11-5221, 2012 U.S. App. LEXIS 11403 (9th Cir. June 4, 2012), *cert. den.*, 133 S. Ct. 1492 (U.S. 2013).  As such, the SEC was in a position unlike that of private litigants, who typically are under no such constraints.

---

prejudice or harm, the motion should be denied.  Likewise, where Defendants do not and cannot claim that the SEC's insufficient privilege logs resulted in prejudice or harm, no further sanctions are warranted.

Likewise, the SEC was justifiably concerned about disclosing any information about the nature of a covert criminal investigation that was ongoing at the time the SEC produced its logs in early 2013.  Because even general descriptions would alert Defendants to the fact and nature of the criminal investigation, potentially impeding the investigation, the SEC did not provide more specific information.  Following the explicit language in the Federal Rules of Civil Procedure (and the Local Rules) that the log need not describe privileged documents in a manner that would result in the disclosure of confidential information, the SEC took a conservative approach in balancing these competing obligations.

It is important to note that other than protecting the confidentiality of the documents included in the log, the SEC gained nothing by limiting the descriptions of the documents identified.  This is not a case in which documents have been improperly withheld.  To the contrary, but for the Court's finding of a waiver, Defendants would not have been entitled to see any of these documents because they were, in fact, privileged or otherwise protected from disclosure.  Furthermore, the documents contained in the log, while responsive to Defendants' broad document requests, are, at best, marginally relevant to this issues in this case.

### Defendants' Unclean Hands

The same good faith cannot be imputed to Defendants.  The SEC was forced to file a motion to compel discovery (granted in large measure by this Court) as well as two motions to quash inappropriate discovery (one granted and one pending).  Specifically, in response to the SEC's Second Request for the Production of Documents ("SEC's Second Request"), Defendants refused to produce any documents, interposing as a response to each and every request: Defendants will "not produce any responsive documents."  In discussions with the SEC, Defendants continued to refuse to produce *any* responsive documents in contravention of Rule

34, which resulted in the SEC moving to compel.  This motion was granted in most respects.

Defendants also sought a 30(b)(6) deposition seeking a witness to testify on the methodologies

first used by the SEC to identify Defendants as possible violators of the securities laws.  Because

this deposition sought irrelevant and privileged information, the SEC again needed to expend

resources on a successful motion to quash the subpoena.  Undeterred, Defendants sought an end-

run around the Court's order by almost immediately thereafter serving document requests

seeking the same privileged information and data as the quashed subpoena, just using different

language.  Defendants later served a second 30(b)(6) deposition notice seeking privileged

information, including the views of attorneys as to which documents and/or testimony supported

the SEC's claims and allegations or were exculpatory.  Defendants' abusive discovery tactics

have substantially increased the costs of litigation, including by requiring the SEC to seek

judicial intervention on three separate occasions, making Defendants' present request for

expenses particularly unjust.

Finally, the amount of fees sought by Defendants is unreasonable and excessive.  As a

threshold matter, Defendants have the burden of proving the fees they incurred, and they have

submitted no evidence whatsoever concerning the amounts actually paid by the Defendants (as

opposed to what their lawyers billed) in connection with the motion to compel.  Moreover, while

Defendants seek nearly $100,000 in attorneys' fees, even according to the summary of time

records they have submitted, it appears that, at most, approximately $58,000 worth of time

actually concerned the motion to compel, and that number appears to be grossly inflated.  For

one thing, Defendants' counsel staffed this fairly simple discovery motion with a senior associate

(who billed more than 60 hours on the motion) and **four partners** from multiple offices, three of

whom performed the exact same task – review and revise the work of the senior associate.  In

addition, the hourly fees sought by Defendants – ranging from $305 per hour for the paralegal to $915 per hour for one of the partners – are well beyond that which courts in this district have found reasonable.  Defendants are not entitled to recover for this excessive and duplicative work, especially given the lack of complexity of the motion.  Indeed, Defendants only cited a single case concerning waiver in their moving brief to compel.

For the reasons set forth herein, the SEC respectfully requests that Defendants' application be denied in full.  The SEC requests the opportunity for oral argument.

## PROCEDURAL AND DISCOVERY HISTORY

### I.   The SEC Voluntarily Produced Documents and Timely Served Privilege Logs

The SEC filed its Complaint in this case on October 17, 2012.  Between November 15, 2012 and December 12, 2012 – before the SEC even received a request for documents or information – the SEC produced the vast majority of its investigative file to Defendants. (Declaration of Stephen Holden dated July 16, 2014 ("Holden Decl.") at ¶4).  On December 17, 2012, Defendants moved to dismiss.  *Id*. at ¶5.  The following day, Defendants served their First Request on the SEC, which largely sought the very same documents that the SEC had produced to Defendants over the prior two months.  *Id*.  Notwithstanding that Defendants would take the position that all discovery should be stayed while the motion to dismiss was pending, the SEC timely responded to Defendants' First Request on January 17, 2013, and produced several additional CDs.  *Id*. at ¶6.  In addition, after obtaining an extension from Defendants to the following week, the SEC served its privilege log on Defendants on January 25, 2013.[3]  *Id*.  On February 15, 2013, the SEC served a supplemental privilege log on Defendants.  The

_____

[3] The extension was requested because the SEC's opposition to the motion to dismiss was due on January 17.

supplemental log included documents that the SEC received *after the return date* for Defendants'
First Request, as well as documents that inadvertently had been left off the log. *Id*.

