```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SECURITIES AND EXCHANGE            :
COMMISSION,
                                   :   12 Civ. 7728 (GBD)(HBP)
              Plaintiff,
                                   :   OPINION
     -against-                         AND ORDER
                                   :
YORKVILLE ADVISORS, LLC, MARK
ANGELO and EDWARD SCHINIK,         :

              Defendants.          :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

## I.  Introduction

By notice of motion dated June 26, 2014 (Docket Item 88), defendants Yorkville Advisors, LLC, Mark Angelo and Edward Schinik (collectively, "defendants") move for an Order awarding attorneys' fees and costs incurred in bringing their motion to compel the Securities and Exchange Commission (the "SEC") to produce the documents scheduled in the SEC's January 25, 2013 and February 15, 2013 privilege logs (Docket Item 61); the motion to compel was granted in part and denied in part in my May 27, 2014 Opinion and Order (Docket Item 71).

For the reasons set forth below, defendants' counsel is awarded $21,619.63 in attorneys' fees and $431.73 in costs, for a total award of $22,051.36.

## II. Facts

### A. Background

The facts underlying the discovery dispute and the motion to compel upon which defendants base their motion for attorneys' fees and costs are set forth in my May 27, 2014 Opinion and Order resolving the motion to compel, familiarity with which is assumed. SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 155-57 (S.D.N.Y. 2014). The pertinent facts and procedural posture of this case are briefly summarized here.

The SEC commenced this action alleging, among other things, that defendants had (1) "engaged in a fraudulent scheme pursuant to which they reported false and inflated values for certain convertible debentures, convertible preferred stock . . . , and promissory note investments held by the hedge funds managed by Yorkville" Advisors, LLC ("Yorkville") and (2) made other "materially false and misleading statements to investors and potential investors about" Yorkville (Complaint, dated October 17, 2012 (Docket Item 1) ¶¶ 1-2). On October 31, 2012,

this case was designated for inclusion in the Pilot Project
Regarding Case Management Techniques for Complex Civil Cases in
the Southern District of New York (the "Pilot Project") (Docket
Item 2).

On January 27, 2014, after an exchange of letters and a
discovery conference regarding the adequacy of the SEC's January
25, 2013 and February 15, 2013 privilege logs (collectively, the
"Privilege Logs") produced in response to defendants' First
Request for the Production of Documents, the defendants filed a
motion to compel. SEC v. Yorkville Advisors, LLC, supra, 300
F.R.D. at 155-56.

I concluded that the SEC's Privilege Logs failed to
provide the information required by Federal Rule of Civil Proce-
dure 26(b)(5), Local Civil Rule 26.2(a)(2)(A) and the Pilot
Project's discovery procedures and that they lacked sufficient
information to support the asserted claims of privilege. SEC v.
Yorkville Advisors, LLC, supra, 300 F.R.D. at 164.  In addition,
I found that the SEC's submission of its Revised Privilege Log
was untimely pursuant to Local Civil Rule 26.2(b) because it was
served after defendants had filed their motion to compel and the
SEC's justification for the delay in production was "totally
inadequate." SEC v. Yorkville Advisors, LLC, supra, 300 F.R.D.
at 165.  I further determined that the new claims of privilege

3

asserted for the first time in the Revised Privilege Log were
untimely pursuant to Federal Rule of Civil Procedure
26(b)(5)(A)(i) and Local Civil Rule 26.2.  SEC v. Yorkville
Advisors, LLC, supra, 300 F.R.D. at 166.  However, because I
concluded that the statutory privilege afforded to Suspicious
Activity Reports ("SARs") pursuant to the Annunzio-Wylie Anti-
Money Laundering Act[1] could not be waived, I held that the SEC
could assert its privilege with respect to twenty-six SARs listed
in the Revised Privilege Log.  SEC v. Yorkville Advisors, LLC,
supra, 300 F.R.D. at 167.  Thus, "the SEC's unjustified failure
to serve indices of privileged documents in a timely and proper
manner operate[d] as a waiver of any applicable privilege, with
the exception of the SARs privilege."  SEC v. Yorkville Advisors,
LLC, supra, 300 F.R.D. at 167.

Because defendants only raised their claim for attor-
neys' fees and costs in their reply brief, I denied that request
without prejudice, allowing defendants to renew their application
through a formal motion.  SEC v. Yorkville Advisors, LLC, supra,
300 F.R.D. at 168.  On June 26, 2014, defendants filed the
instant motion for attorneys' fees and costs (Docket Item 88).

---

[1] 31 U.S.C. §§ 5311, et seq.

B.   Fees & Costs
     Sought by Defendants

Defendants' counsel seek attorneys' fees in the amount of $95,736.50 and costs in the amount of $454.45 in connection with their motion to compel (Memorandum of Law in Support of Defendants Yorkville Advisors, LLC, Mark Angelo, and Edward Schinik's Motion for Attorney's Fees and Costs, dated June 26, 2014, (Docket Item 89) ("Defs.' Mem."), at 12).

Defendants calculate the amount sought as follows:

| Attorney | Hourly Rate Sought[2] | No. of Hours | Fee Sought |
|---|---|---|---|
| John D. Huh Senior Associate, Philadelphia Litigation Department[3] | $505 ('13) $540 ('14) | 6.0 62.5 | $3,030.00 $33,750.00 |
| Nicolas Morgan Partner, Los Angeles Complex Securities Litigation Group, "specialized qualifications in areas of securities law and accounting"[4] | $765 ('13) $810 ('14) | 5.9 7.6 | $4,513.50 $6,156.00 |

---

[2]Defendants' calculations include hourly rate increases from 2013 to 2014.

[3]Declaration of Nicolas Morgan in Support of Defendants' Motion for Attorneys' Fees and Costs, dated June, 26, 2014, (Docket Item 90) ("June 26 Morgan Decl.") ¶ 11.

[4]June 26 Morgan Decl. ¶ 7.

| | | | |
|---|---|---|---|
| <u>David Sack</u><br>Former New York Associate[5] | $595 ('13) | 11.0 | $6,545.00 |
| <u>Caryn Schechtman</u><br>Partner, New York, practicing<br>private securities litigation<br>and securities regulatory law | $865 ('13)<br>$915 ('14) | 9.8<br>4.0 | $8,477.00<br>$3,660.00 |
| <u>Joshua Sohn</u><br>Partner, New York, focusing<br>on complex commercial, real<br>estate and securities<br>litigation[6] | $860 ('13)<br>$910 ('14) | 10.9<br>7.9 | $9,374.00<br>$7,189.00 |
| <u>Perrie M. Weiner</u><br>Managing Partner, Los<br>Angeles, International<br>Co-Chair of securities<br>litigation practice[7] | $780 ('13)<br>$825 ('14) | 0.5<br>1.3 | $390.00<br>$1,072.50 |
| <u>Paralegal</u><br><u>Bonny Yang</u><br>Certified Senior Paralegal,<br>New York, "approximately 12<br>years of experience in<br>securities investigations and<br>litigation"[8] | $295 ('13)<br>$305 ('14) | 16.3<br>22.2 | $4,808.50<br>$6,771.00 |
| | <u>Total</u> | <u>165.9</u> | <u>$95,736.50</u> |

(Exhibit A annexed to June 26 Morgan Decl. ("Defs.' Invoice")).

In addition to the foregoing fees, defendants also seek an award of the following costs:

---

[5]June 26 Morgan Decl. ¶ 12.

[6]June 26 Morgan Decl. ¶ 10.

[7]June 26 Morgan Decl. ¶ 8.

[8]June 26 Morgan Decl. ¶ 13.

| | |
|---|---|
| Transcripts | $432.54 |
| UPS | $21.91 |
| Total | $454.45 |

(Exhibit B annexed to June 26 Morgan Decl.).

III.  Analysis

    A.  Defendants are Entitled
       to Reasonable Fees and Costs
       Pursuant to Federal Rule of
       Civil Procedure 37(a)(5)(C)

Pursuant to Rule 37, if a motion to compel "is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A).  An award of expenses is mandatory unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed.R.Civ.P. 37(a)(5)(A).  However, "[i]f the motion is granted in part and denied in part, the court

. . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed.R.Civ.P. 37(a)(5)(C).

"Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999); see Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006). The imposition of Rule 37(a)(5) sanctions for failure to comply with discovery demands must be weighed in light of the full record. See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures, 602 F.2d 1063, 1068 (2d Cir. 1979). Applying the foregoing principles to the facts in this case leads me to conclude that defendants are entitled to an award of fees and expenses.

        1.  Rule 37(a)(5) Applies
           to Defendants' Motion

Without citing any authority for the argument, the SEC first contends that the underlying motion was not brought under Rule 37 and that Rule 37(a)(5) does not, therefore, authorize an award of fees and expenses. The SEC argues that the underlying motion to compel was made under Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 (Memorandum of Law in Support of the Securities and Exchange Commission's Opposition to Defen-

dants Yorkville Advisors, LLC, Mark Angelo and Edward Schinik's
Motion for Attorney's Fees and Costs, dated July 16, 2014,
(Docket Item 91) ("SEC's Mem."), at 16).  According to the SEC,
an award of fees and expenses under Rule 37(a)(5) is available
only with respect to motions made under Rule 37(a)(3).  Because,
in the SEC's view, the underlying motion was made under Rule
26(b)(5) and Local Civil Rule 26.2, Rule 37(a)(5) cannot be
invoked as the basis for an award of fees and expenses.