The SEC's two privilege logs asserted various privileges, including (a) the work-product
doctrine, (b) the law enforcement investigative privilege, (c) the intergovernmental investigative
privilege,[4] and (d) the deliberative process privilege. *Id*. at ¶7. The SEC asserted the attorney-
client privilege only with respect to a portion of a single document.[5] *Id*. The SEC described the
subject matters based on the nature of the privileges asserted, which, as stated above,
overwhelmingly did not include the attorney-client privilege. *Id*. As such, the SEC did not need
to demonstrate that these were communications seeking legal advice or communications
describing legal advice that had been provided. Because the central privileges the SEC was
relying on turned *not* on the subject matter of the communications, but rather on the fact that they
were communications between government agencies concerning the Defendants, the SEC in
good faith believed that limited subject matter descriptions were sufficient. Thus, with respect to
the subject matter of the withheld documents, the SEC's January 2013 log identified "Yorkville
Advisors" as the subject of each of the documents, and the supplemental log listed "Yorkville
Advisors," "Mark Angelo," "Greenshift," or "YA Global." The point of the log was to
demonstrate that the documents reflected communications between governmental agencies
concerning Yorkville or the other defendants, which the SEC believed, even if erroneously, was
adequate. The SEC further believed – in good faith – that additional information concerning the
subject matter might reveal the nature of the criminal investigation and, thus, run afoul of the

---

[4] This privilege was intended to refer to the "common interest" doctrine, which was codified in Section 929K of the
Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. Section 929K provides that the
Commission shall not be compelled to produce confidential information provided to it by any foreign law
enforcement body or foreign securities regulator (as well as by any US or state law enforcement agency or securities
regulator) and that, likewise, the transmittal of confidential information by the SEC to any such entity shall not be
considered a waiver.
[5] The SEC also asserted the informant's privilege with respect to one document on the supplemental log.

SEC's obligations to its sibling agencies in this regard.  Moreover, a substantial number of the documents related to SARs, and the Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(2), prohibits disclosure of even the existence of SARs to involved persons.

The SEC determined that the descriptions it provided were sufficient based on the language of Rule 26(b), which states that the description of the documents must enable the other party to assess the claim of privilege *while at the same time not reveal information itself privileged or protected*.  (Local Rule 26.2 contains similar language.)  The SEC also relied upon the 1993 Advisory Committee Note to Rule 26, which states that Rule 26(b)(5) "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege …."

## II.     Defendants Have Burdened the Court With Their Procedural Abuses, Which Have Resulted in Increased Litigation Costs for the SEC

While the SEC has at all times acted in good faith, the same cannot be said of the Defendants, who have put the SEC to considerable expense by repeatedly having to seek to compel Defendants' compliance with the rules.

On October 2, 2013, the Court ordered that the SEC could take broad discovery from Defendants.  (Holden Decl. at ¶9).  On October 4, 2013, the SEC served its Second Request on Defendants.  *Id*.  Defendants refused to produce *any* documents in response to this set of requests in contravention of Rule 34.  Indeed, Defendants' written response flatly stated with respect to each request:  "Defendants will not produce any responsive documents."[6]  In communications

---

[6] Defendants Response to the SEC's Second Request also included both general and specific objections to each Request based on the attorney-client privilege and/or work-product doctrine.  While Defendants asserted these privileges, Defendants did not submit a privilege log on November 7.  (Holden Decl. at ¶10).  On that same date, the SEC asked Defendants when they were going to produce their privilege log.  *Id*.  Defendants did not respond to the SEC's inquiry.  *Id*.  Nor did Defendants ever seek an extension of time from the SEC or the Court to produce their privilege log.  *Id*.  Thus, at the very same time Defendants were challenging the SEC's privilege logs, Defendants were not themselves in compliance with the rules, including Local Rule 26.2(b).  The SEC further notes that Defendants also did not timely serve privilege logs with respect to the SEC's First Request for the Production of

with the SEC, Defendants continued to refuse to produce responsive documents.  *Id*.

Remarkably, Defendants had not even started the process of collecting responsive documents

and, as revealed in documents later filed with the Court, did not start collecting responsive

documents until January 2014, months after the November 7 return date.  (Docket # 76 at ¶ 14).

Defendants' refusal to produce documents and their insistence on maintaining their boilerplate

objections necessitated the SEC's motion to compel.  On December 19, 2013, this Court ordered

Defendants to produce most of the SEC's requested documents, and the Court's written order of

December 23, 2013 stated that Defendants should produce these documents "promptly."

(Docket # 56).  Despite the Court's order, however, a prompt response from Defendants was not

forthcoming.[7]

In addition, Defendants have repeatedly engaged in gamesmanship that has further

burdened the Court and increased the SEC's costs of litigating this case.  For example,

Defendants filed a motion to dismiss, which was denied on August 2, 2013.  (Docket # 38).  On

October 10, Schinik sought leave to file a motion for summary judgment notwithstanding that

the Court had just rejected his motion to dismiss, and that just days before, on October 1, 2013,

the parties had proposed a schedule to Judge Daniels specifically stipulating that dispositive

motions would not be made until January 2015, after the close of fact discovery.  (Holden Decl.

at ¶13).  The SEC opposed Schinik's request and on October 21, 2013, the Court summarily

denied Schinik's request.  (Docket # 50).