The SEC's argument is unconvincing.  Although the
underlying motion to compel did not specify under what Rule it
was being brought, it could only have been brought under Rule
37(a)(3)(B)(iv) which provides:

> (3) **<u>Specific Motions</u>**.
>
>            *     *     *
>
> > (B) <u>To Compel a Discovery Response</u>.  A party seek-
> > ing discovery may move for an order compelling an
> > answer, designation, production, or inspection.
> > This motion may be made if:
> >
> >      *     *     *
> >
> > > (iv) a party fails to respond that inspection
> > > will be permitted -- or fails to permit in-
> > > spection -- as requested under Rule 34.

The underlying motion was brought because the SEC refused to
permit inspection of certain documents on the ground that they

were privileged -- a motion that is within the heartland of Rule
37(a)(3)(B)(iv).

Rule 26(b)(5) and Local Civil Rule 26.2 do not provide
for any motions.  Rather, they are part of the general provisions
applicable to all discovery applications and merely set forth the
information that must be provided when a privilege is asserted to
resist a discovery request.

Properly viewed, the underlying motion sought to compel
production of documents pursuant to Rule 37(a)(3)(B)(iv) because
the SEC failed to provide the information required by Rule
26(b)(5) and Local Civil Rule 26.2.  The SEC's contention that
the underlying motion was brought under Rule 26(b)(5) and Local
Civil Rule 26.2 ignores the language and structure of the Federal
Rules of Civil Procedure and ignores a number of cases in which
fees and expenses under Rule 37(a)(5) have been awarded for
motions to compel predicated on a party's failure to comply with
Rule 26(b)(5).  See United States v. Bouchard Transp., No.
08CV4490 (NGG)(ALC), 2010 WL 3842268 at *1-*2 (E.D.N.Y. Sept. 28,
2010); see also Lafleur v. Ean Holdings, LLC, No. 12-233-SDD-RLB,
2013 WL 2490613 at *3 (M.D. La. June 10, 2013); Isilon Sys., Inc.
v. Twin City Fire Ins. Co., No. C10-1392MJP, 2012 WL 503852 at *4
(W.D. Wash. Feb. 15, 2012); Black v. Pilot Travel Ctrs., LLC, No.
CIV. 09-4170-KES, 2011 WL 3421595 at *3-*4 (D.S.D. Aug. 4, 2011).

10

Thus, to the extent the SEC contends that Rule 37(a)(5) is not applicable to the underlying motion, I reject its argument.

2. The Court May Apportion
   Reasonable Expenses
   <u>Pursuant to Rule 37(a)(5)(C)</u>

Defendants next claim that the court may not apportion attorneys' fees and costs because (1) the SEC disclosed the requested discovery when it produced the Revised Privilege Log and (2) the only reason their motion to compel was denied in part was because the statutory privilege afforded the SARs could not be waived (Reply Brief in Support of Defendants Yorkville Advisors, LLC, Mark Angelo, and Edward Schinik's Motion for Attorney's Fees and Costs, dated July 28, 2014 (Docket Item 9) ("Defs.' Reply"), at 7-8).  The SEC contends that any award must be apportioned because the defendants' motion was granted in part and denied in part (SEC's Mem., at 10).

I conclude that apportionment is required.  As clearly stated in my opinion resolving defendants' motion to compel, the "motion [was] granted in part and denied in part."  <u>SEC v. Yorkville Advisors, LLC</u>, <u>supra</u>, 300 F.R.D. at 154, 168-69.

Defendants first argue that Rule 37(a)(5)(A) precludes apportionment because the SEC did not produce its Revised Privi-

11

lege Log until after defendants filed their motion to compel,
i.e., "the disclosure or requested discovery [was] provided after
the motion was filed." See Fed.R.Civ.P. 37(a)(5)(A).  This
argument fails.  As evidenced by defendants' continued litigation
of the motion to compel and my subsequent order, although the SEC
produced the Revised Privilege Log after the defendants filed the
motion to compel, the Revised Privilege Log failed to fully
satisfy the defendants' discovery request and did not moot
defendants' motion to compel.  See SEC v. Yorkville Advisors,
LLC, supra, 300 F.R.D. at 165 (While the Revised Privilege Log
"provide[d] additional details regarding the subject matter,
authors and recipients of emails and letters, [it] still fail[ed]
to provide details for documents categorized as reports.").  Rule
37(a)(5)(A) applies when the post-motion disclosure provides the
"requested discovery," i.e., when it puts the movant in the
position it would have been in had the motion to compel been
granted in its entirety.  Because the SEC, in producing the
Revised Privilege Log, failed to provide either adequate descrip-
tions of the withheld documents or the requested documents
themselves, Rule 37(a)(5)(A) is inapplicable.

        Defendants also argue that Rule 37(a)(5)(A) applies
because their motion was partially denied only because the
statutory privilege for the SARs could not be waived.  Rule

37(a)(5)(C) provides for allocation when, as here, a motion to compel is granted in part and denied in part.  Nothing in the language of Rule 37(a)(5)(C) suggests that its applicability turns on the basis for the ruling on the motion to compel.

Thus, I conclude that, as a matter of discretion, I may apportion the defendants' reasonable expenses pursuant to Rule 37(a)(5)(C).

3. An Award Under
Rule 37(a)(5)(C)
May Include Attorneys' Fees

The defendants seek an award of attorneys' fees as part of the "reasonable expenses" recoverable under Rule 37(a)(5)(C). The SEC, citing cases from the United States District Court for the District of Maryland,[9] argues that the award of attorneys' fees is not allowed under Rule 37(a)(5)(C) because, unlike Rule 37(a)(5)(A) and (B), which explicitly allow for the recovery of

---

[9] See EEOC v. Bardon, Inc., No. RWT-08-1883, 2010 WL 989051 at *3 (D. Md. Mar. 12, 2010) ("Because the term 'attorney's fees' is explicit in subsections (A) and (B) but not in (C), the Court must presume that attorneys' fees are not permissible 'expenses' under subsection (C).  The plain reading of the statute mandates this result."); see also EEOC v. McCormick & Schmick's Seafood Rest., No. DKC-11-2695, 2012 U.S. Dist. LEXIS 161511 at *11-*14 & n.3 (D. Md. Nov. 8, 2012) (distinguishing attorneys' fees from expenses and concluding attorneys' fees are unavailable under Rule 37(a)(5)(C) while acknowledging conflicting decisions from the Western District of New York and the Southern District of New York).

expenses "including attorneys' fees," Rule 37(a)(5)(C) makes no mention of attorneys' fees.

District courts in this Circuit have declined to follow the Maryland decisions:

> A review of recent case law indicates that the District of Maryland is unique in distinguishing "attorney's fees" from "expenses" where a movant only partially prevails in its motion to compel.  In almost every published decision under Rule 37(a)(5)(C) the courts have decided whether expenses, including attorney's fees, were appropriately awarded and determined what was the proper amount to be awarded given the level of the movant's success, e.g., CBT Flint Partners, LLC v. Return Path, Inc., No. 1:07CV1822, 2008 U.S. Dist. LEXIS 84189, at *11-12, 2008 WL 4441920 (N.D. Ga. Aug. 7, 2008) (awarding movant 75% of attorney's fees incurred from opponent or its counsel); Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC, No. 09-497-JJB-SCR, 2010 U.S. Dist. LEXIS 28708, at *12, 2010 WL 1252328 (M.D. La. Mar. 24, 2010) (Riedlinger, Mag. J.) (awarding attorney's fees for motion to compel only partially granted); see also 7 Wayne D. Brazil, Moore's Federal Practice-Civil, § 37.23[1] (2010) ("Expense shifting sanctions are defined as the 'reasonable expenses incurred' in making or opposing the motion, including attorney's fees").  The Bardon court's contrary construction of Rule 37(a)(5)(C) is unique, as that court itself recognized, 2010 U.S. Dist. LEXIS 23899, at *10, 2010 WL 989051 . . . .  Cases that ultimately denied recovery of any expenses or attorneys' fees under Rule 37(a)(5)(C) did so combining both categories . . . of expense without making the fine distinction the Bardon court raises.

> This Court adopts the Southern District of New York's rationale in Rahman v. Smith & Wollensky Restaurant Group, No. 06CV6198, 2009 U.S. Dist. LEXIS 62063, at *6 & n.1, 2009 WL 2169762 (S.D.N.Y. July 21, 2009) [(Kaplan, D.J.)], wherein that court held that Rule 37(a)(5)(C) incorporated the substantive standards from

14

the other parts of Rule 37(a)(5) regarding what constitutes a recoverable expense.