---

Documents and that even the untimely logs failed to include communications concerning an internal investigation that should have been listed.  *Id*. at ¶11.

[7] Following the December 19 hearing and this Court's written order, the SEC repeatedly asked Defendants to prioritize for production the unredacted searchable FundRunner report and the eight months of communications between Defendants and investors and potential investors.  (Holden Decl. at ¶12).  Defendants refused to produce these documents during the seven months after the Court granted the SEC's motion to compel.  *Id*.  In addition, Defendants discovery efforts to date have apparently been focused entirely on email review and they do not appear to have even started gathering other non-electronic documents.  *Id*.  As such, Defendants have not produced deposition transcripts and/or documents concerning companies where certain Yorkville-associated persons had been installed as directors or officers.  *Id*.

In October 2013, the SEC issued subpoenas to a number of third parties, mainly investors, to obtain their communications with Defendants.  (Holden Decl. at ¶14).  Instead of moving to quash the subpoenas, Defendants sent letters to these parties urging their non-compliance with the SEC's subpoenas.  *Id*.

On October 24, Defendants served a plainly improper deposition notice seeking a 30(b)(6) deposition of an SEC employee concerning the thought processes by which the SEC arrived at its decision to investigate Defendants.  *Id*. at ¶15.  The SEC moved to quash and on November 7, 2013, the Court granted the SEC's motion.  (Docket # 52).  On November 8, the very next day, Defendants served a Second Request for the Production of Documents, seeking *inter alia*, documents, data, and information that the SEC used to arrive at its conclusions concerning Yorkville.  (Holden Decl. at ¶15).  This document request essentially sought the very same information as did the quashed subpoena, albeit without the testimony of an SEC witness. On April 14, 2014, Defendants served another 30(b)(6) deposition notice seeking, *inter alia*, testimony from an SEC employee concerning "the specific facts, information, documents, investigative testimony and/or other direct and/or circumstantial evidence that supports" the SEC's allegations and claims.  *Id*.  The SEC again moved to quash the notice of deposition, which was duplicative of earlier requests, protected by numerous privileges, and was a transparent attempt to circumvent the Court's prior ruling and the rules prohibiting contention interrogatories at this stage in the litigation.  *Id*.  The SEC's motion is *sub judice*.

Defendants have also issued document requests seeking absolutely irrelevant documents whose sole purpose appears to be to harass the SEC.  In their most recent document requests, for example, Defendants sought *every document concerning any case the SEC has ever brought, and*

*any investigation the SEC has ever conducted, concerning improper valuation by a hedge fund*
or the improper valuation of third-tier (i.e. illiquid) assets by any entity.  *Id*. at ¶16.

## ARGUMENT

### I.     The Awarding of Fees or Expenses Is Not Warranted in This Case

Defendants wrongly contend that this Court "must" grant their request for attorneys' fees.
As this Court's May 27 Order explicitly states, Defendants' motion was "granted in part and
denied in part."  Thus, Rule 37(a)(5)(C) applies (which concerns motions granted in part) and not
Rule 37(a)(5)(A) (which concerns motions granted in full).[8]  The applicable subsection uses the
word "may" and permits the Court discretion in awarding and apportioning fees.  *See e.g.,
Alexander Interactive, Inc. v. Adorama, Inc.*, 12 Civ. 6608, 2013 U.S. Dist. LEXIS 170931
(S.D.N.Y. Dec. 4, 2013); *MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real
Estate Secs. Inc.*, 12 Civ. 7322, 2013 U.S. Dist. LEXIS 142516 *6 (S.D.N.Y. Sept. 27, 2013).[9]
Regardless of whether subsection A or C of Rule 37(a)(5) applies, a court "must not order this
payment" if any of three conditions exist:  (1) the movant filed the motion before attempting in
good faith to obtain the discovery without court action; (2) the opposing party's nondisclosure
was substantially justified; or (3) other circumstances exist which make an award of expenses
unjust. Fed. R. Civ. P. 37(a)(5)(A).[10]  Because these conditions exist here, this Court must not
order expenses.[11]

---

[8] Assuming that Rule 37 applies at all to Defendants' motion, see Section II below.

[9] *Mantell v. Chassman*, 512 Fed. Appx. 21, 24 (2d Cir. 2013), which Defendants cite in support of the proposition that this Court must grant their fee application, applied Rule 37(a)(5)(A) and not 37(a)(5)(C).

[10] In *Rahman v. Smith & Wolensky Rest. Group, Inc.*, 06 Civ. 6198, 2009 U.S. Dist. LEXIS 62063 *6 n.1 (S.D.N.Y. July 21, 2009), the court held that these three limitations on a party's ability to obtain expenses applied equally to cases brought under 37(a)(5)(C).

[11] As to the first prong, the majority of Defendants' motion to compel challenged the grounds for the SEC's asserted privileges themselves.  Defendants never met and conferred regarding this argument, nor did the Court grant leave to Defendants to file a motion raising these issues.  Fed. R. Civ. P. 37(a)(5) specifically precludes costs when the moving party did not attempt to obtain discovery before seeking court action.