<u>Alliance Indus., Inc. v. Longyear Holding, Inc.</u>, No. 08CV490S, 2010 WL 3991636 at *5 (W.D.N.Y. Oct. 12, 2010) (footnote collecting cases omitted); <u>see Charter Practices Int'l, LLC v. Robb</u>, No. 3:12cv1768 (RNC), 2014 WL 273855 at *5 (D. Conn. Jan. 23, 2014) (awarding fees and costs to movant).  I respectfully decline to follow the cases cited by the SEC, as their holdings conflict with the majority of District Court decisions within this Circuit.

Thus, I conclude that courts, in their discretion, may award attorneys' fees pursuant to Rule 37(a)(5)(C).

4.   Applying the Three Factors
     Under Rule 37(a)(5)(A)(i)-(iii),
     Defendants are Entitled to an
     <u>Award of Costs and Fees</u>

The SEC next argues that if fees are recoverable under Rule 37(a)(5)(C), the court must consider the three factors listed under Rule 37(a)(5)(A)[10] (SEC's Mem., at 10).  The defendants concur with this contention and address the factors in

_____

[10]Fed.R.Civ.P. 37(a)(5)(A) ("the court must not order . . . payment if:  (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.").

15

their own moving papers (<u>see</u> Defs.' Mem., at 5-9; Defs.' Reply, at 1-6).

"Rule 37(a)(5)(C) effectively incorporates the substantive standards of Rule 37(a)(5)(A) and (B)." <u>Rahman v. Smith & Wollensky Rest. Grp., Inc.</u>, 06 Civ. 6198 (LAK), 2009 WL 2169762 at *2 n.1 (S.D.N.Y. July 21, 2009) (Kaplan, D.J.); <u>see</u> <u>Charter Practices Int'l, LLC v. Robb</u>, <u>supra</u>, 2014 WL 273855 at *5.

Thus, in determining whether to award fees and costs pursuant to Rule 37(a)(5)(C), I must analyze the three factors under Rule 37(a)(5)(A)(i)-(iii).

       a.  Defendants Attempted in Good Faith to
           Obtain Disclosure Without Judicial
           <u>Intervention Prior to Filing Their Motion</u>

In a footnote, the SEC claims the defendants did not make a good faith attempt to obtain the discovery sought without judicial intervention prior to making their motion and that they may not, therefore, recover their fees and expenses.  The SEC claims that the defendants' motion to compel largely challenged the applicability of the privileges the SEC asserted, that the parties never met and conferred regarding defendants' substantive arguments and defendants were not granted leave to make a motion asserting those substantive issues (SEC's Mem., at 10 n.1).  These claims are without merit and ignore the numerous communica-

tions between the parties and my Chambers attempting to resolve the discovery dispute.

I expressly addressed the SEC's meet-and-confer argument in my May 27, 2014 Opinion and Order:

> Assuming, without deciding, that defendants failed to satisfy [the meet-and-confer] requirement, it is clear that any attempt to do so would have been futile. See Gibbons v. Smith, 01 Civ. 1224 (LAP), 2010 WL 582354 at *2 (S.D.N.Y. Feb. 11, 2010) (Preska, Chief D.J.) ("relief from the meet-and-confer requirement" is warranted where "any attempt to resolve the dispute informally would have been futile").  Here, the inadequacy of the Privilege Logs was the subject of at least four letters; I also addressed the issue during a discovery conference and opined that the privilege logs appeared deficient (see [January 27, 2014] Morgan Decl., Exs. E to I).  Yet, the SEC inexplicably failed to make any effort to amend its privilege logs until after defendants filed the present motion despite my comments on December 19, 2013 that the logs filed prior to that date were deficient.  Ordering the parties to meet and confer at this juncture would only result in "further delay in resolving these issues on the merits." Time Inc. v. Simpson, 02 Civ. 4917 (MBM)(JCF), 2002 WL 31844914 at *2 (S.D.N.Y. Dec. 18, 2002) (Francis, M.J.) (excusing failure to meet and confer).

SEC v. Yorkville Advisors, LLC, supra, 300 F.R.D. at 162 n.1.

It would have been just as futile for the parties to meet and confer regarding defendants' substantive challenges to the asserted privileges because the defendants lacked sufficient information to make those arguments as a result of the SEC's inadequate descriptions in its Privilege Logs.  The meet-and-confer requirement, like Rule 37(a)(5)(A)(i)'s good faith re-

17

quirement, is "designed to promote efficiency in litigation," but where it proves futile and would only result in further delaying resolution of the dispute, it may not be required.  Time Inc. v. Simpson, 02 Civ. 4917 (MBM)(JCF), 2002 WL 31844914 at *2 (S.D.N.Y. Dec. 18, 2002) (Francis, M.J.).  By including both their substantive arguments and their challenges to the adequacy of the Privilege Logs within their motion to compel, the defendants more efficiently obtained discovery without further burdening the court or wasting valuable time and resources.  Indeed, it is fundamental that a party must make all of its arguments in favor of the relief sought at the time the motion is made or risk a finding of waiver.

Thus, the defendants made a good faith effort to obtain discovery without court action.

b.  The SEC Was Not Substantially
    Justified in Its Actions

If the SEC was substantially justified in its response to defendants' discovery request, the court may decline to award defendants' fees and costs.  Fed.R.Civ.P. 37(a)(5)(A)(ii).  "The United States Supreme Court has interpreted the phrase 'substantially justified' to mean '"justified in substance or in the main" -- that is, justified to a degree that could satisfy a

18

reasonable person,' which is 'more than merely undeserving of sanctions for frivolousness.'" MPD Accessories, B.V. v. Urban Outfitters, Inc., 12 Civ. 6501 (LTS)(KNF), 2013 WL 3816598 at *3 (S.D.N.Y. July 22, 2013) (Fox, M.J.), objections overruled, 2013 WL 5647430 (S.D.N.Y. Oct. 9, 2013) (Swain, D.J.), quoting Pierce v. Underwood, 487 U.S. 552, 565-66 (1988). "Substantial justification for refusing discovery is determined according to 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013) (Failla, D.J.), quoting Bowne of N.Y.C., Inc. v. AmBase Corp., 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (Carter, D.J.).  In other words,

> "the source of the norms for determining whether the standard has been satisfied is the courts' [sic] view about the range of behavior that a hypothetical reasonable lawyer would engage in if confronted with the circumstances presented in the particular case. . . . [A] prevailing party can secure an expense sanction award without proving that the losing party acted in bad faith, and proof by the losing party that it acted in subjective good faith is not sufficient to defeat a request for sanctions."

In re Omeprazole Patent Litig., MDL 1291, M-21-81 (BSJ), 2005 WL 818821 at *6 (S.D.N.Y. Feb. 18, 2005) (Special Master's Ruling), aff'd, 227 F.R.D. 227 (S.D.N.Y. Feb. 25, 2005) (Jones, D.J.), quoting 7-37 Moore's Federal Practice-Civil § 37.23[2] (2004).

The SEC argues that its Privilege Logs and Revised Privilege Log did comply with the rules and that its position was substantially justified.  The SEC claims that it believed in good faith that all of the privilege logs were sufficient because providing additional information might have jeopardized ongoing criminal investigations or run afoul of statutory exemptions from discovery (SEC's Mem., at 12-14).  In addition, the SEC claims that the law was not clearly defined and that reasonable people could disagree as to whether the SEC's disclosures were suffi-cient (SEC's Mem., at 12-14).  The defendants contend that the SEC's response was not substantially justified because the SEC had ample opportunities to correct its Privilege Logs and unjus-tifiably failed to do so, the SEC fabricated a claim of privi-lege, the Privilege Logs clearly failed to meet the requirements of the rules and the submission of a Revised Privilege Log constituted an acknowledgment by the SEC that its prior Privilege Logs were deficient (Defs.' Mem., at 6-8).

While the SEC claims that it has "accepted the court's ruling" on the motion to compel, the majority of the SEC's substantial justification argument focuses on the adequacy of the Privilege Logs (SEC's Mem., at 1).  To the extent that the SEC argues that its response was substantially justified because amending the Privilege Logs might have revealed information

20

concerning criminal investigations or violated the SEC's obliga-
tions to protect information under various statutes and foreign
agreements, I have already determined that the SEC's failure to
serve sufficient privilege logs, based upon those arguments, was
"unjustified."  SEC v. Yorkville Advisors, LLC, supra, 300 F.R.D.
at 167.