A.   **The SEC's Approach Was Reasonable Even if Incorrect**

Because the SEC made a good faith effort to meet its discovery obligations while addressing legitimate confidentiality concerns, its approach to describing documents on the privilege log was reasonable, even if ultimately erroneous.  The SEC's good faith is underscored by the absence of any motive or reason for it to limit the descriptions of documents identified in the logs, other than its legitimate confidentiality concerns.  As noted above, there is no dispute that the documents on the log were properly withheld.  Moreover, the documents are, at best, only marginally relevant in this case.  In other words, the SEC had nothing to gain by engaging in gamesmanship with respect to its privilege logs.  Under these circumstances, we respectfully submit that the SEC's approach in drafting the logs was reasonable or, as Rule 37(a)(5) describes, "substantially justified."

"When deciding whether a failure to make discovery is 'substantially justified,' courts are aided by *Pierce v. Underwood*, 487 U.S. 552 (1988), in which the Court effectively defined the phrase, [stating]:  'To our knowledge, that has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute' … of 'if reasonable people could differ as to [the appropriateness of the contested action].''"  *Thai Lao Lignite (Thailand) Co., Ltd v. Government of the Lao People's Democratic Republic*, 10 Civ. 5256, 2011 U.S. Dist. LEXIS 103378 (Sept. 13, 2011) (Wood, J.).[12]  In *Bowne of New York City v. AmBase Corp.*, 161 F.R.D. 258, 265 (S.D.N.Y. 1995), the Court explained that this standard should be applied leniently.  "When a dispute involves differing interpretations of the governing law, opposition is substantially justified unless it involves an unreasonable, frivolous or completely unsupportable reading of the law.  Such a lenient standard is necessary given the fact

---

[12] *See also MPD Accessories B.V. v. Urban Outfitters*, No. 12 CV 6501, 2013 U.S. Dist. LEXIS 151602 *5 (S.D.N.Y. Oct. 9, 2013) (The "substantially justified" standard for purposes of Rule 37 means "'justified to a degree that could satisfy a reasonable person,' which is 'more than merely undeserving of sanctions for frivolousness.'")

that attorneys must advocate for their clients and they must be allowed to address areas of the law that have not been fully elucidated by the courts. Courts must be careful not to chill the imaginative use of advocacy in pursuit of changing the law."[13]

This Court found that the SEC failed to provide sufficient descriptions of the general subject matter of the withheld documents and also failed to provide the names of the authors and recipients of the withheld communications. While the SEC has accepted the Court's ruling (and has turned over the previously withheld documents), the SEC believed in good faith in 2013 that its privilege logs were sufficient. And the SEC continues to believe that reasonable persons could differ as to the appropriateness of the SEC's disclosures. The SEC was circumspect in its privilege log descriptions because it believed that more detail might reveal information about ongoing criminal investigations and, in other instances, run afoul of constraints put upon it by, for example, the Anti-Money Laundering Act and agreements with foreign regulators.

While Rule 26 provides that the party asserting the privilege must "describe the nature" of the documents or communications being withheld, the Rule further provides that the party should "do so … without revealing information itself privileged or protected . . . ." Likewise, Local Rule 26.2 provides that certain specific information must be listed in a privilege log "unless divulgence of such information would cause disclosure of the allegedly privileged information." The treatise cited by the Court at the December 19 hearing – Civil Practice in the Southern District of New York – similarly states that the "general subject matter" must be

---

[13] *See also Klein v. Torrey Point Group, LLC*, 979 F. Supp.2d 417, 442 (S.D.N.Y. 2013) (no attorneys' fees unless the party's position "involves an unreasonable, frivolous, or completely unsupportable reading of the law"); *Marano v. Aaboe*, 2007 U.S. Dist. LEXIS 80154 *3 (S.D.N.Y. Oct. 29, 2007); *Comprehensive Habilitations Servs. v. Commerce Funding Corp.*, 248 F.R.D. 78, 87 (S.D.N.Y. 2006). Moreover, the fact that the SEC was not successful in its opposition to Defendants' motion to compel does not mean that its position was not substantially justified. *Gucci America, Inc. v. Weixing Li*, No. 10 Civ. 4974, 2011 U.S. Dist. LEXIS 97814 (Aug. 23, 2011) ("That the Court ultimately disagreed with the position taken by the Bank does not mean that the Bank's actions were improper or otherwise unjustified"), *recon. den.*, 2012 U.S. Dist. LEXIS 72650 (S.D.N.Y. May 18, 2012); *La Piel, Inc. v. Richina Leather Indus. Co., Ltd.*, No. 10-CV-1050, 2013 U.S. Dist. LEXIS 46238 (E.D.N.Y. March 29, 2013).

provided "unless divulgence would cause disclosure of the allegedly privileged information."  2 Civil Practice in the Southern District of New York § 14:4 (2d Ed.).  Indeed, the treatise states this principle multiple times and even cites the case *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 522-23 (S.D.N.Y. 1999), for the proposition that the description "fax attaching various data" was sufficient.  *Id.* at § 21:12.  The treatise, however, does not provide guidance as to how subject matter should be described in a case where, as here, even general information would reveal the subject of an ongoing criminal investigation.  Nor is there case law as to what this provision means in the context of the laws that demand that the SEC keep such material confidential, in some cases under the threat of criminal sanctions.[14]  In "areas of law that have not been fully elucidated by the courts …" courts should not award expenses.  *Bowne*, 161 F.R.D. at 265.