Even if the SEC had a subjective good faith belief that
its response was substantially justified, reasonable persons
would not disagree that the SEC's disclosures were insufficient
pursuant to Rule 26(b)(5) and Local Civil Rule 26.2.  "[T]he
SEC's attorneys are deemed to have knowledge of the Court's
rules," and the Privilege Logs submitted by the SEC clearly did
not comply with those rules.  SEC v. Yorkville Advisors, LLC,
supra, 300 F.R.D. at 162-65.  Although the insufficiency of the
Privilege Logs was discussed in at least four letters and ad-
dressed during the December 19, 2013 discovery conference at
which I advised the SEC that the Privilege Logs appeared defi-
cient, "the SEC inexplicably failed to make any effort to amend"
them until the motion to compel was filed.  SEC v. Yorkville
Advisors, LLC, 300 F.R.D. at 162 n.1.  Moreover, the SEC unjusti-
fiably claimed a non-existent privilege, the "intergovernmental

21

investigative privilege,"[11] to support its response. <u>SEC v. Yorkville Advisors, LLC</u>, <u>supra</u>, 300 F.R.D. at 161-62.  Finally, not only did the SEC tacitly acknowledge that its Privilege Logs were inadequate by the submission of the Revised Privilege Log, the SEC (1) failed to explain meaningfully why it did not provide adequate descriptions in a timely manner; (2) untimely raised new privilege claims without justification and (3) provided revisions in the Revised Privilege Log that were "so minimal that they suggest[ed] the SEC simply neglected its duty to comply with the [rules] when creating the Privilege Logs." <u>SEC v. Yorkville Advisors, LLC</u>, <u>supra</u>, 300 F.R.D. at 165-66.

　　　Thus, based on the foregoing and the reasons set forth in my May 27, 2014 Opinion and Order, I conclude that the SEC was not substantially justified in producing inadequate privilege

---

[11]The SEC attempts to justify this claim by arguing that it really was referring to the "common interest doctrine" under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, § 929k, 15 U.S.C. § 78x(f).  The SEC's proffered justification provides it no succor.  One of the purposes of an index of documents withheld on the ground of privilege is to enable a party to assess whether privileges have been properly invoked.  If the SEC misnamed a privilege, it frustrated this purpose.  Second, the so-called common interest doctrine is not a privilege at all.  Rather it merely permits limited disclosure of materials that are otherwise privileged without the disclosure operating as a waiver.  <u>United States v. Schwimmer</u>, 892 F.2d 237, 243-44 (2d Cir. 1989); <u>Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles & Kaufman, LLP</u>, 01 CV 3844 (SJ), 2006 WL 2135782 at *15 (E.D.N.Y. July 28, 2006).

logs in response to defendants' document request and failing to take corrective action in response to my pre-motion admonitions.

### c.  No Other Circumstances Make an Award of Fees and Costs Unjust

Finally, courts may decline to award reasonable expenses if there are additional circumstances that would make the award unjust.  Fed.R.Civ.P. 37(a)(5)(A)(iii).  The SEC claims that an award of fees and costs would be unjust because the waiver of privilege was a sufficient sanction, the produced documents were marginally relevant, there is no evidence of prejudice or harm to the defendants as a result of the belated disclosure and the defendants have unclean hands (SEC's Mem., at 1, 3-4, 7-10, 15).  Defendants argue that the award of attorneys' fees is necessary because, despite being given the opportunity to do so, the SEC failed to amend its privilege logs, causing "'needless motion practice, [and] wasting time and resources'" (Defs.' Mem., at 6, citing Mantell v. Chassman, 512 F. App'x 21, 24 (2d Cir. 2013)).  In addition, defendants argue that whether the documents were relevant is not material to the issue here; instead, the issue is defendants' inability to assess the SEC's privilege claims and the relevance of the documents because the SEC provided deficient privilege logs (Defs.' Reply, at 4-5).

23

Finally, defendants argue that the SEC's claim of unclean hands is baseless (Defs.' Reply at 5).

"Monetary sanctions under Rule 37(a)([5]) serve a dual purpose. In part, they are intended to deter discovery abuses. At the same time, they are designed to compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly." SJ Berwin & Co. v. Evergreen Entm't Grp., Inc., 92 Civ. 6209 (WK), 1994 WL 501753 at *2 (S.D.N.Y. Sept. 14, 1994) (Francis, M.J.); see 246 Sears Rd. Corp. v. Exxon Mobil Corp., No. 09-CV-889 (NGG)(JMA), 2013 WL 4506973 at *11 (E.D.N.Y. Aug. 22, 2013) (Rule 37(a)(5) has both "compensatory and deterrent objectives").

The cost in time and expense to defendants in litigating the motion to compel was significant, and they should not be saddled with expenses they would not have incurred but for the SEC's failure to comply with the Federal and Local rules. In addition, whether the documents produced were relevant or not, the fact remains that the defendants were forced to make a motion because they were provided with insufficient information to determine whether the documents were relevant and/or privileged. Moreover, while the SEC claims that no expenses should be awarded because there is no evidence of prejudice or harm to the defendants from the belated disclosure, there is ample evidence that

24

defendants incurred both the harm of costs and attorneys' fees in litigating their motion to compel.

Finally, the SEC claims that, the defendants themselves have engaged in "dilatory tactics," and that (1) the SEC has been forced to seek court intervention three times to compel defendants to comply with discovery rules, (2) the defendants have inappropriately filed a motion to dismiss and sought leave to file a summary judgment motion, (3) the defendants have failed to produce documents in a timely manner as ordered and (4) the defendants have engaged in other discovery abuses (SEC's Mem., at 15).  In arguing that defendants' purported "unclean hands" would make an award of expenses unjust, the SEC relies largely on the 1970 Advisory Committee's Notes to Rule 37, which state that the court must determine whether "other circumstances make an award of expenses unjust -- as where the prevailing party also acted unjustifiably."  Fed.R.Civ.P. 37(a)(4)[12], 1970 Advisory Committee's Notes.

"Discovery is not equity:  one party's noncompliance with discovery requirements does not excuse the other's failure to comply.  Each party's obligation is independent, and any motion to compel will be determined on its own merits."  <u>Gropper</u>

---

[12]Rule 37(a)(4) was subsequently recodified as 37(a)(5) in 2007.

25

v. David Ellis Real Estate, L.P., 13 Civ. 2068 (ALC)(JCF), 2014
WL 518234 at *3 (S.D.N.Y. Feb. 10, 2014) (Francis, M.J.).
Defendants' conduct, even if inappropriate, does not diminish the
fact that the SEC acted unjustifiably when it failed to comply
with the Federal and Local rules governing privilege logs.  The
SEC's claims of unclean hands are not so serious as to warrant
the denial of expenses.  Not all of the SEC's motions were
granted in their entirety and none required briefing.  The
defendants' motions to dismiss and for leave to file a summary
judgment motion are unrelated to discovery, and the SEC has not
demonstrated that the defendants failed to comply with court
orders and the rules of discovery.

        Thus, I conclude that there are no other circumstances
that would make an award of reasonable expenses unjust.

    B.  Defendants' Request
        for Fees is Unreasonable

        Expenses awarded pursuant to Rule 37(a)(5)(C), includ-
ing attorneys' fees, must be reasonable.  In determining the
amount of reasonable attorneys' fees, "[t]he most useful starting
point . . . is the number of hours reasonably expended on the
litigation multiplied by a reasonable hourly rate."  Arbor Hill
Concerned Citizens Neighborhood Ass'n v. County of Albany, 522

F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461
U.S. 424, 433 (1983).  See also Green v. Torres, 361 F.3d 96, 98
(2d Cir. 2004) (per curiam) ("'[T]he starting point for the
determination of a reasonable fee is the calculation of the
lodestar amount.'" (quoting Hensley v. Eckerhart, supra, 461 U.S.
at 433)); Hnot v. Willis Grp. Holdings Ltd., 01 Civ. 6558 (GEL),
2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008) (Lynch, D.J.).

      Defendants' attorneys claim a lodestar figure of
$95,736.50.  This figure is based on a total of 165.9 hours of
work:  68.5 hours by John D. Huh, Esq., who charged $505 per hour
in 2013 and $540 per hour in 2014 ($36,780.00); 13.5 hours by
Nicolas Morgan, Esq., who charged $765 per hour in 2013 and $810
per hour in 2014 ($10,669.50); 11 hours by David Sack, Esq., who
charged $595 in 2013 ($6,545.00); 13.8 hours by Caryn Schechtman,
Esq., who charged $865 per hour in 2013 and $915 per hour in 2014
($12,137.00); 18.8 hours by Joshua Sohn, Esq., who charged $860
per hour in 2013 and $910 per hour in 2014 ($16,563.00); 1.8
hours by Perrie M. Weiner, Esq., who charged $780 per hour in
2013 and $825 per hour in 2014 ($1,462.50) and 38.5 hours by
Bonny Yang, a paralegal who charged $295 per hour in 2013 and
$305 per hour in 2014 ($11,579.50) (Defs.' Invoice, at 12-13[13]).

---

[13]The defendants' attorneys' invoice is not paginated.  I
                               (continued...)

The SEC challenges the reasonableness of both the total hours expended on the motion and the hourly rates submitted by the defendants' attorneys.[14]

     1.   The Number of Hours for
          Which Defendants' Attorneys Seek
          Compensation Is Unreasonable

The party seeking attorney's fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y., 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003) (Scheindlin, D.J.).

---

[13](...continued)
refer to the pages in the order in which they are annexed to Morgan's declaration.

[14]In support of their application for fees, defendants have submitted computerized transcriptions of contemporaneous time records.  The SEC does not dispute that this documentation meets the requirements of New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records").