In addition to the confidentiality required under the Anti-Money Laundering Act, the SEC is a party to the Memorandum of Understanding entered into by the International Organization of Securities Commissions ("IOSCO"), which likewise provides that the SEC must keep confidential consultations and requests between it and foreign securities regulators. Section 24(d) and (f) of the Securities Exchange Act of 1934 (the "Exchange Act") similarly impose statutory obligations on the SEC not to disclose information obtained from foreign securities authorities.  The general descriptions in the SEC's privilege logs were intended to address the numerous concerns with describing – even generally – the communications between the SEC and the criminal authorities and foreign securities regulators.[15]  In addition to being consistent with Rule 26(b) and Local Rule 26.2, the SEC's position was also consistent with the treatise Civil

---

[14] Failing to comply with the nondisclosure provisions of the Anti-Money Laundering Act can result in criminal liability. *United States v. Mendoza*, No. 11-5221, 2012 U.S. App. LEXIS 11403 (9th Cir. June 4, 2012), *cert. den.*, 133 S. Ct. 1492 (U.S. 2013).

[15] Even the names of individuals at the various criminal authorities can reveal the nature of a criminal investigation depending on which Assistant U.S. Attorney or other prosecutor is handling the matter.  Likewise, the fact that communications are with individuals in the Enforcement Division of the SEC (or any of the specialized groups within the Enforcement Division, including Market Abuse or Asset Management), the Investment Management Division, the Trading & Markets Division, may reveal the nature of the investigation.

Practice in the Southern District of New York, which in the section on the law enforcement privilege states:  "the law enforcement privilege protects from the disclosure law enforcement techniques and procedures *as well as the identities of sources and law enforcement personnel*.  It is designed to protect confidentiality and safeguard the privacy of individuals involved in investigations as well as to prevent interference with investigations."  Civil Practice at § 14:23 (emphasis added).  Indeed, the treatise provides that the author of the document only needs to be provided "where appropriate."  *Id*. at § 21:12.[16]  Further demonstrating that the SEC acted reasonably is that the SEC has acted in good faith at all times during discovery, including:  (1) producing virtually its entire investigative file before even receiving a document request from defendants; (2) timely responding to discovery requests; (3) timely providing privilege logs; and (4) immediately updating privilege logs when additional documents were received.  Additionally, there is no suggestion that the withheld documents were improperly withheld.

In *Thai Lao*, the court declined to award sanctions under Rule 37 on the grounds that the party was substantially justified in not producing certain bank records.  The court's decision was based primarily on the fact that, like here, the law was not clearly defined, stating "[t]he law governing FSIA-related discovery is not clearly defined and is susceptible to genuine dispute.  Respondent reasonably argued that the FSIA's immunity provisions shielded the production of its U.S. bank account records.  Although its argument was ultimately rejected by Judge Freeman and now by this Court, Respondents' objection was 'substantially justified' such that sanctions should not issue under Rule 37(a)(5)(A)."  *See also Gucci America*, 2011 U.S. Dist LEXIS at

---

[16] While the SEC did not identify the specific authors or recipients, the SEC identified the agencies (including the United States Attorneys' Office for the Eastern District of New York, the FBI and the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP")), which the SEC believed was sufficient to allow Defendants to assess the applicability of the privilege.  Indeed, Defendants' initial letter to the SEC did not claim that the SEC failed to sufficiently identify the specific authors and recipients of the documents.  Holden Decl. at ¶8 and Ex. A thereto).

*37-38 (denying request for attorneys' fees where case law submitted by party demonstrated that the issue was "far from completely one-sided" and therefore reflected a genuine dispute).

**B.**     **Other Circumstances Make the Award of Expenses Unjust**

Rule 37(a)(5) provides that other circumstances may make an award of expenses unjust. While the Rule does not define what circumstances may make an award unjust, the Advisory Committee Notes state that this would include "where the prevailing party also acted unjustifiably."  In this case, Defendants' gamesmanship, which has substantially increased litigation costs, makes the award of expenses particularly unjust.  As described above, Defendants repeatedly violated discovery or other procedural rules, including:

- Asserting unsupported and form objections to discovery requests;[17]
- Failing to produce unobjectionable responsive documents in contravention of Rule 34 and instead stating "Defendants will not produce any responsive documents";
- Failing to comply with this Court's order to produce documents "promptly";
- Dismissing the SEC's requests to prioritize production of certain documents, in violation of Local Rule 26.4, which requires cooperation with respect to timing of discovery;
- Encouraging third parties to not comply with SEC subpoenas;
- Moving for summary judgment immediately after the motion to dismiss was denied; and
- Improperly and repeatedly seeking to take the depositions of SEC attorneys without any basis and trying to circumvent the rules concerning contention interrogatories.[18]

The SEC had to file a motion to compel and two motions to quash and otherwise spent countless hours responding to Defendants' tactics instead of conducting discovery in an orderly and timely fashion.  Because Defendants have engaged in dilatory tactics and do not have clean hands, awarding them attorneys' fees would be particularly unjust.  *See Dorroh v. Deerbrook Ins. Co.*,

---

[17] At the hearing Judge Pitman noted that "if you are going to suggest burden as an objection, you've got to make a particular showing in response to the document request."  (Tr. at p. 24).  Defendants also argued that the document requests sought duplicative documents that were produced during the SEC's investigation.  In fact, the SEC's Second Request specifically excluded documents already produced in the investigation.