The SEC seeks reduction of defendants' counsels' fees on the following grounds:  (1) only fees for the time spent bringing the motion to compel should be awarded; (2) the fees for time spent on arguments not concerning waiver should not be awarded and (3) the fees sought are excessive, duplicative and vague (SEC's Mem., at 17-21).

### a.   Tasks for Which Fees May be Sought

The SEC claims

> that Defendants are inappropriately seeking fees for:
> (1) hours recorded for reviewing the privilege logs
> when they were first provided to Defendants in early
> 2013; (2) hours recorded for writing their initial
> letter to the SEC in October 2013 and reviewing the
> SEC's response, the majority of which had nothing to do
> with the privilege logs; (3) hours recorded for writing
> the initial letter to the Court in November 2013 and
> reviewing the SEC's response [and] (4) hours recorded
> preparing for and attending the hearing in December
> 2013, which largely addressed the SEC's motion to
> compel

(SEC's Mem., at 18 (footnotes omitted)).  The SEC argues that if fees are to be awarded, the maximum potential award should be limited to $58,000, representing the "fees actually incurred in bringing the motion to compel" (SEC's Mem., at 18, citing Skanga Energy & Marine Ltd. v. Arevenca S.A., 11 Civ. 4296 (DLC)(DF), 2014 WL 2624762 at *6 (S.D.N.Y. May 19, 2014) (Freeman, M.J.) (determining that the non-movant was "entitled to recover only

those fees that it would not have incurred, but for [the] filing of the motion")).  Pursuant to the plain language of Rule 37(a)(5)(C), defendants are only entitled to "reasonable expenses for the motion."

### i.   Reviewing Privilege Logs

Defendants' counsel seek an award of fees for 0.6 hours spent by Morgan and 0.9 hours spent by Yang locating, consolidating, distributing and reviewing the Privilege Logs (Defs.' Invoice, at 1).  Defendants would have incurred these costs whether or not the Privilege Logs were deficient.  Thus, I conclude that no fees should be awarded for defendants' review of the Privilege Logs.

### ii.   Defendants' October and November 2013 Letters

Defendants' counsel seek an award of fees for 9.7 hours spent by Sack, 1.9 hours spent by Morgan and 3.8 hours spent by Yang writing, reviewing, revising and finalizing their October 21, 2013 letter to the SEC and reviewing the SEC's October 28, 2013 response (Defs.' Invoice, at 1-2).  The SEC argues that, fees should not be awarded for the time related to the letter because only one page of the seven-page letter addresses defen-

dants' challenges to the Privilege Logs and this time was not incurred in actually bringing the motion (SEC's Mem., at 18 & n.24). Defendants' also seek an award of fees for 4.9 hours spent by Huh, 2.3 hours spent by Morgan, 2.2 hours spent by Schechtman, 1.3 hours spent by Sack and 3.9 hours spent by Yang writing, reviewing, revising, finalizing and submitting defendants' November 19, 2013 letter to the court seeking leave to file a motion to compel (Defs.' Invoice, at 2-3).

The time spent on these letters is not an expense incurred for the motion. Thus, I conclude that no fees should be awarded in connection with the October and November 2013 letters.

### iii. Discovery Conference

In addition, defendants' attorneys seek an award of fees for 1.1 hours spent by Huh, 0.8 hours spent by Morgan, 7.6 hours spent by Schechtman, 10.9 hours spent by Sohn and 7.0 hours spent by Yang preparing for and attending the December 19, 2013 discovery conference (Defs.' Invoice, at 3-4). The SEC contends that the discovery conference largely concerned the SEC's own motion to compel, noting that only six pages of the eighty-one page transcript of the conference dealt with the Privilege Logs, and the expenses associated with the conference were not actually incurred in making the motion (SEC's Mem., at 18 & n.25).

31

While the issue of the adequacy of the Privilege Logs was discussed at the discovery conference, this conference was held prior to the filing of the motion to compel and the hours sought by defendants are also not expenses incurred for the motion.  Thus, I conclude that no fees shall be awarded in connection with the December 19, 2013 discovery conference.

> b.   Reduction for
>      "Losing" Arguments

The SEC argues that defendants' counsels' fees should also be reduced because the defendants seek fees for arguments unrelated to the issue of waiver, upon which defendants' motion to compel was granted in part (SEC's Mem., at 21).  The SEC claims that only one page of defendants' moving brief and one and one-half pages of their reply brief addressed the waiver issue, and defendants should not be awarded fees for time spent on other issues, particularly defendants' substantive challenges to the SEC's privilege claims (SEC's Mem., at 21-22).  The defendants argue that they were required to address all of their challenges to the Privilege Logs within their motion (Defs.' Reply, at 9-10).  I understand defendants to be arguing that standard prac-tice requires a party to assert all the arguments in support of

its claim for relief or risk a finding that omitted arguments have been waived.

Courts may reduce fee applications for time spent on unsuccessful arguments. <u>Maddalone v. United Bhd. of Carpenters</u>, 95 Civ. 2112 (JSM), 1999 WL 269913 at *1 (S.D.N.Y. May 4, 1999) (Martin, D.J.) (applying percentage reduction "to reflect the time spent on unsuccessful arguments"); <u>accord</u> <u>Spalluto v. Trump Int'l Hotel & Tower</u>, 04 Civ. 7497 (RJS)(HBP), 2008 WL 4525372 at *10 (S.D.N.Y. Oct. 2, 2008) (Sullivan, D.J.) (adopting Report and Recommendation) (deducting time spent on unsuccessful standing argument). Here, however, I did not determine that the defendants substantive challenges to the SEC's privilege claims were unsuccessful in my May 27, 2014 Opinion and Order. Instead, I determined that the SEC's privilege claims were waived, except as to those privilege claims that could not be waived for the SARs,[15] and that it was, therefore, unnecessary to reach defendants' substantive attacks on the SEC's assertion of privilege. <u>SEC v. Yorkville Advisors, LLC</u>, <u>supra</u>, 300 F.R.D. at 166. The substantive challenges made by defendants were neither inherently

---

[15]I address deductions for the portion of the motion which was denied, apportioning the expenses pursuant to Rule 37(a)(5)(C), in Part III.D, below.

frivolous nor excessive.  Moreover, it was incumbent upon defendants to make <u>all</u> their privilege arguments in one motion.

Accordingly, given that defendants had no alternative to making both their wavier and substantive arguments at the same time, I decline to reduce the time spent on non-waiver arguments.

c.  Excessive, Duplicative
<u>and Vague Fees</u>

The SEC argues that the 165.9 billed hours for four partners, a senior associate, a junior associate and a paralegal are excessive, duplicative and vague for the following reasons: (1) Weiner's role is largely unexplained; (2) the partners seek fees for duplicative and vague tasks; (3) Yang spent too much time on many of her tasks; (4) the motion was relatively straightforward and did not require input from four partners and (5) minimal legal research was required, particularly on the issue of waiver (SEC's Mem., at 19-21).  Defendants' attorneys neither explain why it was necessary to expend 165.9 hours on this motion to compel nor address the SEC's claims that the hours are excessive, merely arguing that the fees they request are reasonable.  For the reasons set forth below, I agree that the amount of time spent by defendants' counsel in making this motion is excessive, duplicative and vague.

34

i.  Hours Sought
for Weiner

First, defendants' counsel seek an award of fees for
1.8 hours spent by partner Perrie Weiner for (1) reviewing my
December 23, 2013 Order (Docket Item 56) and providing legal
analysis and (2) reviewing the SEC's opposition to the motion to
compel, providing legal analysis and conferring with Attorney
Morgan (Defs.' Invoice, at 5, 8).

The portion of my December 23, 2013 Order that is
relevant to the privilege dispute is the single sentence:  "I
conclude that the parties' dispute concerning the adequacy of
plaintiff's privilege log is best resolved by way of formal
motion."  The suggestion that it takes an attorney any substan-
tial time to read and understand the foregoing 21 words really
does shock the conscience.  The amount of time needed for an
attorney to read and understand the foregoing sentence is de
minimis and warrants no compensation.

To the extent defendants seek compensation for Weiner's
review and analysis of the SEC's opposition to the motion to
compel, the description of "legal analysis" and "confer with
Morgan" without further explanation are too vague to determine
whether the fees requested are reasonable and warrants a reduc-
tion (Defs.' Invoice, at 5, 8).  See, e.g., Kirsch v. Fleet St.,

35

Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998) (upholding 20% reduc-
tion in billed time for vagueness and other deficiencies where
many time entries merely read "letter to court," "staff confer-
ence" and "work on motion"); United States Football League v.
Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approv-
ing a 10% reduction of total fee award to account for vagueness
in documentation of certain time entries); Bravia Capital Part-
ners, Inc. v. Fike, 296 F.R.D. 136, 145 (S.D.N.Y. 2013) (Fox,
M.J.) (reducing time billed by 40% because time entries stating
"[c]onfer with [various individuals]" were vague and there was
insufficient information to relate the conversation to the
motion); Tucker v. Mukasey, 03 Civ. 3106 (LTS)(FM), 2008 WL
2544504 at *1-*2 (S.D.N.Y. June 20, 2008) (Swain, D.J.) (applying
percentage reduction in hours billed on basis of vagueness
because entries "fail[ed] to describe adequately the nature of
the calls, the contents of the reports or documents, or the
topics of the discussions"); Marisol A. ex rel. Forbes v. Giulia-
ni, 111 F. Supp. 2d 381, 396-97 & n.10 (S.D.N.Y. 2000) (Ward,
D.J.) (concluding that "some of the time entries are so vague
that the Court is unable to determine whether the time was
reasonably expended").

Weiner's billed hours are reduced to 0.2 hours because
they are excessive, duplicative and vague.

ii.   The Other Partners'
Duplicative and Vague Requests

Defendants' counsel also seek fees for 7.9 hours spent by partner Nicolas Morgan, 4.0 hours spent by partner Caryn Schechtman and 7.9 hours spent by partner Joshua Sohn (Defs.' Invoice, at 5-11).[16]   Many of the entries underlying these hours reflect inefficient duplication of effort.   For example, on January 27, 2014, all three partners reviewed, revised or gave "attention to" the motion to compel (5.3 hours total) (Defs.' Invoice, at 7).   On February 19, 2014 both Sohn and Morgan worked on defendants' reply brief (1.4 hours total), and the following day both Sohn and Schechtman did the same (2.6 hours total) (Defs.' Invoice, at 10).   Defendants provide no justification for these duplicative and excessive entries; nor do they address why so many partners were spending time on a matter that could have been handled by a third- or fourth-year associate.

An across-the-board reduction is warranted because the excessive time entries are located throughout the entire invoice.   See Rahman v. Smith & Wollensky Rest. Group, Inc., supra, 2008 WL 1899938 at *4 (applying 33% reduction where time entries re-

---

[16]These amounts do not include the hours sought for tasks that were not incurred "for the motion," namely those expenses incurred prior to December 20, 2013.

37

flected "excessive billing"); Winkler v. Metro. Life Ins. Co., 03 Civ. 9656 (SAS), 2006 WL 2347826 at *2 (S.D.N.Y. Aug. 10, 2006) (Scheindlin, D.J.) (imposing 20% reduction for "excessive charges and lack of delegation"); Rosso v. Pi Mgmt. Assocs., LLC, 02 Civ. 1702 (KNF), 2006 WL 1227671 at *4 (S.D.N.Y. May 3, 2006) (Fox, M.J.) (applying 15% reduction for excessive billing and vague time entries).

Accordingly, I conclude that the hours billed for each of the partners, Morgan, Schechtman and Sohn, must be reduced by 25%.

In addition, as noted by the SEC, defendants resort to block billing, which makes it difficult to determine how much time was spent conducting each individual task and whether they were duplicative (SEC's Mem., at 22). "While not prohibited, block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." Ass'n of Holo-caust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 04 Civ. 3600 (SWK), 2005 WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005) (Kram, D.J.) (internal quotation marks omitted).

The time entries in this case reflect use of block billing (see, e.g., Defs.' Invoice, at 02/14/2014 entry (Schechtman), 02/20/2014 entry (Schechtman), 02/20/2014 entry (Sohn) and 02/21/2014 entry (Morgan)).  When coupled with the vague descriptions of individual tasks, such as "[a]ttention to discovery dispute," "prepare for court" and "reply brief," the block-billed entries on these invoices make it nearly impossible to assess the reasonableness of the hours billed.  While the use of block billing does not automatically compel an across-the-board reduction, Hnot v. Willis Group Holdings Ltd., supra, 2008 WL 1166309 at *6, the difficulty created by defendants' "substantial" use of block billing in this case warrants such a reduction.  Alexander v. Amchem Prods., Inc., 07 Civ. 6441 (RJS), 2008 WL 1700157 at *8 n.8 (S.D.N.Y. Apr. 3, 2008) (Sullivan, D.J.); see Aiello v. Town of Brookhaven, 94-CV-2622 (FB)(WDW), 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block billing); see also Molefi v. Oppenheimer Trust, 03 CV 5631 (FB)(VVP), 2007 WL 538547 at *7 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for block billing and excessive billing); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (reducing 10% of hours billed because of vagueness and block billing); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 326

(S.D.N.Y. 2003) (Marrero, D.J.) (applying 15% reduction for block billing and excessive time entries).

Accordingly, I reduce the three partners' hours by an additional 15% to account for the substantial use of block billing and vague time entries.

### iii.  Yang's
### Excessive Hours

The SEC claims that the time spent by senior paralegal Bonny Yang, 22.9 hours[17], is excessive (SEC's Mem., at 20 n.28). For example, on January 27, 2014, Yang spent 4.0 hours assisting with the preparation and service of a motion to compel and sending emails regarding that task (Defs.' Invoice, at 7).  On February 18, 2014, Yang spent 1.1 hours determining the due date for defendants' reply brief and reviewing and responding to emails regarding that date (Defs.' Invoice, at 9).  The defendants do not offer an explanation why so many simple, largely clerical tasks performed by the paralegal, with twelve years of litigation experience, required so much time.

A reduction in the hours billed by Yang is warranted. In addition to being excessive, like the partners' time records,

---

[17]This amount also does not include the hours sought for tasks not incurred "for the motion," i.e., those expenses incurred prior to December 20, 2013.

Yang's time entries are frequently vague[18] and consist of block billing[19].  Where fees are excessive or otherwise unreasonable, the court "may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application."  <u>McDonald ex rel Pendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006); <u>accord Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC</u>, 08 Civ. 442 (TPG)(FM), 2013 WL 3322249 at *8 (S.D.N.Y. July 2, 2013) (Maas, M.J.) (citing cases reducing hours by 50% to 75%, reducing overall award by 75% because the hours were excessive).

Thus, I reduce the hours spent by paralegal Yang for which fees are sought by 50%.

iv.  The Nature of the
Motion and the Amount
<u>of Research Required</u>

The SEC claims that defendants' counsels' billed hours should be reduced further because the motion was "relatively straightforward" and minimal research was required (SEC's Mem.,

---

[18]For example, Yang spent many hours assisting various attorneys with preparing documents, but it is unclear what this assistance entailed and whether it was reasonable (<u>see</u>, <u>e.g.</u>, Defs.' Invoice, at 1/16/2014 entry, 1/24/2014 entry and 2/14/2014 entry).

[19]<u>See</u>, <u>e.g.</u>, Defs.' Invoice, at 1/27/2014 entry, 2/14/2014 entry and 2/20/2014 entry.

at 20-21).  Defendants claim the hours spent are reasonable because they had to research the SEC's "'fictitious privilege claim'" and they had to address in their reply brief the new claims of privilege made in the Revised Privilege Log (Defs.' Reply, at 9).

In determining whether the number of hours for which fees are sought is reasonable, the court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case, and if it concludes that any expenditure of time was unreasonable, it should exclude these hours from the calculation of the reasonable fee." Kontis v. Karahalis, 409 F. App'x 418, 421 (2d Cir. 2011) (internal quotation marks, brackets and citation omitted).  The number of hours for which defendants are seeking reimbursement -- 165.9 hours in total[20] -- is "grossly excessive" in light of the work performed.  Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC, supra, 2013 WL 3322249 at *6 (finding that movant's request for reimbursement of 81.1 hours spent bringing a Rule 37 motion to compel and opposing adversary's unsuccessful motion was "grossly excessive").

---

[20]Of these hours, 107 hours were incurred after December 19, 2013 for the motion.

In reducing the hours of Weiner, Morgan, Schechtman, Sohn and Yang, above, I already considered the reasonableness of their billed hours in light of the nature of the work performed, and a further reduction is not necessary.  All of the work completed by associate David Sack for which counsel seek compensation occurred prior to December 20, 2013 and were not "for the motion."  Thus, no hours worked by Sack are compensable.  However, the hours for which Huh seeks compensation are also excessive and must be reduced.

Of the 62.5 hours[21] for which senior associate John D. Huh seeks reimbursement, he spent 28.7 hours on the initial motion to compel, only 3.8 hours of which were spent on legal research (Defs.' Invoice, at 5-7).  While preparing the motion, Hugh received assistance from Weiner (0.5 hours), Morgan (4.9 hours), Sohn (5.5 hours), Schechtman (0.3 hours) and Yang (10.3 hours), for a total of 50.2 hours to prepare and serve the motion to compel (Defs.' Invoice, at 5-7).  While some research was required, particularly concerning the nature of some of the claimed privileges, the defendants have not demonstrated why this motion required over fifty hours to prepare.

---

[21]This only includes hours incurred after December 19, 2013.

In addition, like the time entries for the other DLA Piper attorneys, Huh's time entries include block billing which makes it impossible to determine how much of his time was reasonably spent (see, e.g., Defs.' Invoice, at 1/3/2014 entry, 1/23/2014 entry and 2/11/2014 entry).