[18] In addition, by not filing timely privilege logs (with respect to the SEC's first and second requests) and by not including documents relating to the internal investigation in its first privilege log, Defendants violated the same Local Rules they sought to enforce against the SEC and for which they now seek to recoup expenses.

11-CV-2120, 2012 U.S. Dist. LEXIS 13590 *30 (E.D. Cal. Sept. 21, 2012) (denying motion where both parties engaged in dilatory tactics and neither had clean hands).

## II.   Rule 37(a)(5) Does Not Apply and Rule 37(a)(5)(C) Does Not Allow Attorneys' Fees

Defendants seek expenses under Rule 37(a)(5).  As described in Rule 37(a)(5), if a party makes *certain* specific motions to compel (listed in Rule 37(a)(3))[19], it may be entitled to reasonable expenses if successful.  Defendants made none of these specific motions.  Instead, Defendants' motion for which they seek attorneys' fees and expenses was a motion to compel privilege logs in compliance with Rule 26(b)(5) and Local Rule 26.2.  Because the failure to provide sufficient information under Rule 26(b)(5) or the Local Rules is not one of the specific motions listed in Rule 37(a)(5), Rule 37(a)(5) sanctions should not be available at all.

Even if Rule 37(a)(5) was available, however, attorneys' fees are not allowable in this case.  Because Defendants' motion was granted in part and denied in part, Rule 37(a)(5)(C) is the relevant subsection.  While Subsections (A) and (B) state that reasonable expenses incurred in making or opposing the motion "including attorneys' fees" may be recovered, Subsection (C) is silent about attorneys' fees.  In *EEOC v. Bardon*, No. 08-1883, 2010 U.S. Dist. LEXIS 23899 *9-10 (D. Md. March 12, 2010), the Court held that attorneys' fees were not recoverable in a case where a motion was granted in part and denied in part, focusing on the different language between Subsection (C) and Subsections (A) and (B).  As the court explained, "[b]ecause the term 'attorney's fees' is explicit in subsections (A) and (B) but not in (C), the Court must presume that attorneys' fees are not permissible 'expenses' under subsection (C).  The plain reading of the statute mandates this result."  *See also EEOC v. McCormick & Schmick's Seafood*

---

[19] The specific motions are:  (1) a motion to compel disclosure under Rule 26(a); (2) a motion to compel a deponent to answer a question asked under Rule 30 or 31; (3) a motion to compel a corporation or other entity to make a designation under Rule 30(b)(6) or 31(a)(4); (4) a motion to compel a party to answer an interrogatory submitted under Rule 33; or (5) a motion to compel a party to permit inspection under Rule 34.

*Restaurants*, No. 11-2695, 2012 U.S. Dist. LEXIS 161511 (D. Md. Nov. 8, 2012) (noting the difference in the language and the differences between "expenses" and "attorneys' fees").[20]

## III.   **Defendants Seek Excessive and Unreasonable Fees**

As described above, based on the law and the circumstances, the additional sanction of attorneys' fees over and above waiver of the SEC's privileges is unwarranted and would be unjust.  However, if this Court disagrees, the SEC submits that Defendants have made one of the more expensive motions to compel an amended privilege log in recent memory.  Defendants are asking this Court to order the SEC to pay nearly $100,000 in attorneys' fees that they claim they incurred.  On the basis of Defendants' submission, however, there is no basis to determine what, if any, fees were actually paid by Defendants in connection with the motion.[21]  Moreover, even according to the time summary submitted, at most only $58,000 worth of time was even recorded making the motion.  And even the time recorded that actually relates to the making of the motion is excessive. Defendants' law firm, DLA Piper, had four partners working on this relatively simple discovery motion, who charged nearly 20 hours of time, at rates upwards of $915 per hour, to review a brief drafted by an associate who spent 60 hours drafting it at a rate of $540 per hour.[22]

---

[20] *But see Alliance Indus., Inc. v. Longyear Holding, Inc.*, No. 08CV490S, 2010 U.S. Dist. LEXIS 108544 *5 (W.D.N.Y. Oct. 12, 2010).  The SEC, like the Courts in *Bardon* and *Schmick's,* also notes that several courts have awarded attorneys' fees in cases brought under Rule 37(a)(5)(C), without any discussion of the difference in the language between the various subsections under Rule 37(a)(5).

[21] As the very article cited by Defendants in support of their claim that their rates are reasonable states:  "[o]f course, rates charged by firms on paper don't necessarily reflect what clients actually pay. . . ."  Indeed, that article notes that law firms only collect approximately 83.5% of what they bill.