It does appear that the memoranda of law were largely drafted by Huh and that he made significant contributions to the work produced; however, the hours for which he seeks reimbursement are excessive.  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., supra, 148 F.3d at 173 (internal quotation marks and citations omitted); accord Charles v. City of N.Y., 13 Civ. 3547 (PAE), 2014 WL 4384155 at *5 (S.D.N.Y. Sept. 4, 2014) (Engelmayer, D.J.).

Accordingly, the hours billed by Huh shall be reduced by 20%.

2.  Defendants' Hourly
    Rates Are Unreasonable

A "fee applicant [also] has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates." Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005), quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, supra, 465 U.S. at 895 n.11; accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties. Farbotko v. Clinton Cnty., supra, 433 F.3d at 208-09. The Court is also free to rely on its own familiarity with prevailing rates in the District. A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. N.Y.

45

State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Finally, the Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizen Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.

In determining reasonable hourly rates, a court should first examine the attorneys' experience. Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009) (Holwell, D.J.), citing Marisol A. ex rel. Forbes v. Giuliani, supra, 111 F. Supp. 2d at 386. In addition, courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood

46

Ass'n v. County of Albany, supra, 522 F.3d at 192-93, quoting In
re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir.
1987).  "The relevant 'community' is the district in which the
case was brought, and in the Southern District of New York,
Manhattan rates are considered the standard." American Cas. Co.
of Reading, Pa. v. Morgan-White Underwriters, Inc., 02 Civ. 931
(WHP)(DF), 2003 WL 23374768 at *10 (S.D.N.Y. Sept. 30, 2003)
(Freeman, M.J.), citing S.W. ex rel. N.W. v. Bd. of Educ., 257 F.
Supp. 2d 600, 603-04 (S.D.N.Y. 2003) (Scheindlin, D.J.); and
Knoeffler v. Town of Mamakating, 126 F. Supp. 2d 305, 313
(S.D.N.Y. 2000) (Conner, D.J.).

        Defendants' counsel, to some degree, describe the
experience and qualifications of each attorney and paralegal (see
June 26 Morgan Decl., ¶¶ 7-13).  Weiner, seeking hourly rates of
$780 and $825, is the International Co-Chair of DLA Piper's
Securities Litigation practice and managing partner of the firm's
Los Angeles office; having graduated from Loyola Law School in
1985, Weiner has represented a variety of clients in securities
litigation and enforcement matters (June 26 Morgan Decl. ¶ 8).
Morgan, seeking hourly rates of $765 and $810, is a partner in
DLA Piper's Complex Securities Litigation Group; having practiced
law for over twenty years, including at the SEC, Morgan has an
extensive background in securities law (June 26 Morgan Decl.

¶ 7).  Schechtman, seeking hourly rates of $865 and $915, is a partner at DLA Piper and graduated from law school in 1997; she practices in the areas of private securities litigation and securities regulatory law and has previously represented clients undergoing investigation by the SEC and other agencies (June 26 Morgan Decl. ¶ 9).  Sohn, seeking hourly rates of $860 and $910, is a partner at DLA Piper and graduated from law school in 1997; he practices complex commercial real estate and securities litigation and has previously advised clients concerning SEC investigations and securities issues (June 26 Morgan Decl. ¶ 10).[22]  Huh[23], seeking hourly rates of $505 and $540, is a

---

[22]Defendants do not explain why the hourly rates sought for Schechtman and Sohn are higher than those for Weiner and Morgan, who have more seniority and more experience.

[23]The SEC argues that the hourly rate sought for Huh is unreasonable because Huh is not admitted to practice in this District or any courts in New York and he has not been admitted pro hac vice.  The SEC claims that this motion largely deals with local procedures that are outside Huh's expertise.  Huh has had experience representing clients in matters involving both the SEC and other government agency investigations, he served as a judicial law clerk to the Honorable William H. Yohn, Jr. of the United States District Court for the Eastern District of Pennsylvania and has been admitted to practice in various State and Federal courts (Declaration of Nicolas Morgan in Support of Defendants' Motion for Attorney's Fees and Costs, dated July 28, 2014, (Docket Item 94) ¶¶ 2-4).  His work in other federal courts would have acquainted him with the Federal Rules of Civil Procedure, and, here, the issues presented on the underlying motion did not require unique local knowledge.  Moreover, "when 'work is performed by multiple attorneys at the same firm, all of [the attorneys are] entitled to seek compensation under a fee-
(continued...)

senior associate in DLA Piper's Litigation Department and gradu-
ated law school in 2006; his practice focuses on government
investigations and complex commercial litigation, and he has
previously represented clients undergoing SEC investigations
(June 26 Morgan Decl. ¶ 11).  Paralegal Yang, seeking hourly
rates of $295 and $305, is a certified[24] senior paralegal who
reportedly has twelve years of experience working on matters
involving securities investigations and litigation (June 26
Morgan Decl. ¶ 13).

       In support of their fee application, defendants' cited
two articles from the National Law Journal,[25] which set forth

---

       [23](...continued)
shifting statute, even if some [are] not admitted here.'"
Demonchaux v. Unitedhealthcare Oxford, 10 Civ. 4491 (DAB), 2014
WL 1273772 at *6 (S.D.N.Y. Mar. 27, 2014) (Batts, D.J.) (refusing
to deny reimbursement for attorney who was not admitted and did
not seek pro hac vice admission in this District).  Thus, I
decline to reduce the hourly rate of Huh merely because he is not
admitted to practice in this District.

       [24]Defendant has not identified what entity certified Yang or
what training or competence this certification represents.

       [25]"Billing Rates Across the Country," Nat'l Law J., Jan. 13,
2014, available at http://www.nationallawjournal.com/id=1202636-
785489 (last visited Feb. 2, 2015) (including a nationwide
billing survey of attorneys' hourly rates which shows DLA Piper's
partners averaged $765 per hour (with a low of $450 and a high of
$1,025) and associates averaged $510 per hour (with a low of $250
and a high of $750)); Karen Sloan, "NLJ Billing Survey:  $1,000
Per Hour Isn't Rare Anymore," Nat'l Law J., Jan. 13, 2014,
annexed as Exhibit C to June 26 Morgan Decl. (stating that of the
large New York-based firms surveyed, partners averaged $882 per
                                            (continued...)

published billing rates of law firms nationwide that, in defendants' counsel's estimation, are comparable to DLA Piper; defendants' counsel also included several cases[26] in which courts awarded rates ranging from $550 to $750 per hour for partners and experienced attorneys, $300 to $550 per hour for associates and $150 to $200 per hour for paralegals (Defs.' Mem., at 11-12). Citing other cases,[27] the SEC argues that the hourly rates

---

[25](...continued) hour and associates averaged $502 per hour).

[26]LV v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510, 523 (S.D.N.Y. 2010) (Holwell, D.J.) (determining that $150 per hour was a reasonable paralegal rate); Margel v. E.G.L. Gem Lab LTD., 04 Civ. 1514 (PAC)(HBP), 2009 WL 302069 at *8 (S.D.N.Y. Feb. 6, 2009) (Pitman, M.J.) (finding that hourly rates of $550 and $585 in 2005 and 2006, respectively, for an experienced intellectual property attorney at a large Manhattan firm were reasonable in a patent law case); In re Telik, Inc. Secs. Litig., 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (McMahon, D.J.) (finding that, in 2008, partners' and associates' hourly rates of $700 to $750 and $300 to $550, respectively, for representing defendants in a securities class action were consistent with normal rates at large New York firms); Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG, 04 Civ. 2983 (DLC)(KNF), 2006 WL 5804603 at *6 (S.D.N.Y. Dec. 11, 2006) (Fox, M.J.) (reducing request for hourly rate of $230 to $200 for senior paralegal where no background information was provided). Defendants state that in finding the hourly rates in Margel reasonable, I relied upon the National Law Journal's survey of billing rates; however, I clearly considered the typical rates awarded in similar cases from this District as well in awarding those fees. Margel v. E.G.L. Gem Lab LTD., supra, 2009 WL 302069.

[27]Demonchaux v. Unitedhealthcare Oxford, supra, 2014 WL 1273772 at *7 (concluding hourly rates of $600 for partners, $500 for senior associates, $300 for associates and $175 to $200 for paralegals were reasonable); E.F. ex rel. N.R. v. N.Y.C. Dep't of
(continued...)

charged by DLA Piper are much higher than the rates routinely approved in this District for attorneys and paralegals, but the SEC does not suggest what the reasonable rate should be (SEC's Mem., at 19-21).