[22] It is not surprising that the fees that Defendants' lawyers charged are excessive.  This is the same firm that purports to have charged its clients more than $7.5 million during the investigation, purportedly for the costs of reviewing documents.  And at the July 9, 2014 discovery conference, Defendants were represented by three partners. While the issues discussed at this hearing were important, having three partners attend a discovery conference (including one who travelled from California to attend) appears excessive. We also note that DLA Piper was sued by one of its clients for a "sweeping practice of overbilling" and that during that lawsuit, emails were produced in which DLA lawyers stated that the firm was "in standard 'churn that bill, baby!' mode."
http://dealbook.nytimes.com/2013/04/17/law-firm-dla-piper-settles-accusation-of-overbilling/?_php=true&_type=blogs&_r=0

**A.     Counsel's Time Records Show that Only 60% of the Requested Fees
Were Actually Incurred to Bring the Motion to Compel.**

Defendants' spreadsheet, which purports to summarize work purportedly done,

demonstrates that Defendants are inappropriately seeking fees for: (1) hours recorded for

reviewing the privilege logs when they were first provided to Defendants in early 2013;[23] (2)

hours recorded for writing their initial letter to the SEC in October 2013 and reviewing the

SEC's response, the majority of which had nothing to do with the privilege logs;[24] (3) hours

recorded for writing the initial letter to the Court in November 2013 and reviewing the SEC's

response; (4) hours recorded preparing for and attending the hearing in December 2013, which

largely addressed the SEC's motion to compel;[25] and finally (5) hours recorded bringing the

motion to compel.[26]  Even if the Court decides to award fees, it is only this last category of fees –

approximately 104 hours of attorney and paralegal time – that should be considered by this

Court, as those were the fees actually incurred in bringing the motion to compel.  *See Skanga*

*Energy & Marine Ltd. v. Arevenca*, 11 Civ. 4296, 2014 U.S. Dist. LEXIS 74921 *16 (S.D.N.Y.

May 19, 2014) (no entitlement to fees incurred prior to the motion being filed).

**B.     The Fees Incurred Were Duplicative and Excessive**

Additionally, the time records demonstrate that even the hours recorded to bring the

motion to compel were excessive and duplicative.  Counsel staffed this motion with four partners

(with billable rates ranging from $810-915/hour), one senior associate (billing at $540/hour), and

one paralegal (billing at $305/hour).  The use of four partners to work on a motion to compel

---

[23] This category includes time spent by paralegal Bonny Yang to "consolidate the SEC's privilege logs" and to
distribute them to the team.
[24] On October 21, 2013 – more than two months after their motion to dismiss was denied – Defendants sent a letter
to the SEC requesting that the SEC produce certain non-privileged documents that the SEC received from third
parties during the investigation, which they claimed the SEC had failed to produce.  (Holden Decl. at ¶8 and Ex.A
thereto).  On the final page of this six-page letter, Defendants also requested that the SEC amend its privilege logs to
add additional information concerning the subject matter of the withheld documents.  *Id.*
[25] Only six pages of the 81 page transcript concern the privilege issue.
[26] This last category commences on the fifth page of the spreadsheet.

privilege logs was excessive and resulted in greater fees than the matter required. *See Merck Eprova AG v. Gnosis S.P.A.*, 07 Civ. 5898, 2011 U.S. Dist. LEXIS 30683 *31-32 (S.D.N.Y. March 17, 2011) ("the involvement of five different attorneys does seem somewhat excessive"); *Wong v. Hunda Glass Corp.*, 09 Civ. 4402, 2010 U.S. Dist. LEXIS 90736 *10 (S.D.N.Y. Sept. 1, 2010) ("the use of two attorneys for this uncomplicated one-plaintiff FLSA case is both redundant and excessive"). In *Union Central Life Ins. Co. v. Berger*, 10 Civ. 8408, 2013 U.S. Dist. LEXIS 175759 *16 (S.D.N.Y. Dec. 13, 2013), the court stated that "assigning numerous attorneys to a straightforward matter presents a risk of inefficiency, duplication, and unnecessary billing." Finding that the matter turned on issues of contract interpretation, the court held that "neither the scope nor the complexity of the issues presented justifies the number of lawyers who billed time ...." *Id.* at *18. As such, the court held that the prevailing party "did not meet its burden" of explaining "why it was necessary to staff the case with three partners" and four associates, and the court allowed only the fees billed by two attorneys and the paralegals. *Id.* at *19. Here, the four partners assigned by DLA appear to have done the very same task – review and revise the motion papers drafted by the senior associate. (The role of the fourth partner – Mr. Weiner – is utterly unexplained.) Of the approximately $58,000 of fees claimed for bringing the motion, approximately $18,000 represents partner billing.

In addition, the fees that Defendants seek are greater than what courts in this district have found reasonable. In *E.F. v. New York City Dept. of Ed.*, 11 Civ. 5243, 2014 U.S. Dist. LEXIS 34606 (S.D.N.Y. March 17, 2014), Judge Daniels recently held that $150 is a reasonable hourly rate for senior paralegals in this district, citing other cases where paralegal rates between $120-150/hour were held to represent a reasonable rate in this district.[27] Research has not uncovered a