Defendants' counsel have failed to support their contention that the rates they seek are reasonable, particularly in light of the fact that some of the rates they seek are higher than the average rates cited by defendants for similar-sized

---

[27](...continued)
Educ., 11 Civ. 5243 (GBD)(FM), 2014 WL 1092847 at *3-*4 (S.D.N.Y. Mar. 17, 2014) (Daniels, D.J.) (reducing experienced attorney's rate to $475 per hour and finding $150 hourly paralegal rate was reasonable); Union Cent. Life Ins. Co. v. Berger, 10 Civ. 8408 (PGG), 2013 WL 6571079 at *4-*5 (S.D.N.Y. Dec. 13, 2013) (Gardephe, D.J.) (finding that senior partner's hourly rate of $580 to $595 and associate's hourly rate of $235 were reasonable and, rejecting hourly rates of $220 to $225 and $185 for paralegals, determining that a rate of $125 was reasonable); Merck Eprova AG v. Gnosis S.P.A., 07 Civ. 5898 (RJS), 2011 WL 1142929 at *9-*10 (S.D.N.Y. Mar. 17, 2011) (Sullivan, D.J.) (awarding reasonable hourly rates of $600 to partners, $300 to associates and $170 to $205 to paralegals); In re Initial Pub. Offering Secs. Litig., 671 F. Supp. 2d 467, 506-07 (S.D.N.Y. 2009) (Scheindlin, D.J.) (in case involving consolidated class actions, finding rates of $995 per hour for partner "clearly exorbitant" and $355 per hour for paralegal "shocking and unconscionable," while capping hourly rates for senior partners at $500, junior partners at $425, senior associates at $335, junior associates at $200 and paralegals at $100).

firms and for DLA Piper itself.[28]   As noted in <u>Pugach v. M & T
Mortg. Corp.</u>, 564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008),

> the actual fee arrangement between a party and its
> counsel is relevant evidence of what constitutes a
> "reasonable" fee.  <u>See</u>, <u>e.g.</u>, <u>Bleecker Charles Co. v.
> 350 Bleecker St. Apartment Corp.</u>, 212 F. Supp. 2d 226,
> 230 (S.D.N.Y. 2002) ("As numerous courts have recog-
> nized, negotiation and payment of fees by sophisticated
> clients are solid evidence of their reasonableness in
> the market . . . .).  Further, the Court does not
> quarrel with the contention that the rates sought for
> DLA Piper are within billing rates for comparable firms
> listed in the New York Law Journal's survey.  Nonethe-
> less, "courts have acknowledged that a judicial deter-
> mination of what is 'reasonable' for purposes of a fee
> award to be paid by the losing party to the prevailing
> party in a litigation is not the same as the reason-
> ableness of a bill that a law firm might present to its
> own paying client."  <u>Daiwa Special Asset Corp. v.
> Desnick</u>, No. 00 Civ. 3856(SHS), 2002 WL 31767817, at *2
> (S.D.N.Y. Dec. 3, 2002).

Moreover, the cases cited by defendants were class actions or
actions involving more complicated issues than the sufficiency of
a privilege index and required significant legal expertise and
skill.  Thus, I will look to current case law and my own knowl-
edge of prevailing rates to determine the amount of reasonable
attorneys' fees.

---

[28]<u>See</u> "Billing Rates Across the Country," <u>Nat'l Law J.</u>, Jan.
13, 2014, <u>available</u> <u>at</u> http://www.nationallawjournal.com/id=120-
2636785489 (last visited Feb. 2, 2015) (DLA Piper's partners
averaged $765 per hour (with a low of $450 and a high of $1,025)
and associates averaged $510 per hour (with a low of $250 and a
high of $750)).

Considering the factors set forth in <u>Arbor Hill Con-</u>
<u>cerned Citizen Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522
F.3d at 184, the motion to compel brought by defendants was not
significantly complex and minimal expertise was needed as the
issues involved were largely procedural.  Moreover, counsels'
time records demonstrate that of the 107 hours billed for the
motion, only 7.2 hours[29] were spent conducting legal research,
which is consistent with the limited citations to case law in
defendants' memoranda of law (Defs.' Invoice, at 1/23/2014 entry
(Huh) and 2/18/2014 entry (Huh)).  The motion to compel was
fairly simple and straightforward and defendants' counsel have
not shown that the temporal demands of this motion precluded
other work or that it required the attention of senior attorneys
with expertise or specialized skills.

In light of these factors, the hourly rates sought by
defendants' attorneys are too high.  The prevailing market rates
for attorneys and paralegals in the Southern District of New York
for fees incurred on discovery motions range from $450 to $600
for partners, $220 to $400 for associates and $100 to $200 for
paralegals.  <u>See</u> <u>A.V.E.L.A., Inc. v. Estate of Monroe</u>, 12 Civ.

---

[29]Attributing 7.2 hours to legal research is generous
considering that all of the entries for legal research are block-
billed, making it impossible to determine exactly how much time
was spent researching.

4828 (KPF)(JCF), 2014 WL 3610902 at *2 (S.D.N.Y. July 18, 2014) (Francis, M.J.) (awarding $600 to experienced partner, $300 and $400 to associates and $200 to paralegal); Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC, supra, 2013 WL 3322249 at *5 (awarding $450 to partner practicing over thirty years and $300 to associate practicing over fifteen years); Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Repub-lic, 10 Civ. 5256 (KMW)(DF), 2012 WL 5816878 at *6-*8 (S.D.N.Y. Nov. 14, 2012) (Freeman, M.J.) (reducing requested hourly rates of $310 and $315 to $100 for paralegals, $535 to $300 for associ-ate who made significant contributions and $830 to $600 for experienced partner); Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 109 (S.D.N.Y. 2011) (Cott, M.J.) (awarding $550 to partner with over forty years experience and $221 and $208.25 to associates).

Based on their experience, skills and level of contri-bution to the work, each attorney will be compensated as follows: Weiner, Morgan, Schechtman and Sohn at the rate of $500 per hour and Huh at the rate of $300 per hour.  Yang will be compensated at a rate of $150 per hour.

3.   Summary

Applying the foregoing reductions and rates yields the following product:

| Attorney[30] | Adjusted Hourly Rate | Reduced No. of Hours | Fees |
|---|---|---|---|
| John D. Huh | $300 | 50.0[31] | $15,000.00 |
| Nicolas Morgan | $500 | 4.74[32] | $2,370.00 |
| Caryn Schechtman | $500 | 2.4[33] | $1,200.00 |
| Joshua Sohn | $500 | 4.74[34] | $2,370.00 |
| Perrie M. Weiner | $500 | 0.2 | $100.00 |
| Paralegal Bonny Yang | $150 | 11.45[35] | $1,717.50 |
| Total | | 73.53 | $22,757.50 |

---

[30]All hours billed by David Sack are excluded, because he only performed work prior to December 20, 2013.

[31]This reflects a 20% reduction of the 62.5 hours for which compensation is sought.

[32]This reflects a 40% (25% + 15%) reduction of the 7.9 hours for which compensation is sought.

[33]This reflects a 40% (25% + 15%) reduction of the 4.0 hours for which compensation is sought.

[34]This reflects a 40% (25% + 15%) reduction of the 7.9 hours for which compensation is sought.

[35]This reflects a 50% reduction of the 22.9 hours for which compensation is sought.

55

Thus, defendants' counsel are entitled to a total fee award of $22,757.50, subject to apportionment pursuant to Rule 37(a)(5)(C).

### C.   Defendants' Counsel's Request for Costs Is Reasonable

Defendants' counsel seek a total of $454.45 in costs. The SEC does not challenge defendants' request, and I conclude that these costs are reasonable and the documentation is sufficient.  Thus, I award defendants' counsel $454.45 in costs, subject to apportionment pursuant to Rule 37(a)(5)(C).

### D.   Apportioning the Award of Expenses

Finally, the SEC argues that any award of expenses should be apportioned between the portion of the motion that was granted and the portion of the motion that was denied pursuant to Rule 37(a)(5)(C); however, neither the SEC nor the defendants suggest how that apportionment should be made (SEC's Mem., at 22).  A majority of defendants' motion to compel was granted, and the SARs privilege was upheld only because the statutory privilege could not be waived by law.  Moreover, the defendants cannot be significantly faulted for challenging the assertion of that statutory privilege, because, as previously noted, they lacked

sufficient information to determine the applicability of the privilege because the SEC failed to comply with the Federal and Local rules governing privilege logs.  Because defendants would have incurred a majority of the time charges and expenses at issue even if they had not addressed the Privilege Logs' deficiencies with regards to the SARs, the vast majority of the fees and expenses should be allocated to the portion of the motion which was granted.

Thus, I reduce the overall fees and costs awarded, after all other reductions and adjustments in this order, by 5% to account for the portion of the motion which was denied, entitling defendants' counsel to $21,619.63 in fees and $431.73 in costs.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I award defendants' counsel $21,619.63 in attorneys' fees and $431.73 in costs, for a total of $22,051.36.

Dated:  New York, New York
        February 27, 2015

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Todd D. Brody, Esq.
Stephen B. Holden, Esq.
Valerie A. Szczepanik, Esq.
Securities & Exchange Commission
Room 400
3 World Financial Center
New York, New York  10281

Bruce Karpati, Esq.
Securities & Exchange Commission
233 Broadway
New York, New York  10279

Caryn G. Schechtman, Esq.
Joshua S. Sohn, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York  10020

Nicolas Morgan, Esq.
Patrick O. Hunnius, Esq.
DLA Piper LLP
Suite 400 North Tower
2000 Avenue of the Stars
Los Angeles, California   90067