---

[27] *See also Union Central*, 2013 U.S. Dist. LEXIS 175759 *14-15 (reducing paralegal rates to $125/hour, stating that "[t]he paralegal billing rates of $220 to $225 and $185 per hour are, however, considerably higher than the rate

case in this district where a rate of over $300/hour for a paralegal was considered reasonable and approved in a fee application.  As such, the nearly $7,000 of paralegal fees is excessive.[28]  The rates charged by the partners in this case are also out of line with what is allowable in this district.  See *Merck*, 2011 U.S. Dist. LEXIS 30683 (court holds that $700-735/hour was inappropriate in a discovery matter and reduces the rate to $600/hour); *Demonchaux v. Unitedhealthcare Oxford*, 10 Civ. 4491, 2014 U.S. Dist. LEXIS 43954 *17-18 (S.D.N.Y. March 27, 2014) (court holds that requested rate of $600/hour for partner time was in line with the prevailing rates in this district of $750 and $795).  While there are cases that have held that a rate of $500/hour might be appropriate for senior associates, those cases appear to be where the associate has years of relevant experience.[29]  In this case, DLA Piper assigned a senior associate from its Philadelphia office, who is not admitted to practice in the SDNY (or in any of the courts of New York) and who is not even admitted *pro hac vice*, to work on a motion that largely concerns local SDNY procedures.  It is unclear what experience this senior associate has that warrants his $540 hourly rate[30] or why DLA chose not to assign a New York associate with greater experience in New York procedural law to this motion.  The time expended to work on this motion also appears excessive, particularly given the relatively straightforward nature of Defendants' motion to compel.  A review of Defendants' time records indicates that the only

---

that is generally approved in this District"); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp.2d 467, 507 (S.D.N.Y. 2009) (finding that requested $355 hourly rate for paralegals was "both shocking and unconscionable" and reducing rate to $100/hour).

[28] The time entries for the paralegal also suggest that the work done was excessive.  For example, on January 27, 2014, Ms. Yang billed 4 hours to "assist with preparation and service of motion to compel papers; review and respond to emails from team regarding the same."  Four hours to serve the motion to compel is excessive on its face. Likewise, on February 18, 2014, Ms. Yang billed 1.6 hours to determine the due date for the reply papers.

[29] *See Demonchaux,* 2014 U.S. Dist. LEXIS 43954 *17-18 ("Courts in this district have regularly found $500 or more to be a reasonable hourly rate for senior associate attorneys particularly one with Lieber's twenty-two years of legal experience").

[30] In his Declaration, Mr. Morgan states that Mr. Huh "focuses his practice on government investigations and complex commercial litigation."  Notably, Mr. Huh's profile on DLA Piper's website states that "John Huh focuses his practice on complex commercial litigation, appellate litigation, and government investigations, **concentrating in the fields of antitrust and consumer protection**."   http://www.dlapiper.com/en/us/people/h/huh-john-d/ (emphasis added).

legal research for the moving brief that the associate did in connection with his drafting efforts

was on January 23, 2014.  That research concerned the deliberative process and investigative

privileges as opposed to the sufficiency of the SEC's disclosures or the issue of waiver.[31]  Mr.

Morgan likewise billed less than one hour on "research motion to compel issues."  The lack of

research is evident from Defendants' motion to compel as the waiver section of their moving

brief contains a single case citation.  The rest of the attorney time devoted to this motion appears

to have been spent drafting, reviewing, and revising the brief.  Likewise, the associate recorded

3.4 hours of research in connection with the reply brief on February 18, 2014 (again, having

nothing to do with waiver) and outside of a "review" of the cases cited in the SEC's opposition

brief, no further legal research was done.  Where the requested amount of fees is excessive

because the number of stated hours is greater than should have been required, the Court should

reduce the stated hours accordingly.  *Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d

477, 487 (2d Cir. 2002) (time component should not reflect excessive hours); *Thai-Lao Lignite*

*(Thailand) Co., Ltd. v. Government of the Lao People's Democratic Republic*, 10 Civ. 05256,

2012 U.S. Dist. LEXIS 164261 (S.D.N.Y. Nov. 14, 2012).  Thus, in *Underdog Trucking v.*

*Verizon Servs. Corp.*, 276 F.R.D. 105 (S.D.N.Y. 2011), the court reduced the allowable time

working on a motion to compel from 33 hours to 19.8 hours.  *See also Marano v. Aaboe*, 05 Civ.

9375, 2007 U.S. Dist. LEXIS 80154 (S.D.N.Y. Oct. 29, 2007).

In addition to the fact that the overall fees were excessive, Defendants seek fees for

arguments that do not relate to the issue of "waiver," the issue that the Court adopted as the basis

for its decision.  Indeed, the waiver issue comprised one page of Defendants' moving brief and

one and a half pages of Defendants' reply brief.  Defendants are also seeking fees for the issue of

---

[31] It is unclear how much research Mr. Huh did on these issues.  While the time record is for 3.8 hours, that same time record also includes the generic "[p]repare the motion to compel" notation.

the applicability of the privileges asserted by the SEC – an issue about which they never

conferred in good faith with the SEC (and which the Court did not instruct them to submit).  And

because the time records are not broken down into issues – most of the records simply state

"prepare," "assist," "review," or "revise" the briefs – it is impossible to state how much time was

spent on each issue.  For this reason as well, Defendants' motion should be denied.  Finally, as

described in Rule 37(a)(5)(C), this Court should apportion any expenses awarded between the

portion of the motion that was granted and the portion that was denied.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that this Court deny

Defendants' Motion for Expenses and Attorneys' Fees and grant such other relief as appropriate.


Dated:  July 16, 2014                                Respectfully Submitted,


                                            _____/s/ Todd D. Brody_____
                                            Todd D. Brody
                                            Stephen Holden
                                            SECURITIES AND EXCHANGE COMMISSION
                                            New York Regional Office
                                            3 World Financial Center
                                            New York, NY 10281